THE HONORABLE RICHARD A. JONES

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8   THE INSTITUTE OF CETACEAN           )
9   RESEARCH, a Japanese research foundation;  )
    KYODO SENPAKU KAISHA, LTD., a       )
10  Japanese corporation; TOMOYUKI OGAWA,  )  Case No.: 2:11-cv-02043-RAJ
    an individual; and TOSHIYUKI MIURA, an  )
11  individual,                          )  DEFENDANTS' REPONSE IN
                                         )  OPPOSITION TO PLAINTIFFS' MOTION
12                  Plaintiffs,          )  FOR PRELIMINARY INJUNCTION
                                         )
13         v.                            )  Note on Motion Calendar: February 3, 2012
                                         )  Hearing Date: February 16, 2012
14                                       )  With Oral Argument
    SEA SHEPHERD CONSERVATION           )
15  SOCIETY, an Oregon nonprofit corporation,  )
    and PAUL WATSON, an individual,      )
16                                       )
17                  Defendants.          )
                                         )
18  _____ )

I.   INTRODUCTION

19
20         Plaintiffs fail to meet the burden required for an injunction and their unclean hands bar them

21  from obtaining equitable relief. Plaintiffs are not entitled to a preliminary injunction.

                              II.      FACTS

22
23         Defendant Sea Shepherd Conservation Society is a non-profit organization established in

24  Oregon in 1981. Dan Harris Decl. Ex. 1. Sea Shepherd is dedicated to protecting marine wildlife

25  around the world. Paul Watson Decl. ¶6; Susan Hartland Decl. ¶¶4-6. It is a conservation

26  organization, not a political organization, and it has never sought to influence Japanese policy. *See*

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION- 1

**Harris & Moure**
*A Professional Limited Liability Company*
600 Stewart Street, Suite 1200
Seattle, WA  98101
Phone: (206) 224-5657
Fax: (206) 224-5659

Peter Hammarstedt Decl. ¶9; Calvin Toy Decl., Ex 1. Sea Shepherd performs invaluable marine conservation services. For example, Sea Shepherd has worked in partnership with the Ecuadorian National Police and the Galapagos National Park Rangers to intervene against poaching operations in the Galapagos Marine Reserve. Watson Decl. ¶6.

Sea Shepherd's conservation activities are supported by international law. The U.N. World Charter for Nature authorizes groups such as Sea Shepherd to act as a private Coast Guard on behalf of international conservation, and to take actions to prevent illegal whaling. *See* World Charter for Nature (1982) UN GA RES 37/7, Art. III, ¶ 21(e) ("States and, to the extent they are able, other public authorities, international organizations, individuals, groups and corporations shall . . . [s]afeguard and conserve nature in areas beyond national jurisdiction."). Under this authority, Defendants undertake marine conservation projects all over the world. Watson Decl. ¶6.

Though Sea Shepherd maintains an office in Friday Harbor, Washington, the alleged activities of which Plaintiffs complain occurred in Australia and/or the Southern Ocean Whale Sanctuary. Planning for the Antarctic whale defense campaigns takes place on the vessels themselves, either in Australian ports, or while at sea. Hammarstedt Decl. ¶5; Watson Decl. ¶4. The vessels in this case are Australian and Dutch flagged and are owned by Australian, Dutch, and U.K. entities. D. Harris Decl. Ex. 2. Well under half of the captains and crewmembers of the three Sea Shepherd vessels are United States citizens, and all crewmembers report to Sea Shepherd's vessels in Australia when they volunteer for the Antarctic whale defense campaigns. Hammarstedt Decl. ¶¶4-6.

The primary method Sea Shepherd employs in its Antarctic whale defense campaigns is interference with Plaintiffs' illegal whale slaughter. Hammarstedt Decl. ¶ 9; Watson Decl. ¶8. This is accomplished by strategically navigating Sea Shepherd vessels to prevent Plaintiffs from transferring and butchering the whales they have killed and by using "stinky butter" (stink bombs composed of butyric acid) to annoy and deter these poachers. Hammarstedt Decl. ¶¶9, 10; Watson Decl. ¶8. These

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION- 2

**Harris & Moure**
*A Professional Limited Liability Company*
600 Stewart Street, Suite 1200
Seattle, WA  98101
Phone: (206) 224-5657
Fax: (206) 224-5659

methods are employed to ensure maximum safety to all those involved. Sea Shepherd adheres to a strict policy of non-violence.  *Id.* at ¶8; Watson Decl. ¶6. Sea Shepherd does not use firearms or any lethal weapons in its campaigns, nor are crewmembers permitted to bring such weapons on board Sea Shepherd vessels. Watson Decl. ¶6. Plaintiffs wrongly accuse Defendants of using "incendiary devices." Watson Decl. ¶7. Defendants do not use and have never used such devices. *Id.* Defendants may occasionally use smoke signals or hand flares from life raft kits, but it is against Defendants' policy to aim these at anyone. *Id. See also,* Cushman Decl., Ex. 2, p. 2 ("I have seen no evidence of Sea Shepherd personnel engaging in any violent activities directed towards any person. On the other hand, I have seen the Japanese whalers seek to injure Sea Shepherd personnel . . . .")

Defendants have never injured anyone, and they object to the unauthenticated and inadmissible photographs of alleged injuries submitted under the Declarations of John Neupert and Makoto Ito.[1] *See* Hammarstedt Declaration at ¶8; Watson Declaration ¶¶6, 8. Notably absent from Plaintiffs' exhibits are any medical records documenting the bodily harm Defendants have allegedly caused. Plaintiff Ogawa states that three crewmembers aboard the NISSHIN MARU were "slightly injured" in March 2008, but he does not describe the nature of those injuries, nor their cause. Dkt. #16, ¶8. Plaintiff Miura's statement that three crewmembers were injured aboard the SHONAN MARU NO. 2 in February 2010 is similarly devoid of factual detail. Dkt. #15, ¶8.  Plaintiffs have not submitted any declarations from anyone actually injured.

Plaintiffs' claims regarding butyric acid are similarly unsupported. Plaintiffs allege this substance harmed their crewmembers and Defendants' continued use of this "stinky butter" will potentially injure Plaintiffs' crew in the future, but they have provided almost nothing to substantiate such allegations. Defendants have never thrown butyric acid at anyone nor has anyone ever been hit

---

[1] Makoto Ito's Declaration was submitted to this Court with 132 exhibits purporting to support Plaintiffs' claims regarding Defendants' alleged actions at sea and alleged harm to Plaintiffs. Ito admits he did not create any of these exhibits, nor was he present when they were made and Plaintiffs have steadfastly refused to provide the names of those who did create the photographs and videos. Because Ito lacks the personal knowledge to lay a proper foundation for these exhibits, they are inadmissible and should be stricken.

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION- 3

**Harris & Moure**
*A Professional Limited Liability Company*
600 Stewart Street, Suite 1200
Seattle, WA  98101
Phone: (206) 224-5657
Fax: (206) 224-5659

by it. Watson Decl. ¶¶6, 12.  Equally important, butyric acid is a very weak, naturally occurring acid, and brief exposure of the skin to this acid is simply not harmful. *See* Declaration of G. Phelan, Ph.D., Ex. 2 Report on Butyric Acid. Defendants employ butyric acid specifically because it is not harmful. Watson Decl. ¶12.

It is not Defendants, but Plaintiffs who have a significant history of violence. Cushman Decl., Ex. 2 at p. 2; *see also,* Harris Decl, ¶19, Ex. 14, video compilation. Plaintiffs have escalated their violent attacks on Defendants' crew and volunteers during the 2011-2012 whaling season—***even as they seek equitable relief from this Court.*** Watson Decl. ¶15. Plaintiffs' dangerous actions at sea caused the February 2009 collision between the YUSHIN MARU NO. 3 and the M/V STEVE IRWIN. Watson Decl. ¶11; Hammarstedt Decl. ¶12. Yet Plaintiffs rely heavily on this event, which occurred some three years ago, as evidence of a need for an injunction. Plaintiffs also intentionally collided with the ROBERT HUNTER in 2007 and the BOB BARKER in 2010. Watson Decl. ¶11.

In 2010, Plaintiffs deliberately rammed the ADY GIL, slicing it in two and causing it to sink. Watson Decl.  ¶14; Harris Decl. ¶19, Ex. 14, video clip 22, ramming of the ADY GIL. When the SHONAN MARU NO. 2 struck the ADY GIL (a vessel far smaller than Plaintiffs'), the Sea Shepherd crewmembers on board were forced to run to the back of the vessel as the front (the crew's sleeping quarters) was sheared off by Plaintiffs' vessel. Hammarstedt Decl. ¶14. As Defendants' crewmembers ran for their lives, crowding to the back of the sinking ADY GIL, Plaintiffs continued to spray Defendants' crew with high-pressure water cannons. Watson Decl. ¶12; Harris Decl. ¶19, Ex. 14, video clip 22, ramming of the ADY GIL. In an act of extreme unseaman-like behavior, Plaintiffs ignored Defendants' mayday calls. Watson Decl. ¶12; Hammarstedt Decl. ¶14. During Maritime New Zealand's official investigation of this incident, Plaintiffs refused to cooperate, while Defendants cooperated in full. Hammarstedt Decl. ¶14; *See also* Dkt. 22, D. Harris Decl. Ex. 1 (previously filed on 12/15/11, MNZ Investigation Report at p. 3 ¶23 stating that Plaintiffs refused to cooperate with the investigation and did not take statements from their own crew.)

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION- 4

**Harris & Moure**
*A Professional Limited Liability Company*
600 Stewart Street, Suite 1200
Seattle, WA  98101
Phone: (206) 224-5657
Fax: (206) 224-5659

Plaintiffs have thrown concussion grenades, bamboo spears, and heavy nuts and bolts at Defendants' crewmembers. Watson Decl. ¶¶12, 15; Hammarstedt Decl. ¶13. Just this season, Plaintiffs beat one of Defendants' crewmembers in the face with a bamboo stick and threw metal grappling hooks at Defendants' small rubber vessels, damaging the vessel and physically harming persons on board. Watson Decl. ¶15. Plaintiffs have employed firearms, high-pressure water cannons, and Long Range Acoustical Devices (LRADs) designed to cause auditory harm and disorientation—even aiming such devices at Defendants' helicopter pilot while in flight in an apparent effort to force the helicopter to crash. Watson Decl. ¶12; Hammarstedt Decl. ¶13; Hartland Decl. ¶3. Plaintiffs follow Defendants' vessels at close range and surround Defendants' slower, less maneuverable vessels, which are significantly outnumbered. Watson Decl. ¶15; Hartland Decl. ¶3.

In support of their requested injunction, Plaintiffs provide the declaration of Captain Malcom Lambie Miller. This document is flawed in its expert analysis and based on misinformation from Plaintiffs regarding their interactions with Defendants. *See, e.g.*, Dkt. 27, Ex. 4, pg. 2 (where Kayo Ohmagari informs Captain Miller via email that Plaintiffs' highest priority is to avoid Defendants' vessels and that they never retaliate against Defendants or "throw things at SS vessels"). The record makes these gross inaccuracies apparent. Based on Captain Miller's opinion, Plaintiffs request this Court issue an injunction that would restrain Defendants' movements on the high seas and prevent them from coming within 800 meters (about half a mile) from Plaintiffs' vessels. Dkt. 27 at p. 4; Dkt. 26-1, Proposed Order. Captain Miller's view on the appropriate safety perimeter for Plaintiffs' vessels seems to be based on his experience as Master of vessels carrying hazardous material, such as irradiated nuclear fuel and radioactive waste, and such vessels usually have a Moving Safety Zone encircling them. Cushman Decl., Ex. 2 p. 3. Though Moving Safety Zones make sense for vessels carrying hazardous materials, especially within ports, such safety zones are inappropriate and unnecessary for Plaintiffs' whaling vessels. *Id.* Notably, COLREGS does not require a general minimum distance between vessels. *Id.* The maximum distance requirement afforded to any vessel

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION- 5

**Harris & Moure**
*A Professional Limited Liability Company*
600 Stewart Street, Suite 1200
Seattle, WA  98101
Phone: (206) 224-5657
Fax: (206) 224-5659

under COLREGS is 150 meters, applicable to fishing vessels with gear extending into the sea way. *Id.* Plaintiffs' requested Moving Safety Zone is inappropriate and not required under the facts or the law of this case and such a zone would prevent Defendants from engaging in conservation work, and would likely prevent Defendants from even documenting Plaintiffs' reckless slaughter of whales in the Southern Ocean Whale Sanctuary. Hartland Decl. ¶ 8. Such a zone would also prevent Sea Shepherd from fulfilling its mission as a non-profit organization.  *Id.*

Defendants' record on navigational safety is unblemished. Defendants' ships have never been reprimanded by their flag nations (Australia and the Netherlands). Watson Decl. ¶8. Defendants have never been charged by any nation for violating any laws in connection with their Antarctic campaigns. *Id.* Since Defendants first began conducting Antarctic whale defense campaigns in the Southern Ocean Whale Sanctuary in 2002, there have been no deaths or serious injuries to Defendants' crew, and the only serious loss Defendants have suffered was due to Plaintiffs' intentional ramming and sinking of the ADY GIL. Watson Decl. ¶14.

Though Plaintiffs have brought this case over a few alleged minor injuries, their own safety record is abysmal. Plaintiffs' crewmembers have died and suffered serious injuries while working on board Plaintiffs' vessels, but ***never*** due to Defendants' interference with Plaintiffs' illegal whale slaughter. Hammarstedt Decl. ¶¶8-11, 16; Watson Decl. ¶¶6,8-10. Given Plaintiffs' deadly and unseaman-like conduct towards Defendants, as well as their own dreadful safety record, Plaintiffs' claims that Defendants' actions pose a risk to Plaintiffs' safety should be seen as a pretext for stopping Defendants from interfering with Plaintiffs' illegal whale slaughter.

It is Plaintiffs who operate in contravention of international law and norms. Their whaling has been condemned by the international community and by courts of law. *See e.g., Humane Society International, Inc. v. Kyodo Senpaku Kaisha, Ltd.,* [2008] FCA 3 (15 January 2008) (Harris Declaration, Ex. 3 (decision)). Australia has brought an action against Japan in the International Court of Justice to prohibit Plaintiffs from whaling. *Id.* at Ex. 4. Japan's briefing in that case is due

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION- 6

**Harris & Moure**
*A Professional Limited Liability Company*
600 Stewart Street, Suite 1200
Seattle, WA  98101
Phone: (206) 224-5657
Fax: (206) 224-5659

1   on March 9, 2012. *Id.* at Ex. 5. The International Whaling Commission (IWC) has repeatedly

2   condemned Plaintiffs' lethal whaling. IWC Resolutions 2007-1 and 2005-1. *Id.* at Exs. 6-7. The

3   governments of Australia, the U.S., the Netherlands, and New Zealand issued a statement on

4   December 13, 2011, providing:

> We remain resolute in our opposition to commercial whaling, including so-called
> "scientific" whaling, in particular in the Southern Ocean Whale Sanctuary established
> by the International Whaling Commission, and are disappointed about the recent
> departure of the Japanese whaling fleet for the Southern Ocean. In this context we
> wish to emphasize that lethal techniques are not required in modern whale
> conservation and management. We will continue to engage on this matter.[2]

9   During the 2011-2012 whaling season, the government of Australia has repeatedly demanded that

10  Plaintiffs' vessels leave Australian waters. Watson Decl. ¶15; D. Harris Decl. ¶16, Ex. 11.

11         Also, in February 2011, the Buenos Aires Group, consisting of IWC member nations

12  Argentina, Brazil, Chile, Costa Rica, Ecuador, Mexico, Panama, Peru, and Uruguay issued a joint

13  statement calling for an end to Plaintiffs' illegal whaling in the Southern Ocean Whale Sanctuary:

> The Buenos Aires Group reaffirms its commitment to whale conservation; to
> maintaining the commercial moratorium that has been in force since 1986; promoting
> the non-lethal use of the resource and respecting the integrity of the whale sanctuaries
> recognized by the IWC, and urges the Japanese government to end its "scientific
> whaling" in a sanctuary established by the IWC precisely to protect whales.[4]

18         Though Plaintiffs claim to be engaging in "scientific research," both the global and scientific

19  communities view this claim as a mere cover for commercial whaling activities. *See* D. Harris Decl.

20  ¶¶11-15, Exs. 8-10. Despite the enormous scale of Plaintiffs' so-called "research" program,

21  Plaintiffs have produced nothing of scientific value and do not allow outside review of data. *Id.* at

22  Ex. 10, "How 'Scientific' is Japan's Scientific Whaling?" at pp. 4-5. In the 1940s, at which time the

23  lethal research permit system was created by the IWC, lethal research was still believed necessary.

24  However, new methods such as biopsy darts have obviated the need for lethal whale research. *Id.* at

---

25  [2] December 13, 2011 Joint Statement on Whaling, available at http://www.state.gov/r/pa/prs/ps/2011/12/178704.htm
    [4] Press release issued by the government of Mexico available at:
26  http://portal3.sre.gob.mx/english/index.php?option=com_content&task=view&id=957&Itemid=9

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION- 7

**Harris & Moure**
*A Professional Limited Liability Company*
600 Stewart Street, Suite 1200
Seattle, WA  98101
Phone: (206) 224-5657
Fax: (206) 224-5659

pp. 5-7. Plaintiffs' reliance on lethal sampling is unnecessary and cannot contribute anything to knowledge of whale populations. *Id.* It is impossible to justify killing the whales on this basis, as tissue samples from the whales may be obtained using non-lethal methods such as biopsy darts. *Id.* at pp. 4-7. Plaintiffs' unwillingness to allow independent analysis of their raw data is at odds with international norms of animal population management practices. D. Harris Decl. Ex., 9 "Whaling as Science" at 210.

Plaintiffs slaughter vast numbers of whales every year under the guise of "scientific research," yet they contribute nothing to the global scientific community and whale meat continues to be made commercially available in Japanese grocery stores and restaurants. Plaintiff ICR is primarily funded by sales of whale products from these allegedly "scientific" catches. *Id.* Plaintiffs are engaged in a gross abuse of the scientific research permitting system and are committing a fraud upon the world by claiming otherwise. Plaintiffs are not entitled to injunctive relief that will aid in their continued bad faith and illegal slaughter of whales in an internationally recognized whale sanctuary. Plaintiffs have submitted no evidence showing that they are actually engaged in scientific research, despite claiming so in their Complaint and their Motion for Preliminary Injunction.

### III.     ARGUMENT & AUTHORITIES

It is indisputable that a "preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689 (2008). Plaintiffs must make a "clear showing that [they are] entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). The decision to grant or deny injunctive relief rests within the equitable discretion of the district court, and such discretion must be exercised consistent with traditional principles of equity. *eBay v. MercExchange, LLC*, 547 U.S. 388, 394 (2006). In determining whether an injunction will issue, the court must weigh all of the legal and equitable factors. *See Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1363 (Fed. Cir. 2008).

**Harris & Moure**
*A Professional Limited Liability Company*
600 Stewart Street, Suite 1200
Seattle, WA  98101
Phone: (206) 224-5657
Fax: (206) 224-5659

1    A district court may enter a preliminary injunction only if the requesting party can

2 demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm; (3) that

3 the balance of hardships tips in claimant's favor; and (4) that the public interest supports granting an

4 injunction. *Winter v. Natural Res. Def. Council,* 555 U.S. 7 (2008). In the Ninth Circuit, this test is

5 evaluated through either the "serious questions" or the "sliding scale" approach. *Alliance for the*

6 *Wild Rockies v. Cottrell,* 632 F.3d 1127, 1137-38 (9th Cir. 2011); *Clear Channel Outdoor, Inc. v.*

7 *City of Los Angeles,* 340 F.3d 810, 813 (9th Cir. 2003). As Defendants demonstrate below, Plaintiffs

8 are not entitled to relief under either standard. Finally, because this case was brought in equity, the

9 movant must show it has no adequate remedy at law. *Elias v. Connett,* 908 F.2d 521, 526 (9th Cir.

10 1990).

11 **A.    No Preliminary Injunction May Issue under the Alien Tort Statute.**

12    As an initial matter, Defendants renew their objection to Plaintiffs seeking a preliminary

13 injunction through this Courts' jurisdiction under the Alien Tort Statute ("ATS"). *See* Defendants'

14 Motion to Dismiss, Dkt. 29 at 14. Plaintiffs rely on this statute as the basis for their claims in their

15 Motion for Preliminary Injunction. Plaintiff's Motion for Preliminary Injunction, Dkt. 13, at 7.

16 Plaintiffs' request for preliminary injunctive relief is simply not cognizable under the ATS, because

17 such relief was not available under the Judiciary Act of 1789, under which the ATS was passed. *See*

18 *Grupo Mexicano De Desarrollo v. Alliance Bond Fund*, 527 U.S. 308, 332-33 (1999).

19 **B.    Plaintiffs are Not Entitled to Preliminary Injunctive Relief.**

20    **1.    Plaintiffs Will Not Succeed on the Merits.**

21    **a.    Renewal of Arguments for FRCP 12(b) Dismissal**

22    Defendants filed an FRCP 12(b) Motion to Dismiss this case. Dkt. 29. In that Motion,

23 Defendants raised numerous grounds for dismissal, including lack of jurisdiction over Plaintiffs'

24 state and federal claims, *forum non conveniens*, and failure to state a claim in violation of FRCP 8.

25

26

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION- 9

**Harris & Moure**
*A Professional Limited Liability Company*
600 Stewart Street, Suite 1200
Seattle, WA  98101
Phone: (206) 224-5657
Fax: (206) 224-5659

1   In that motion, Defendants also sought dismissal based on international comity and the political

2   question doctrine. For those reasons, alone, Plaintiffs are not likely to succeed on the merits.

3           **b.    Plaintiffs have Unclean Hands**

4           Plaintiffs seek only equitable relief in this action, but their unclean hands preclude such

5   relief. A party has unclean hands when it has violated conscience, good faith, or other equitable

6   principles in its prior conduct related to the same matter as that at issue in the present case. *Bankers*

7   *Life & Cas. Co. v. Jupiter,* 2011 U.S. Dist. LEXIS 80146, 5-6 (W.D. Wash. July 22, 2011) (citing

8   *Dollar Sys. Inc. v. Avcar Leasing Sys., Inc.,* 890 F.2d 165, 173 (9th Cir. 1989)). It is a basic legal

9   tenet that before a party can seek equity, it must do equity:

10

11          It is one of the fundamental principles upon which equity jurisprudence is founded,
            that before a complainant can have a standing in court he must first show that not
12          only has he a good and meritorious cause of action, but he must come into court with
            clean hands . . . . The governing principle is that whenever a party … seeks to set the
13          judicial machinery in motion and obtain some remedy, has violated conscience, or
            good faith, or other equitable principle, in his prior conduct, then the doors of the
14          court will be shut against him . . . . the court will refuse to interfere on his behalf, to
            acknowledge his right, or to award him any remedy.
15
    *Keystone Driller Co. v. General Excavator Co.,* 290 U.S. 240, 244-45 (U.S. 1933) (internal citations
16
    and quotations omitted).
17
            Here, Plaintiffs have unclean hands for two reasons. First, Plaintiffs have a history of
18
    prolonged and serious violence towards Defendants. Plaintiffs frequently navigate dangerously close
19
    to Defendants' vessels and intentionally ram Defendants' vessels. Watson Decl. ¶¶12, 15. Plaintiffs
20
    intentionally rammed one of Sea Shepherd's smallest vessels, the ADY GIL, slicing her in half.
21
    Hammarstedt Decl. ¶¶14. With the vessel in pieces and slowly sinking, Plaintiffs continued shooting
22
    at Defendants' crew with high-pressure water cannons and ignored the vessel's mayday calls.
23
    Watson Decl. ¶12; Harris Decl. Ex. 14, video. Plaintiffs have thrown bamboo spears, iron grappling
24
    hooks, and concussion grenades at Defendants' crewmembers. Watson Decl. ¶¶12, 15. They have
25
    aimed LRAD devices (equipment designed to cause disorientation) at Defendants, including
26

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION- 10

**Harris & Moure**
*A Professional Limited Liability Company*
600 Stewart Street, Suite 1200
Seattle, WA 98101
Phone: (206) 224-5657
Fax: (206) 224-5659

Defendants' helicopter pilot while in flight. Hammarstedt Decl. ¶13. Endangering Defendants' pilot in this manner could easily have caused the helicopter to crash, further imperiling everyone in the vicinity. *Id.*

Plaintiffs come before this Court claiming that Defendants have violated international norms and put the safety of their crew at risk. It is Plaintiffs though who have violated all of the international treaties they use as a basis for relief. *See* Cushman Decl., Ex. 2, Report. Given this significant history of violence, Plaintiffs are not entitled to any equitable relief. *Keystone Driller Co.,* 290 U.S. at 244-45.

Second, Plaintiffs are not entitled to equity because they come before this Court with the blood of thousands of illegally slaughtered whales upon their hands. Plaintiffs' whaling practices are condemned by both the international community and the scientific community. In recent years, the IWC has twice called for Plaintiffs to end their lethal "research" whaling. D. Harris Decl., Exs. 6-7. In the last year, the governments of thirteen different nations have issued statements calling for an end to Plaintiffs' so-called "scientific whaling."[3] The International Court of Justice will soon review Australia's suit against Japan for breach of its international obligations concerning whaling. D. Harris Decl., Ex. 4. The scientific community has also raised challenges to Plaintiffs' whaling, publishing numerous articles which explain the full scientific perspective on why Plaintiffs' lethal methods are unnecessary and showing that Plaintiffs' whaling is a commercial enterprise, not a scientific one. *See* D. Harris Decl. ¶¶9-15, Exs. 8-10.

In addition to being unquestionably unscientific and barbaric, Plaintiffs' whaling activities are illegal. Plaintiffs' annual slaughter of hundreds of threatened and endangered whales not only violates the IWC's commercial moratorium on whaling, it also violates international customary law as well. Customary international law is the "general and consistent practice of states followed by

---

[3] *See* December 13, 2011 Joint Statement on Whaling, available at http://www.state.gov/r/pa/prs/ps/2011/12/178704.htm; *see* the Mexican Government's press release regarding the joint statement, available at: http://portal3.sre.gob.mx/english/index.php?option=com_content&task=view&id=957&Itemid=9.

**Harris & Moure**
*A Professional Limited Liability Company*
600 Stewart Street, Suite 1200
Seattle, WA  98101
Phone: (206) 224-5657
Fax: (206) 224-5659

them from a sense of obligation." *Sampson v. Fed. Republic of Germany & Claims Conf.,* 250 F.3d 1145, 1149 (7th Cir. 2001). "Customary international law, like international law defined by treaties and other international agreements, rests on the consent of states . . . . International agreements and customary international law create norms known as *jus dispositivum*, the category of international law that 'consists of norms derived from the consent of states' and that is founded 'on the self-interest of the participating states.'" *Siderman de Blake v. Republic of Argentina,* 965 F.2d 699, 715 (9th Cir. Cal. 1992). The sentiments of nations around the world, as well as recent IWC resolutions, demonstrate a clear consensus that Plaintiffs' lethal whaling is abhorrent and indefensible. In 1986, the IWC put a global moratorium in place on all commercial whaling, and this moratorium is binding on Japan because Japan withdrew its objections and consented to the moratorium in 1988.[5] Plaintiffs, Japanese entities and citizens, are bound by Japan's obligations to the commercial moratorium on whaling both because Japan is a party to this agreement and because this moratorium represents customary international law binding on Japan.

Plaintiffs claim the legality of their whaling practices "is not the issue before the court." However, the legality of these practices *must* be at issue in this case where Plaintiffs seek equitable relief. Defendants interfere with Plaintiffs because Plaintiffs' slaughter of whales is illegal. Plaintiffs are killing threatened and endangered species in an internationally recognized whale sanctuary and robbing the world community of these creatures. The whales slaughtered by Plaintiffs are not theirs to kill—the whales belong to the world as a whole. Such conduct shocks the conscience, and Plaintiffs' bad-faith abuses of the IWC scientific research permitting system militate against Plaintiffs' entitlement to equitable relief.

Given these substantial concerns regarding Plaintiffs' likelihood of success on the merits (and the fact that Plaintiffs have a remedy at law—money damages), Plaintiffs are not entitled to an injunction at this early phase of the case. Defendants maintain that any determination on the

---

[5] International Whaling Commission Schedule, Article III para. 10(e) (1982) (available at: http://www.iwcoffice.org/commission/schedule.htm) see footnotes (describing objections and withdrawal of objections).

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION- 12

**Harris & Moure**
*A Professional Limited Liability Company*
600 Stewart Street, Suite 1200
Seattle, WA  98101
Phone: (206) 224-5657
Fax: (206) 224-5659

1   substantive strength of Plaintiffs' case entitling them to injunctive relief should be reserved until the

2   issues may be fully explored in the discovery process. *See, e.g., Kerr Corp. v. North Am. Dental*

3   *Wholesalers, Inc.,* 2011 U.S. Dist. LEXIS 61779, 17-18 (C.D. Cal. June 9, 2011).

4          **2.      Plaintiffs Will Not Suffer Irreparable Harm.**

5          Plaintiffs also fail to meet their burden under the second prong of the *Winter* test. In

6   determining whether Plaintiffs have satisfied this inquiry, one must consider Plaintiffs' profound

7   delay in seeking relief from this, or any other, Court. As observed by the Second Circuit,

8   "preliminary injunctions are generally granted under the theory that there is an urgent need for

9   speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however,

10  tends to indicate at least a reduced need for such drastic, speedy action." *Majorica, S.A., v. R.H.*

11  *Macy & Co., Inc,* 762 F.2d 7, 8 (2nd Cir. 1985); *see also, Life Techs. Corp. v. AB Sciex PTE, Ltd.*,

12  2011 U.S. Dist. LEXIS 40586, 2011 WL 1419612, *7 (S.D.N.Y Apr. 14, 2011) ("failure to act

13  sooner 'undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief

14  and suggests that there is, in fact, no irreparable injury.'" (quoting *Citibank, N.A. v. Citytrust*, 756

15  F.2d 273, 277 (2d Cir.1985) (additional citations omitted)).

16         District courts within the Ninth Circuit have also considered delay when analyzing the

17  irreparable injury prong of the *Winter* test. *See Kerr Corp. v. North Am. Dental Wholesalers, Inc.,*

18  2011 U.S. Dist. LEXIS 61779, 4-5 (C.D. Cal. June 9, 2011) (denied plaintiff's request for

19  preliminary injunction where plaintiff delayed litigation, determining that the significant delay meant

20  plaintiff could not satisfy the irreparable injury prong); *see also, Oakland Tribune, Inc. v. Chronicle*

21  *Pub. Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985); *Givemepower Corp. v. Pace Compumetrics,*

22  *Inc.*, 2007 U.S. Dist. LEXIS 20886, 2007 WL 951350, *7 (S.D. Cal. Mar.23, 2007) (delay of two

23  months revealed lack of irreparable harm).

24         Plaintiffs' own delay demonstrates a complete lack of urgent need. If Plaintiffs truly believed

25  they were at risk and would suffer "irreparable harm" at Defendants' hands, they would have (and

26

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION- 13

**Harris & Moure**
*A Professional Limited Liability Company*
600 Stewart Street, Suite 1200
Seattle, WA  98101
Phone: (206) 224-5657
Fax: (206) 224-5659

could have and should have) filed this lawsuit months, if not years ago. If Plaintiffs truly believed their crew is at such risk, they also could just stop their illegal whale slaughter and face no further alleged "safety risks" from Defendants. The history between the parties spans almost a decade, and this action could have been filed at any point during that period.

But the timing of this suit was deliberate. Plaintiffs waited until Defendants had funded and fully prepared for their 2011-2012 Antarctic whale defense campaign to sue. Plaintiffs filed this lawsuit to time it so virtually all witnesses would be at sea. Plaintiffs' timing of this lawsuit was a strategic effort to maximize the harm Plaintiffs would cause to Defendants. Their timing may prevent Defendants from presenting witnesses to testify and it has already precluded Defendants from deposing the individual Plaintiffs. Standing alone, Plaintiffs delay tactics preclude a finding of irreparable harm under *Kerr*.

Plaintiffs' analysis on this prong also fails because they rely upon a misplaced First Amendment argument to satisfy their burden. As previously set forth in Defendants' Motion to Dismiss, application of the *Lauritzen* factors shows that U.S. law does not apply to this case. The events of which Plaintiffs complain all occurred in Australian ports and/or waters and/or on the high seas, and all involved foreign-owned and foreign-flagged vessels. Plaintiffs have submitted no legal analysis regarding if or how the First Amendment properly applies to a dispute involving international parties engaging in extraterritorial events on the high seas. Without citing a single case, Plaintiffs claim that the U.S. Constitution applies to the Southern Ocean Whale Sanctuary and that a First Amendment analysis properly governs issuance of an injunction in this case. Beyond the fundamental flaws in Plaintiffs' legal analysis, Defendants are not engaged in a mere "illegal protest" subject to First Amendment principles.

Relying on cases such as *Lac du Flambeau v. Stop Treaty Abuse-Wisconsin,* 759 F. Supp. 1339 (W.D. Wis. 1991), Plaintiffs assert that "protests" must be limited where they impede the lawful exercise of the established rights of others. In *Lac du Flambeau,* a Native American tribe sued

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION- 14

**Harris & Moure**
*A Professional Limited Liability Company*
600 Stewart Street, Suite 1200
Seattle, WA  98101
Phone: (206) 224-5657
Fax: (206) 224-5659

to enjoin protesters from blocking their fishing activities. In that case, the tribe had an established treaty right to engage in the activities the protesters opposed and the area involved was within the court's local jurisdiction.  Similarly, in *Portland Fem. Women's Health Ctr. v. Advocates for Life,* 859 F.2d 681 (9th Cir. 1988) and *Madsen v. Women's Health Ctr., Inc.,* 512 U.S. 753 (1994), the plaintiffs' established rights were threatened. U.S. courts have determined the right to privacy includes the right to birth control, including abortion services. *Planned Parenthood v. Casey,* 505 U.S. 833 (1992); *Roe v. Wade,* 410 U.S. 179 (1973). When balancing interests in those cases, the courts were evaluating the lawful rights of those seeking abortions, providing abortions, and those protesting abortions.

Conversely, Plaintiffs in this case have no such right to engage in their illegal whaling activities—their whaling is an illegal fraud. Though Plaintiffs claim to conduct "scientific research," they are really killing whales for commercial sale and profit. Plaintiffs' actions contravene the global moratorium on commercial whaling, as well as the demands of the IWC and the world community, that they discontinue lethal whaling. *See* D. Harris Decl. Exs. 6 and 7, IWC resolutions 2005-1, 2007-1; Joint statements on whaling, previously cited pages 6-7 *supra*. Because Plaintiffs' activities are illegal and shunned by the world community, Plaintiffs cannot rely upon First Amendment cases that balance the right to Freedom of Speech against the exercise of lawful rights of opposing parties. These cases simply do not support Plaintiffs' position. Plaintiffs will not be irreparably harmed if the Court declines to enjoin Defendants' interference with their illegal whale slaughter, because Plaintiffs have no lawful right to engage in such activities.

Further, despite Plaintiffs' wild and unsubstantiated accusations, Defendants will not "soon engage in more severe attacks" upon Plaintiffs. Defendants adhere to a strict policy of non-violence and train their crewmembers and volunteers accordingly. Watson Decl. ¶6; Hammarstedt Decl. ¶8; Harris Decl. ¶19, Ex. 14, video. Instead, it is Plaintiffs who have escalated violence and endangered the lives of Defendants' volunteers and crewmembers, ***even while this case is pending***. Watson

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION- 15

**Harris & Moure**
*A Professional Limited Liability Company*
600 Stewart Street, Suite 1200
Seattle, WA  98101
Phone: (206) 224-5657
Fax: (206) 224-5659

Decl. ¶15. If the Court denies Plaintiffs' request for an injunction, the only way Plaintiffs will be "harmed" is that Plaintiffs will not have received this Court's assistance in continuing their illegal, unethical operations.

### 3.    The Balance of Hardships Favors Defendants, Not Plaintiffs.

Plaintiffs contend the balance of hardships tips in their favor because Defendants are engaged in "illegal protest" that is a threat to Plaintiffs' safety and property. This analysis is deeply flawed.

Plaintiffs rely on *Planned Parenthood v. A. Coal. Of Life Activists,* 41 F. Supp. 2d 1130 (D. Or. 1999) to support their claims under this prong by analogizing Defendants' conduct to anti-abortion protestors who directly threatened abortion clinicians with death and severe bodily harm. The facts of that case are so different from those before this Court as to render that case irrelevant. That case involved obviously violent defendants whose incitements of violence and threats to kill had led to the actual murders of abortion-providing doctors during the 1990s. *Id.* at 1131-50. Defendants' actions had necessitated the use of bullet-proof vests by abortion clinicians and forced them to take alternate routes home due to threats on their lives. *Id.* at 1154. Unlike Plaintiffs in this case, Planned Parenthood workers did not seek out their alleged attackers, nor did they create confrontations and commit violent acts against those they sought to enjoin. Also, unlike Plaintiffs, those parties truly were victims of violence and had no adequate remedy at law.

Plaintiffs' own Complaint and their other court filings demonstrate a lack of any direct threat to Plaintiffs by Defendants. Plaintiffs have not produced a single statement by Defendants directly threatening their safety. Defendants have no interest in physically harming Plaintiffs. Defendants are solely focused on stopping Plaintiffs' illegal slaughter of whales. Defendants are expressly authorized by international law to do exactly what they are accused of doing—the U.N. World Charter for Nature authorizes Defendants' actions. Defendants are not merely engaged in "protest." Defendants are acting as a private coast guard in an effort to stop Plaintiffs' illegal whaling activities. Watson Decl.¶6; Hartland Decl. ¶¶4-7. Defendants' activities are akin to that of navies and

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION- 16

**Harris & Moure**
*A Professional Limited Liability Company*
600 Stewart Street, Suite 1200
Seattle, WA 98101
Phone: (206) 224-5657
Fax: (206) 224-5659

coast guards, which are authorized to use significantly more force than the non-violent methods Defendants employ.

The balance of hardships does not favor Plaintiffs, because the relief Plaintiffs request is impracticable and impossible to enforce. Cushman Decl., Ex. 2, p.3. Neither COLREGS nor international norms require the vessels to be 800 meters apart. *Id.* Plaintiffs' requested injunction—restraining Defendants' movements upon the high seas—is an abusive attempt to get this Court to provide through a civil remedy what Plaintiffs could not obtain through diplomatic means.

Finally, enjoining Defendants' activities in the Southern Ocean Whale Sanctuary would impose a substantial hardship on Defendants. Defendants have invested some $1.657 million USD to date in their 2011-2012 Antarctic whale defense campaign, Operation Divine Wind, with additional funds required to pay crewmembers, fuel bills, and for repairs to the BRIGITTE BARDOT. Watson Decl. ¶16. The funds to undertake this campaign came from Sea Shepherd's private donors, who support Sea Shepherd's conservation activities. Hartland Decl. ¶7. If enjoined, Sea Shepherd will not be able to fulfill its mission as a non-profit organization and may potentially lose millions of dollars in future donations. Hartland Decl. 8-9. Plaintiffs on the other hand, have virtually unlimited governmental funding, even taking $30 million USD in funds designated for tsunami relief this past season. D. Harris Decl., Ex. 13.

### 4.    An Injunction Is Both Impractical and Against the Public Interest.

Plaintiffs bear the initial burden of showing an injunction is in the public interest. *See Winter*, 555 U.S. at 26. Injunctive relief is granted "not as a matter of right but in the exercise of a sound judicial discretion." *Morrison v. Work,* 266 U.S. 481, 490 (1925). In the exercise of that discretion, district courts may properly refuse to grant injunctive relief that is impracticable or otherwise contrary to the public interest. *See, e.g., Weinberger v. Romero-Barcelo,* 456 U.S. 305, 312 (1982) ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."); *O'Shea v. Littleton,* 414 U.S.

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION- 17

**Harris & Moure**
*A Professional Limited Liability Company*
600 Stewart Street, Suite 1200
Seattle, WA  98101
Phone: (206) 224-5657
Fax: (206) 224-5659

488, 500 (1974) ("A federal court should not intervene to establish the basis for future intervention that would be . . . intrusive and unworkable.").

The relief requested by Plaintiffs is both impracticable and counter to the public interest. Requests for extraterritorial injunctions often raise serious concerns for sovereignty and enforceability that compel denial. *See generally Vanity Fair Mills, Inc. v. T. Eaton Co.,* 234 F.2d 633, 647 (2d Cir. 1956). The power to enjoin activities on foreign soil "should be exercised with great reluctance when . . . the exercise of such power is fraught with possibilities of discord and conflict with the authorities of another country." *Id.* (holding that Lanham Act did not apply to actions committed by foreign citizens acting under presumably valid trademarks in a foreign country); *see also McKusick v. City of Melbourne,* 96 F.3d 478, 488 (11th Cir. 1996) ("'There is not an absolute right to an injunction in a case in which it would impair or affront the sovereign powers or dignity of a state or a foreign nation.'" (quoting *Hoover v. Wagner,* 47 F.3d 845, 850 (7th Cir. 1995))). Under these principles alone, the public interest is not served by granting of Plaintiffs' requested injunction.

The cases Plaintiffs rely upon to justify their entitlement to an injunction are also highly distinguishable, because the courts that issued those injunctions readily had jurisdiction over the defendants and areas of land at issue. Here, the events complained of involve foreign-flagged and owned vessels based out of Australia. They also involve crew, captains, and volunteers from around the world, the majority of whom are not U.S. nationals. The activities complained of take place in the Southern Ocean Whale Sanctuary and/or in Australian ports and/or waters—all the way across the world from this Court. At this early juncture, it is not apparent that the Court should exercise jurisdiction over these persons, vessels, and locations. If an injunction were to issue, enforcement would be impracticable, maybe even impossible.

The rules, or lack thereof, that apply in remote international waters have not been fully explored. Plaintiffs have failed to establish that they are entitled to a cause of action under the

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION- 18

**Harris & Moure**
*A Professional Liability Company*
600 Stewart Street, Suite 1200
Seattle, WA  98101
Phone: (206) 224-5657
Fax: (206) 224-5659

treaties they cite and that those treaties provide for injunctive relief. See Defendants' Motion to Dismiss, Dkt #29. Issuance of an injunction in this case would affect international parties and foreign relations. Whaling is a matter of international concern, and many nations have expressed their desire for Plaintiffs to end their abusive "scientific research" program. Likewise, the IWC, an organization that exists solely to regulate whaling around the world, has specifically called for Plaintiffs to end their lethal whaling. The legality of Plaintiffs' conduct is presently under challenge by Australia in the International Court of Justice. The remedy Plaintiffs seek is impracticable and would negatively affect foreign relations, as well as impede upon the executive branch of the U.S. government.

Courts "will not grant a preliminary injunction . . . unless [the] public interests outweigh other public interests that cut in favor of not issuing the injunction." *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1138 (9th Cir. 2011). Though Plaintiffs argue that this injunction only affects the parties, this assertion is not true. The issuance of this injunction would have global implications on foreign relations and run counter to the public interest in preserving threatened and endangered species, especially those migrating through a designated whale sanctuary. Environmental and species conservation is in the public interest, and the worldwide condemnation of Plaintiffs' whaling is concrete proof of the public interest in preserving whales.

The public interest factors weighing against issuance of this injunction are significant. Plaintiffs' request is impracticable, bears on foreign relations and activities of the executive branch, and runs counter to the global public interest in conserving whales. This injunction pertains to an extraordinarily remote portion of the world where there are few members of the "public." If "public order" were so critical in the Southern Ocean Whale Sanctuary, one would think that the governments of nations around the world would have intervened to "protect" Plaintiffs from these alleged "safety risks" years ago. Simply put, there is no public interest in Plaintiffs' requested relief.

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION- 19

**Harris & Moure**
*A Professional Limited Liability Company*
600 Stewart Street, Suite 1200
Seattle, WA  98101
Phone: (206) 224-5657
Fax: (206) 224-5659

The Ninth Circuit has recognized "the well-established 'public interest in preserving nature and avoiding irreparable environmental injury.'" *Id.* (internal citations omitted) (issuing an injunction in favor of plaintiff-appellants to enjoin a timber salvage sale in violation of the Forest Service Decision and Appeals Reform Act and finding that the plaintiffs had shown they would be irreparably harmed by their inability to "view, experience, and utilize" the area if the logging project were allowed to proceed). The Ninth Circuit has also held that "the preservation of our environment, as required by NEPA and NFMA, is clearly in the public interest." *Earth Island Inst. v. United States Forest Serv.,* 442 F.3d 1147, 1177 (9th Cir. 2006), abrogated on other grounds by *Winter,* 555 U.S. 7 (2008). These sentiments were incorporated into the District Court's rationale for granting a preliminary injunction in favor of plaintiffs Center for Food Safety, Organic Seed Alliance, Sierra Club, and High Mowing Organic Seeds to enjoin the USDA from issuing permits to seed companies to plant genetically modified sugar beets in the absence of NEPA analysis and in violation of the Plaint Protection Act, the 2008 Farm Bill, and the APA. *See Ctr. for Food Safety v. Vilsack,* 753 F. Supp. 2d 1051, 1060 (N.D. Cal. 2010); *see also Oregon Natural Desert Ass'n v. Tidwell,* 2010 U.S. Dist. LEXIS 137612, 14-15 (D. Or. Dec. 29, 2010) ("the court must recognize 'the well-established public interest in preserving nature and avoiding irreparable environmental injury'" in enjoining the USFS from continuing grazing activity in violation of the ESA and NFMA).

The public interest also favors compliance with environmental laws. *See Fund for Animals, Inc. v. Epsy,* 814 F. Supp. 142, 152 (D.D.C. 1993). The public interest cannot be served by granting a preliminary injunction to Plaintiffs that furthers Plaintiffs' illegal poaching of whales in an internationally recognized whale sanctuary and undermines Defendants' conservation efforts. If Plaintiffs continue killing whales unobstructed, the public interest will be permanently and irreparably harmed. The world recognized this fact years ago when the IWC established the global moratorium on commercial whaling.

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION- 20

**Harris & Moure**
*A Professional Limited Liability Company*
600 Stewart Street, Suite 1200
Seattle, WA  98101
Phone: (206) 224-5657
Fax: (206) 224-5659

C.      Freedom of Speech

Even though Plaintiffs' assertion that the U.S. Constitution extends worldwide is illogical, no injunction may issue that contravenes the First Amendment or Defendants' due process rights. Defendants' activities are more than protest. They are global conservation activities authorized by the U.N. World Charter for Nature and funded by the donations of private individuals. If it is determined that Defendants' activities on the high seas and in Australian waters are properly analyzed under a First Amendment framework, Defendants' speech must be protected as "symbolic" speech, because it is activity "sufficiently imbued with elements of communication." *Spence v. Washington,* 418 U.S. 405, 409 (1974). Defendants' non-violent activities and annoyance tactics communicate that they, along with many around the world, find Plaintiffs' slaughter of whales monstrous. Defendants also document Plaintiffs' whale slaughter for the rest of the world to see. This symbolic speech is of public concern, involving the global interest in conservation of whales and in preventing their illegal slaughter. First Amendment protections are more rigorous for matters of public concern. *Snyder v. Phelps,* 131 S. Ct. 1207, 1216 (2011).

Public places occupy a "special position in terms of First Amendment protection." *Id.* at 1218. Presumably, the high seas are a public place, and Plaintiffs' requested relief goes beyond narrow tailoring requirements on time, place, and manner restrictions. Plaintiffs' requested relief would put the two parties so physically far apart as to deprive Defendants' activities of all meaning, as well as prevent them from effectively documenting Plaintiffs' whale slaughter. This result violates the First Amendment rights of Defendants, as well as the rights of Sea Shepherd's many donors. *See Emily's List v. FEC,* 581 F.3d 1, 4 (D.C. Cir. 2009) ("The First Amendment, as interpreted by the Supreme Court, protects the right of individual citizens to spend unlimited amounts to express their views about policy issues . . . . Similarly, the First Amendment, as the Court has construed it, safeguards the right of citizens to band together and pool their resources as an unincorporated group or non-profit organization in order to express their views about policy issues . . . .").

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION- 21

**Harris & Moure**
*A Professional Limited Liability Company*
600 Stewart Street, Suite 1200
Seattle, WA  98101
Phone: (206) 224-5657
Fax: (206) 224-5659

**D.      Plaintiffs Have a Remedy at Law.**

Finally, Plaintiffs are not entitled to an injunction, because they have a very clear and easily available remedy at law—monetary damages. Plaintiffs have failed to establish even the mere specter of harm to their vessels and crew justifying an extraordinary remedy enjoining Defendants' freedom on the high seas. Instead, Plaintiffs may seek damages. Damages are an adequate remedy at law, precluding Plaintiffs' requested relief. *See Elias v. Connett,* 908 F.2d 521, 526 (9th Cir. 1990). Plaintiffs may seek money damages for alleged past harm to vessels. Plaintiffs have already submitted evidence they claim shows damages caused to their vessels by Defendants. These documents also show the monetary cost of the repairs for damage allegedly caused by Defendants. If Plaintiffs can show that Defendants negligently or intentionally damaged Plaintiffs' vessels, there is absolutely nothing to prevent Plaintiffs from suing Defendants to recover those damages. Likewise, if Defendants damage Plaintiffs' vessels in the future, Plaintiffs can sue for whatever monetary damages they incur.

Suit may also be brought for future personal injuries by those actually injured, if any such injury were ever to occur, but no law entitles others to sue on their behalf. Neither of the two individual Plaintiffs have ever been injured by Defendants, nor do either of them claim that they themselves are at risk of physical injury. As captains, Plaintiffs Ogawa and Miura are protected in the wheelhouse from all that Defendants allegedly do and have done, and thus cannot credibly claim to fear injury. None of the Plaintiffs have standing to sue for past or future personal injuries to their crew.

**E.      Plaintiffs Must Post a Substantial Bond.**

FRCP 65(c) requires a movant seeking a preliminary injunction to post a bond. Determination of the amount of the bond is committed to the discretion of this Court. *Barahona-Gomez v. Reno,* 167 F.3d 1228 (9th Cir. 1999). The bond is required "to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FRCP 65(c).

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION- 22

**Harris & Moure**
*A Professional Limited Liability Company*
600 Stewart Street, Suite 1200
Seattle, WA  98101
Phone: (206) 224-5657
Fax: (206) 224-5659

1
2
3
4
5
6
7
8
9
10
11
12
13
14

If this Court issues a preliminary injunction enjoining Defendants' conservation activities in the Southern Ocean Whale Sanctuary, Plaintiffs are required to post a large bond, because Defendants will be greatly harmed by having their freedom restrained. The requested injunction will not allow Sea Shepherd to fulfill its mission as a non-profit organization, and Sea Shepherd has made significant investments in Operation Divine Wind, its current Antarctic whale defense campaign, that will be lost if its activities are enjoined. Sea Shepherd is a non-profit organization funded by private donations. Hartland Decl. ¶7. These donations will most certainly be reduced if Sea Shepherd is prevented from carrying out its conservation work. *Id.* at ¶8. Further, the funds were donated to Sea Shepherd with the intent that Sea Shepherd use the funds for conservation activities, so an injunction would harm Sea Shepherd's many donors as well. Operation Divine Wind has cost Sea Shepherd $1.657 million USD thus far, with another $360,000 USD in anticipated expenses for crew wages, fuel, and repairs to the BRIGITTE BARDOT. Watson Decl. ¶16. Enjoining Sea Shepherd from continuing its conservation activities in the Southern Ocean Whale Sanctuary would be devastating to it both financially and with respect to its mission as a non-profit organization.

15
16
17
18
19
20

This case involves unique international interests in remote portions of the world and complicated matters of international law. Additionally, the case has yet to be fully explored through the discovery process. The potential that Defendants could be wrongly restrained at this early stage of the litigation is extraordinarily high. Plaintiffs should be required to post a bond in the amount of at least $4 million USD to pay for costs and damages that will be sustained by Defendants if wrongly restrained.

21
22

### IV.    CONCLUSION

23

For the foregoing reasons, Plaintiffs' request for a Preliminary Injunction should be denied.

24
25
26

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION- 23

**Harris & Moure**
*A Professional Limited Liability Company*
600 Stewart Street, Suite 1200
Seattle, WA  98101
Phone: (206) 224-5657
Fax: (206) 224-5659

DATED this 30th day of January, 2012.

HARRIS & MOURE, pllc

By: s/ Dan Harris
Daniel P. Harris, WSBA #16778
Charles P. Moure, WSBA # 23701
Rachel Buker, WSBA #43005
Attorneys for Defendants
dan@harrismoure.com
rachel@harrismoure.com
600 Stewart Street, Suite 1200
Seattle, WA 98101
Tel. (206) 224-5657
Fax: (206) 224-5659


**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that on this 30th of January, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ ECF system, which will send notification of such filing to the Honorable Richard A. Jones, and will serve it on all associated counsel.


I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.


SIGNED at Seattle, Washington this 30th day of January, 2011.


By: s/ Miriam Roth

Miriam Roth

DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION- 24

**Harris & Moure**
*A Professional Limited Liability Company*
600 Stewart Street, Suite 1200
Seattle, WA 98101
Phone: (206) 224-5657
Fax: (206) 224-5659