**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| INSTITUTE OF CETACEAN RESEARCH, a Japanese research foundation; KYODO SENPAKU KAISHA, LTD., a Japanese corporation; TOMOYUKI OGAWA, an individual; TOSHIYUKI MIURA, an individual, *Plaintiffs-Appellants*, <br><br> v. <br><br> SEA SHEPHERD CONSERVATION SOCIETY, an Oregon nonprofit corporation; PAUL WATSON, an individual, *Defendants-Appellees*. | No. 12-35266 <br><br> D.C. No. 2:11-cv-02043-RAJ <br><br><br> ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the Western District of Washington
Richard A. Jones, District Judge, Presiding

Argued and Submitted
October 9, 2012—Seattle, Washington

Filed February 25, 2013
Amended May 24, 2013

Before: Alex Kozinski, Chief Judge, A. Wallace Tashima
and Milan D. Smith, Jr., Circuit Judges.

2     INST. OF CETACEAN RESEARCH V. SEA SHEPHERD

Order;
Opinion by Chief Judge Kozinski;
Partial Concurrence and Partial Dissent
by Judge Milan D. Smith, Jr.

## SUMMARY[*]

### Maritime Law

The panel reversed the district court's orders denying a preliminary injunction and dismissing certain claims in an action under the Alien Tort Statute brought against environmental activists by Japanese researchers who hunt whales in the Southern Ocean pursuant to a permit issued under the International Convention for the Regulation of Whaling, art. VIII.

The panel held that the whalers stated claims for piracy, defined under the United Nations Convention on the Law of the Sea and the High Seas Convention as "illegal acts of violence or detention, or any act of depredation, committed for private ends by the crew or the passengers of a private ship . . . and directed . . . on the high seas, against another ship . . . or against persons or property on board such ship." The panel held that "private ends" are not limited to those pursued for financial enrichment and that "violence" extends to malicious acts against inanimate objects.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Reversing the denial of the whalers' motion for a preliminary injunction, the panel held that they were likely to succeed on the merits of their claims under three international agreements: the Convention for the Suppression of Unlawful Acts Against the Safety of Maritime Navigation, the United Nations Convention on the Law of the Sea, and the Convention on the International Regulations for Preventing Collisions at Sea. The panel held that there was a likelihood of irreparable harm, and the balance of the equities and the public interest favored the whalers. The panel held that the district court abused its discretion in deferring to the judgment of an Australian court because the United States does not recognize Australia's claims of sovereignty over Antarctic waters. In addition, the unclean hands doctrine did not apply. The panel remanded the case with instructions that it be transferred to another district judge.

Concurring in part and dissenting in part, Judge Smith concurred in both the reasoning and the judgment of the panel opinion, reversing the district court's dismissal of the whalers' piracy claims, and its failure to grant them a preliminary injunction. He dissented from the majority's decision to reassign the case to a different district judge.

## COUNSEL

Martha Christie Helmer, John Neupert (argued) and James L. Phillips, Miller Nash, LLP, Portland Oregon, for Appellants.

Rachel Eve Buker, Daniel P. Harris (argued) and Charles Philip Moure, Harris & Moure, PLLC, Seattle, Washington, for Appellees.

## ORDER

The opinion is amended as follows:

| | |
|---|---|
| 708 F.3d at 1106, Column 1, Lines 14–18 | Replace <The district judge's . . . high-profile case.> with <Panels have broad discretion to reassign cases on remand when they feel justice or its appearance requires it. *See United States* v. *Quach*, 302 F.3d 1096, 1103–04 (9th Cir. 2002). The district judge has expressed strong and erroneous views on the merits of this high profile case. Without ourselves reaching any determination as to his ability to proceed impartially or impugning his integrity, to preserve the appearance of justice, we conclude reassignment is appropriate. *See Ellis* v. *U.S. Dist. Court (In re Ellis)*, 356 F.3d 1198, 1211 (9th Cir. 2004) (en banc).> |

Defendants-Appellees' petition for rehearing en banc is denied. *See* Fed. R. App. P. 35.

Paul Watson's petition for rehearing en banc of our April 1, 2013, order denying him leave to file a late supplemental petition for rehearing en banc is also denied. *See id.* We are unpersuaded by Watson's belated claim that he and co-defendant-appellee Sea Shepherd developed "divergent interests." Watson had months to consider whether his interests diverge from Sea Shepherd's, yet claims to have discovered only recently that they do. He does not

explain how or why. His bald assurance that "serious grounds exist[]" is too little, too late.

No further petitions for panel rehearing or rehearing en banc may be filed.

---

**OPINION**

KOZINSKI, Chief Judge:

You don't need a peg leg or an eye patch. When you ram ships; hurl glass containers of acid; drag metal-reinforced ropes in the water to damage propellers and rudders; launch smoke bombs and flares with hooks; and point high-powered lasers at other ships, you are, without a doubt, a pirate, no matter how high-minded you believe your purpose to be.

Plaintiffs-Appellants (collectively, "Cetacean") are Japanese researchers who hunt whales in the Southern Ocean. The United States, Japan and many other nations are signatories to the International Convention for the Regulation of Whaling art. VIII, Dec. 2, 1946, 62 Stat. 1716, 161 U.N.T.S. 74, which authorizes whale hunting when conducted in compliance with a research permit issued by a signatory. Cetacean has such a permit from Japan. Nonetheless, it has been hounded on the high seas for years by a group calling itself Sea Shepherd Conservation Society and its eccentric founder, Paul Watson (collectively "Sea Shepherd"). Sea Shepherd's tactics include all of those listed in the previous paragraph.

Cetacean sued under the Alien Tort Statute, 28 U.S.C. § 1350, for injunctive and declaratory relief. The statute provides a cause of action for "a tort . . . committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. Cetacean argues that Sea Shepherd's acts amount to piracy and violate international agreements regulating conduct on the high seas. The district court denied Cetacean's request for a preliminary injunction and dismissed its piracy claims. We have jurisdiction over the order denying the injunction pursuant to 28 U.S.C. § 1292(a). We also have jurisdiction to review the dismissal of the piracy claims because the district court's reasoning for dismissing them is "inextricably intertwined with" its reasons for denying the preliminary injunction. *Smith* v. *Arthur Andersen LLP*, 421 F.3d 989, 998 (9th Cir. 2005) (internal quotation marks omitted).

## I.  DISMISSAL OF THE PIRACY CLAIMS

We review the district court's dismissal of Cetacean's piracy claims de novo. *Manzarek* v. *St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030 (9th Cir. 2008). "[T]he definition of piracy under the law of nations . . . [is] spelled out in the UNCLOS, as well as the High Seas Convention," which provide almost identical definitions. *United States* v. *Dire*, 680 F.3d 446, 469 (4th Cir. 2012); *see* United Nations Convention on the Law of the Sea ("UNCLOS"), art. 101, Dec. 10, 1982, 1833 U.N.T.S. 397; Convention on the High Seas, art. 15, Apr. 29, 1958, 13 U.S.T. 2312, 450 U.N.T.S. 82. The UNCLOS defines "piracy" as "illegal acts of *violence* or detention, or any act of depredation, committed for *private ends* by the crew or the passengers of a private ship . . . and directed . . . on the high seas, against another ship . . . or against persons or property on board such ship."

UNCLOS art. 101 (emphasis added); *see also* Convention on the High Seas art. 15.

The district court's analysis turns on an erroneous interpretation of "private ends" and "violence." The district court construed "private ends" as limited to those pursued for "financial enrichment." But the common understanding of "private" is far broader. The term is normally used as an antonym to "public" (e.g., private attorney general) and often refers to matters of a personal nature that are not necessarily connected to finance (e.g., private property, private entrance, private understanding and invasion of privacy). *See Webster's New Int'l Dictionary* 1969 (2d. ed. 1939) (defining "private" to mean "[b]elonging to, or concerning, an individual person, company, or interest").

We give words their ordinary meaning unless the context requires otherwise. *See Leocal* v. *Ashcroft*, 543 U.S. 1, 8–9 (2004); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 69 (2012). The context here is provided by the rich history of piracy law, which defines acts taken for private ends as those not taken on behalf of a state. *See* Douglas Guilfoyle, *Piracy Off Somalia: UN Security Council Resolution 1816 and IMO Regional Counter-Piracy Efforts*, 57 Int'l & Comp. L. Q. 690, 693 (2008) (discussing the High Seas Convention); Michael Bahar, *Attaining Optimal Deterrence at Sea: A Legal and Strategic Theory for Naval Anti-Piracy Operations*, 40 Vand. J. Transnat'l L. 1, 32 (2007); *see also Harmony* v. *United States*, 43 U.S. (2 How.) 210, 232 (1844) ("The law looks to [piracy] as an act of hostility . . . being committed by a vessel not commissioned and engaged in lawful warfare."). Belgian courts, perhaps the only ones to have previously considered the issue, have held that environmental activism qualifies as

a private end. *See* Cour de Cassation [Cass.] [Court of Cassation] *Castle John* v. *NV Mabeco*, Dec. 19, 1986, 77 I.L.R. 537 (Belg.). This interpretation is "entitled to considerable weight." *Abbott* v. *Abbott*, 130 S. Ct. 1983, 1993 (2010) (internal quotation marks omitted). We conclude that "private ends" include those pursued on personal, moral or philosophical grounds, such as Sea Shepherd's professed environmental goals. That the perpetrators believe themselves to be serving the public good does not render their ends public.

The district court's interpretation of "violence" was equally off-base. Citing no precedent, it held that Sea Shepherd's conduct is not violent because it targets ships and equipment rather than people. This runs afoul of the UNCLOS itself, which prohibits "violence . . . against another ship" and "violence . . . against persons or property." UNCLOS art. 101. Reading "violence" as extending to malicious acts against inanimate objects also comports with the commonsense understanding of the term, *see Webster's New Int'l Dictionary* 2846, as when a man violently pounds a table with his fist. Ramming ships, fouling propellers and hurling fiery and acid-filled projectiles easily qualify as violent activities, even if they could somehow be directed only at inanimate objects.

Regardless, Sea Shepherd's acts fit even the district court's constricted definition. The projectiles directly endanger Cetacean's crew, as the district court itself recognized. And damaging Cetacean's ships could cause them to sink or become stranded in glacier-filled, Antarctic waters, jeopardizing the safety of the crew.

The activities that Cetacean alleges Sea Shepherd has engaged in are clear instances of violent acts for private ends, the very embodiment of piracy. The district court erred in dismissing Cetacean's piracy claims.

## II. PRELIMINARY INJUNCTION

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter* v. *Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). We review the district court's denial of the preliminary injunction for abuse of discretion. *Harris* v. *Bd. of Supervisors, L.A. Cnty.*, 366 F.3d 754, 760 (9th Cir. 2004). "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell* v. *Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

### A. Likelihood of Success

Cetacean sought its injunction pursuant to three international agreements: the Convention for the Suppression of Unlawful Acts Against the Safety of Maritime Navigation ("SUA Convention"), art. 3, Mar. 10, 1988, S. Treaty Doc. No. 101-1, 1678 U.N.T.S. 222, the UNCLOS and the Convention on the International Regulations for Preventing Collisions at Sea ("COLREGS"), Oct. 20, 1972, 28 U.S.T. 3459, 1050 U.N.T.S. 18.

### 1. The SUA Convention

The SUA Convention prohibits acts that endanger, or attempt to endanger, the safe navigation of a ship. SUA Convention art. 3. Cetacean presented uncontradicted evidence that Sea Shepherd's tactics could seriously impair its ability to navigate. The district court nonetheless concluded that, since Sea Shepherd has not yet disabled any of Cetacean's ships, it's unlikely it would succeed in the future. This was clear error. The district court overlooked the actual language of the Convention, which prohibits "endanger[ing]" safe navigation. *Id.* This requires only that Sea Shepherd create dangerous conditions, regardless of whether the harmful consequences ever come about. *See Webster's New Int'l Dictionary* 843. As to whether Sea Shepherd's tactics actually are dangerous, the record discloses that it has rammed and sunk several other whaling vessels in the past. *See* Appendix.

The district court also erred by failing to recognize that Sea Shepherd, at the very least, *attempted* to endanger the navigation of Cetacean's ships. An attempt is sufficient to invoke the SUA Convention, even if unsuccessful. Sea Shepherd's repeated claims that its efforts are merely "symbolic" and "employed so as to ensure maximum safety" are disingenuous. How else can it explain that it has switched to metal-reinforced prop-fouling ropes? Reinforced ropes carry the same symbolic meaning as normal ropes, but they are far more destructive. Nor does symbolism require Sea Shepherd to bring its ships dangerously close to Cetacean's. The district court's conclusion that Cetacean wasn't likely to succeed on its SUA Convention claims rested on an implausible determination of the facts and an erroneous application of law; it was an abuse of discretion. *United*

*States* v. *Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc).

### 2.  The UNCLOS

For the reasons explained above, Part I, *supra*, the district court erred in its assessment of Cetacean's UNCLOS piracy claims, and consequently abused its discretion in assessing the likelihood of success on these claims. *See Cooter & Gell*, 496 U.S. at 405.

### 3.  The COLREGS

The district court did find that Cetacean is likely to succeed on the merits of its claims under the COLREGS. The COLREGS state obligatory and universal norms for navigating ships so as to avoid collision. *Crowley Marine Services, Inc.* v. *Maritrans, Inc.*, 530 F.3d 1169, 1172–73 (9th Cir. 2008). Sea Shepherd deliberately navigates its ships dangerously close to Cetacean's ships. The district court's finding that this is likely a violation of the COLREGS is adequately supported by the record. *See Hinkson*, 585 F.3d at 1251.

## B.  LIKELIHOOD OF IRREPARABLE HARM

The district court determined that "injury is possible, but not likely," even though it found that the projectiles Sea Shepherd launches at Cetacean's ships "are an obvious hazard to anyone who [sic] they might hit" and that Sea Shepherd navigates its ships "in such a way that a collision is highly likely." Sea Shepherd itself adorns the hulls of its ships with the names and national flags of the numerous whaling vessels it has rammed and sunk. *See* Appendix. The district court's

observation that Cetacean hasn't yet suffered these injuries is beside the point. *See Helling* v. *McKinney*, 509 U.S. 25, 33 (1993). Cetacean's uncontradicted evidence is that Sea Shepherd's tactics could immobilize Cetacean's ships in treacherous Antarctic waters, and this is confirmed by common sense: A dangerous act, if committed often enough, will inevitably lead to harm, which could easily be irreparable. *Harris*, 366 F.3d at 766.

## C. BALANCE OF EQUITIES

The district court correctly found that the balance of equities favors Cetacean. As it noted, "[a]bsent an injunction, the whalers will continue to be the victims of Sea Shepherd's harassment," but "Sea Shepherd . . . points to no hardship that it will suffer if the court imposes an injunction."

## D. PUBLIC INTEREST

"The public interest inquiry primarily addresses impact on non-parties rather than parties." *Bernhardt* v. *L.A. Cnty.*, 339 F.3d 920, 931 (9th Cir. 2003) (internal quotation marks omitted). This is particularly the case where "the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences." *Stormans, Inc.* v. *Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009). The primary public interests at issue here are the health of the marine ecosystem, *Winter*, 555 U.S. at 25–26; *see also Earth Island Inst.* v. *U.S. Forest Serv.*, 442 F.3d 1147, 1177 (9th Cir. 2006), and the safety of international waterways.

Where a valid law speaks to the proper level of deference to a particular public interest, it controls. *See Golden Gate Rest. Ass'n* v. *City & Cnty. of S.F.*, 512 F.3d 1112, 1126–27

(9th Cir. 2008). Our laws defining the public interest in regards to whaling are the Whaling Convention Act and the Marine Mammal Protection Act, both of which permit whaling pursuant to scientific permits issued under the Whaling Convention. 16 U.S.C. § 1372; 16 U.S.C. § 916c. Cetacean's activities are covered by such a permit and thus are consistent with congressional policy as to the marine ecosystem.

Our laws also reflect a strong public interest in safe navigation on the high seas. As already discussed, Sea Shepherd's activities clearly violate the UNCLOS, the SUA Convention and the COLREGS. *See* Part II.A, *supra*. As such, they are at loggerheads with the public interest of the United States and all other seafaring nations in safe navigation of the high seas.

The district court also considered the interest in keeping U.S. courts out of the international political controversy surrounding whaling. But enjoining piracy sends no message about whaling; it sends the message that we will not tolerate piracy. This is hardly a controversial view, as evidenced by a joint statement from the United States, Australia, the Netherlands and New Zealand condemning dangerous activities in the Southern Ocean. Joint Statement on Whaling and Safety at Sea from the Governments of Australia, the Netherlands, New Zealand, and the United States: Call for Responsible Behavior in the Southern Ocean Whale Sanctuary (Dec. 13, 2011), *available at* http://www.state.gov/r/pa/prs/ps/2011/12/178704.htm. Refusing the injunction sends the far more troublesome message that we condone violent vigilantism by U.S. nationals in international waters.

The district court also rejected Cetacean's claims on international comity grounds. While there is a public interest in maintaining harmonious international relations, it's not a factor here. An Australian court has entered default judgment against Cetacean, purporting to enjoin it from whaling in Antarctic coastal waters over which Australia claims sovereignty. The district court's deference to Australia's judgment in that case was an abuse of discretion. *Asvesta* v. *Petroutsas*, 580 F.3d 1000, 1009 (9th Cir. 2009). To begin, the district court misunderstood the Australian judgment, which addressed the legality of Cetacean's activities, not Sea Shepherd's. Whatever the status of Cetacean's whaling under Australian law, it gives Sea Shepherd no license to engage in piracy. It is for Australia, not Sea Shepherd, to police Australia's court orders.

Additionally, comity applies only if the foreign court has competent jurisdiction. *Id.* at 1011. But the United States doesn't recognize Australia's claims of sovereignty over Antarctic waters. *See* Note from U.S. Deputy Representative to the United Nations, to Secretary-General of the United Nations (Dec. 3, 2004); Note from Embassy of the United States, to Australian Department of Foreign Affairs and Trade (Mar. 31, 1995). By according comity to Australia's judgment, we would implicitly recognize Australia's jurisdiction, in contravention of the stated position of our government. The conduct of foreign affairs is within the exclusive province of the Executive, *see United States* v. *Hooker*, 607 F.2d 286, 289 (9th Cir. 1979), and we must defer to its views, *see Willams* v. *Suffolk Ins. Co.*, 38 U.S. (13 Pet.) 415, 420 (1839); *cf. Mingtai Fire Ins. Co.* v. *United Parcel Serv.*, 177 F.3d 1142, 1147 (9th Cir. 1999).

## E.  UNCLEAN HANDS

An injunction is an equitable remedy.  *Winter*, 555 U.S. at 32.  While the *Winter* factors "are pertinent in assessing the propriety of any injunctive relief," *id.*, traditional equitable considerations such as laches, duress and unclean hands may militate against issuing an injunction that otherwise meets *Winter*'s requirements.  Here, however, the district court abused its discretion in denying the injunction based on unclean hands.  *Seller Agency Council, Inc.* v. *Kennedy Ctr. for Real Estate Educ., Inc.*, 621 F.3d 981, 986 (9th Cir. 2010).

The district court held that Cetacean's hands are unclean because, "[i]n flouting the Australian injunction, the whalers demonstrate their disrespect for a judgment of a domestic court."  Because neither the United States nor Japan recognizes Australia's jurisdiction over any portion of the Southern Ocean, Cetacean owes no respect to the Australian order.  Moreover, the unclean hands doctrine requires that the plaintiff have "dirtied [his hands] in acquiring the right he now asserts, or that the manner of dirtying renders inequitable the assertion of such rights against the defendant."  *Republic Molding Corp.* v. *B.W. Photo Utils.*, 319 F.2d 347, 349 (9th Cir. 1963).  Cetacean has done nothing to acquire the rights to safe navigation and protection from pirate attacks; they flow automatically from customary international law and treaties.  Nor is there anything remotely inequitable in seeking to navigate the sea lanes without interference from pirates.

*          *          *

The district court's orders denying Cetacean's preliminary injunction and dismissing its piracy claims are **REVERSED**.

The preliminary injunction we issued on December 17, 2012, *Inst. of Cetacean Research* v. *Sea Shepherd Conservation Soc'y*, 702 F.3d 573 (9th Cir. 2012), will remain in effect until further order of this court. Panels have broad discretion to reassign cases on remand when they feel justice or its appearance requires it. *See United States* v. *Quach*, 302 F.3d 1096, 1103–04 (9th Cir. 2002). The district judge has expressed strong and erroneous views on the merits of this high profile case. Without ourselves reaching any determination as to his ability to proceed impartially or impugning his integrity, to preserve the appearance of justice, we conclude reassignment is appropriate. *See Ellis* v. *U.S. Dist. Court (In re Ellis)*, 356 F.3d 1198, 1211 (9th Cir. 2004) (en banc). The appearance of justice would be served if the case were transferred to another district judge, drawn at random, and we so order in accordance with the standing orders of the Western District of Washington. The panel retains jurisdiction over any further appeals or writs involving this case.

**Appendix**



ER 279

18   INST. OF CETACEAN RESEARCH V. SEA SHEPHERD



ER 281

M. SMITH, Circuit Judge, concurring in part and dissenting in part:

I concur in both the reasoning and the judgment of the panel opinion, reversing the district court's dismissal of Cetacean's piracy claims, and its failure to grant Cetacean a preliminary injunction. Even if one believes it is barbaric to harvest whales for any purpose at the beginning of the 21st century, as practiced by Cetacean, it is clearly permitted under international law. *See* International Convention for the Regulation of Whaling art. VIII, Dec. 2, 1946, 62 Stat. 1716, 161 U.N.T.S. 74. Sea Shepherd's piracy is not. *See* Maj. Op. at 5–14.

However, I respectfully dissent from the majority's decision to reassign this case to a different district judge. "We remand to a different judge only in unusual circumstances or when required to preserve the interests of justice." *United States v. Wolf Child*, 699 F.3d 1082, 1102 (9th Cir. 2012) (citing *United States v. Quach*, 302 F.3d 1096, 1103 (9th Cir. 2002)). Specifically, we employ a three-factor test to determine whether to remand a case to a different district judge:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether

> reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Id.*; *see also Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 235 F.3d 1184, 1196 (9th Cir. 2000).

Applying these factors, I see no basis for reassigning this case. Our panel opinion is well-articulated, succinct, and absolutely clear as to what is required of the district judge on remand. Importantly, it leaves no room for any district judge to "have substantial difficulty . . . putting out of his or her mind previously expressed views." *Wolf Child*, 699 F.3d at 1102. The Sea Shepherds are pirates. Period. No district judge could fail to grasp the clarity and firmness of our opinion.

Moreover, the "appearance of justice" does not require reassignment. We have previously reserved reassignment for only the most egregious cases.[1] While the district judge

---

[1] *See, e.g.*, *United States v. Working*, 287 F.3d 801, 809–10 (9th Cir. 2002) (reassigning to different district judge where district court sentenced defendant to one day in jail following conviction for assault with the intent to commit first degree murder); *Quach*, 302 F.3d at 1103–04 (reassigning where district court previously suggested that the defendant was "fortunate" not to receive the death penalty, and where the court indicated that had the government moved for a downward departure, it would have denied the motion); *United Nat. Ins. Co. v. R&D Latex Corp.*, 141 F.3d 916, 919–20 (9th Cir. 1998) (reassigning where district judge had "twice granted summary judgment" to a party without articulating any reasons); *cf. Wyler Summit Partnership*, 235 F.3d at 1196 (refusing to remand to a different district judge even though district judge "adopted verbatim" one party's clearly biased proposed order); *United States v. Waknine*, 543 F.3d

clearly erred in finding for the Sea Shepherds, there is absolutely no evidence in this record to suggest that he did so for an improper purpose, such as bias or prejudice.

Finally, because I do not believe "preserving the appearance of fairness" requires reassignment, the majority's decision will necessarily "entail waste and duplication out of proportion" to any benefits. *Wolf Child*, 699 F.3d at 1102. District judges, like circuit judges, occasionally make mistakes. Where, as here, there is no reason to suspect that the district judge will repeat those mistakes on remand, reassignment is inappropriate.

I respectfully dissent from the majority's decision to reassign this case to a different district judge.

---

546, 560 (9th Cir. 2008) (refusing to reassign to a different district judge despite commission of significant procedural errors).