THE HONORABLE JAMES L. ROBART

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THE INSTITUTE OF CETACEAN
RESEARCH, a Japanese research foundation;
KYODO SENPAKU KAISHA, LTC., a
Japanese corporation; TOMOYUKI OGAWA,
an individual; and TOSHIYUKI MIURA, an
individual,

        Plaintiffs,

        v.

SEA SHEPHERD CONSERVATION
SOCIETY, an Oregon nonprofit corporation;
and PAUL WATSON, an individual,

        Defendants.

SEA SHEPHERD CONSERVATION
SOCIETY, an Oregon nonprofit corporation,

        Counterplaintiff,

        v.

THE INSTITUTE OF CETACEAN
RESEARCH, a Japanese research foundation,
et al.,

        Counterdefendants.

Case No.: 2:11-cv-02043-JLR

DEFENDANT PAUL WATSON'S MOTION
TO DISMISS PLAINTIFFS' CLAIMS AS
MOOT AND UNRIPE

**Noted:  June 13, 2014 (w/o oral argument)**

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

# I.  INTRODUCTION AND BACKGROUND

This Court ruled in its April 28, 2014 Order that it is now appropriate to address whether the recent International Court of Justice ("ICJ") ruling and related events have rendered moot Plaintiffs' claims for injunctive and declaratory relief with respect to the 2014/2015 whaling season, and/or have rendered Plaintiffs' claims unripe as to future seasons beyond 2014/2015.[1] The current circumstances demonstrate that both are true.

The ICJ's March 31, 2014 Judgment[2] upheld Australia and New Zealand's challenge to Japan's Southern Ocean whaling program ("JARPA II"[3]) as a violation of the International Convention for the Regulation of Whaling ("the Whaling Convention"), to which Japan is a party.[4]  The Whaling Convention imposes a moratorium on commercial whaling, and allows the "killing, taking and treating of whales" only "for the purpose of scientific research."[5]  The ICJ ruled that the special permits Japan issued to Plaintiffs for the JARPA II program, under which Plaintiffs have conducted their "lethal research," were not in fact "for the purpose of scientific research" as the Convention requires for any taking of whales.[6]  The ICJ found that JARPA II's purported purpose of scientific research was inconsistent with its unexplained and unreasonably large target sample size for various species (for example, the quota to kill 850 minke whales each year), the relative lack of consideration of the use of non-lethal research methods, the program's open-ended time frame, its limited scientific output, and the absence of significant cooperation between JARPA II and other related research projects.[7]

---

[1] Order, Dkt. 181, at 7-8.
[2] *See* "Whaling in the Antarctic (Australia v. Japan; New Zealand Intervening)" (I.C.J. March 31, 2014), Dkt. 175-1 ("ICJ Judgment").
[3] "JARPA II" is an acronym for the "Japanese Whale Research Program Under Special Permit in the Antarctic Phase II." *See* ICJ Judgment, ¶ 25.
[4] International Convention for the Regulation of Whaling, art. VIII, Dec. 2, 1946, 62 Stat. 1716, 161 U.N.T.S. 74 ("Whaling Convention").  *See Inst. of Cetacean Research v. Sea Shepherd Cons. Soc.*, 708 F.3d 1099, 1101 (9th Cir. 2013) (Whaling Convention authorizes whale hunting when conducted in compliance with a research permit issued by a signatory).
[5] ICJ Judgment, ¶ 231.
[6] *Id.*, ¶¶ 223-247.
[7] *Id.*, ¶¶ 225-26.

The ICJ ordered Japan to revoke any permits or licenses it had issued under the JARPA II program, and refrain from granting any further permits under that program.[8]  The ICJ stated it expected Japan to take account of the reasoning and conclusions in the Judgment in evaluating the possibility of granting permits under any future program Japan may develop for scientific research.[9]  Pursuant to the Convention, in the event Japan issues permits under a new program, it will have to submit the permits for review and comment by the International Whaling Commission's Scientific Committee.[10]

As Plaintiffs acknowledge, the Government of Japan has announced that, in light of the ICJ ruling, it will not issue permits to Plaintiffs to conduct lethal research in the Southern Ocean during the 2014/2015 season.[11]  Plaintiffs have stated, however, that they "expect that they will be conducting a Southern Ocean research program for subsequent seasons that would be in accord with the ICJ Judgment."[12]  Whether such a program will involve lethal research, conform to the ICJ Judgment, and result in Japan issuing special permits to Plaintiffs, is currently unknown.

Plaintiffs cannot meet their burden to establish that their claims present a live case or controversy that can properly be adjudicated at this time.  There is no longer any factual basis for the injunctive relief Plaintiffs seek in their Complaint against Paul Watson ("Watson").  Plaintiffs' claims are moot as to the upcoming 2014/2015 season and are not ripe for adjudication as to future seasons.

---

[8] *Id.*, ¶¶ 245, 247.
[9] *Id.*, ¶ 246.
[10] *Id.*, ¶¶ 234, 239-40 (citing Whaling Convention, Schedule ¶ 30).
[11] *See* Plaintiffs' Mem. in Supp. of Continuation of Stay of This Action ("Plaintiffs' Stay Mem."), Dkt. 176, at 2-3.
[12] *Id.* at 3.

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

## II.    ARGUMENT

**A.    Plaintiffs' Complaint Is Moot As to the 2014/2015 Whaling Season.**

Plaintiffs allege in their Complaint, filed December 8, 2011, that Watson historically has interfered with Plaintiffs' lethal research of whales in the Southern Ocean, and that Watson's actions are violations of various United States treaties (allegedly providing for "freedom of safe navigation"; "freedom from piracy"; and "freedom from terrorism").[13]  Plaintiffs claim that under state and federal law these alleged "treaty violations" entitle them to preliminary and permanent injunctive relief and declaratory relief against Watson.[14]  Plaintiffs seek no other relief from Watson.

To be entitled to injunctive relief, Plaintiffs must show that they "are likely to succeed on the merits" of their claims, they are likely to suffer irreparable harm absent injunctive relief, the balance of equities tips in their favor, and an injunction is in the public interest.  *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365 (2008); *Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009), *rev'd on other grounds*, *Am. Trucking Associations, Inc. v. City of Los Angeles*, 596 F.3d 602 (9th Cir. 2010).  Plaintiffs' claims are clearly moot as to the 2014/2015 season, in light of Japan's decision not to issue Plaintiffs permits for lethal research this next and Plaintiffs' concession that they will not be conducting lethal research in the Southern Ocean.[15]

"Article III requires that a live controversy persist throughout all stages of the litigation."  *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1128-29 (9th Cir. 2005); *see* U.S. Const. art. III, § 2, cl. 1.  It is not enough that a live case or controversy existed in a

---

[13] *See* Complaint, Dkt. 1 (Dec. 8, 2011), ¶¶ 20-38.
[14] *See id.*, ¶¶ 7, 39-42.
[15] *See* Plaintiffs' Stay Mem., Dkt. 176, at 2-3.  In this Court's April 16, 2014 Status Conference, Plaintiffs' counsel conceded that "the decision by the [ICJ] has removed, for present purposes, JARPA II, which is the authority under which Japan issues the permits to the plaintiffs. . . . Japan has announced for the upcoming season, which would begin in December [2014] and end in March of 2015, that no permits will be issued for that season."  Status Conf. Tr. at 9 (Apr. 16, 2014) (Jordan Decl., Ex. 1).

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

previous season.  *See Gator.com*, 398 F.3d at 1128.  For both declaratory and injunctive relief, Plaintiffs must prove that there is *now* a substantial dispute of "sufficient immediacy and reality" to warrant the issuance of equitable relief.  *Id.* at 1129; *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956 (1969).  Plaintiffs' prospective injury must be "*certainly* impending." *Scott v. Pasadena Unified School Dist.*, 306 F.3d 646, 658 (9th Cir. 2002), *cert. den.*, 538 U.S. 1031 (2003) (quoting *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 115 S.Ct. 2097 (1995)) (emphasis by the court).  However, because plaintiffs will not be performing lethal research this next season, that is not the case. As the Ninth Circuit stated in *Gator.com*, "changes in the circumstances that prevailed at the beginning of [the] litigation have forestalled any occasion for meaningful relief."  *See id.*, 398 F.3d at 1129.

**B.**    **Plaintiffs' Claims Are Unripe for Adjudication As Applied to Any Season After 2014/2015.**

Plaintiffs' claims for injunctive relief are not ripe for adjudication as to future seasons beyond 2014/2015.  Plaintiffs have the burden of establishing ripeness.  *Scott*, 306 F.3d at 655; *Colwell v. Dept. of Health and Human Svcs.*, 558 F.3d 1112, 1121 (9th Cir. 2009).  A request for injunctive relief is unripe where, as here, "it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1044 (9th Cir. 1999) (quoting *Texas v. United States*, 523 U.S. 296, 118 S. Ct. 1257, 1259 (1998)).  "[A]n injunction cannot issue merely because it is *possible* that there will be an irreparable injury to the plaintiff; it must be *likely* that there will be."  *Am. Trucking Ass'ns, Inc.*, 559 F.3d at 1052 (emphasis added) (citing *Winter*, 555 U.S. at 22).

Plaintiffs' unsupported speculation that they might conduct undefined research operations in the Southern Ocean, under an as-yet non-existent new research program at some indefinite point in the future, is not sufficient to establish a case or controversy.  *See, e.g., Lyon v. Gila River Indian Commun.*, 626 F.3d 1059, 1079 (9th Cir. 2010) (after court determined land was owned by tribal community, the tribe's suit to prevent future residential development was

not ripe for decision where the county had not altered zoning to allow such development and there were no current plans to sell the land to a developer), *cert. den.*, 132 S. Ct. 498 (2011); *Scott*, 306 F.3d at 663 (applicants' challenge to school district's new policy to consider race and gender when necessary to maintain diversity was unripe where it was still unknown to what extent the district would resort to use of suspect factors); *Nevada Restaurant Ass'n v. Pest Committee*, No. 3:08-CV-00118-BES-VPC, 2008 WL 8225546, *3 (D. Nev. July 15, 2008) (pre-election challenge to substantive constitutionality of an initiative held not ripe because it lacked a concrete factual context in which a provision may be evaluated and any harm is speculative since the measure may not pass).

The ICJ Judgment imposes a series of hurdles to Plaintiffs' future whale hunts in the Southern Ocean. The Judgment prohibits Japan from issuing any permits to Plaintiffs until Japan formulates a new program that meets the required standards for legitimate research.[16] Japan will need to fundamentally alter its program to address the deficiencies the ICJ identified, including the apparent disconnect between legitimate limited "sampling" for research purposes and Plaintiffs' quotas to kill nearly a thousand whales each season.[17] Whether Japan will succeed in developing a compliant program for lethal research, or even have an interest in pursuing such a restricted research program, is unknown. If it chooses to do so, the process of planning a compliant program may take months or years, and its proposed permits for lethal research will have to be submitted to the International Whaling Commission for review and comment, before being issued to Plaintiffs.[18] Ninth Circuit law is clear that constitutional ripeness under Article III requires that a suit "present 'concrete legal issues, presented in actual cases, not abstractions.'" *See Colwell*, *supra*, 558 F.3d at 1123.

---

[16] *See id.*, ¶¶ 245-247.
[17] *See id.*, ¶¶ 224-25.
[18] *See* n.10, *supra*.

DEFENDANT PAUL WATSON'S MOTION TO
DISMISS PLAINTIFFS' CLAIMS AS MOOT AND
UNRIPE - 6          (C11-02043JLR)

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

Furthermore, even if the Court had judicial power under Article III to decide Plaintiffs' claims, those claims would fail the additional requirement of "prudential ripeness." *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009). Prudential ripeness depends not only on "the fitness of the issues for judicial decision," which as shown above is lacking here, but also "the hardship to the parties of withholding court consideration." *Stormans, Inc.*, 586 F.3d at 1126 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148, 87 S. Ct. 1507 (1967)); *Colwell*, 558 F.3d at 1124. Plaintiffs must show that, if their claims are not decided in their current posture, they will suffer a practical hardship "that is immediate, direct, and significant." *Colwell*, 558 F.3d at 1128 (quoting *Municipality of Anchorage v. United States*, 980 F.2d 1320, 1326 (9th Cir. 1992)). Plaintiffs cannot demonstrate that they will suffer any "immediate" and "significant" hardship if this action is dismissed without prejudice.

Plaintiffs cannot establish the elements of either Article III standing or prudential ripeness. Plaintiffs' prior research activities that gave rise to this action have been terminated as a violation of the Whaling Convention, no program has been created to replace JARPA II, and Plaintiffs currently lack a permit to conduct any operations in the Southern Ocean. Judicial intervention at this stage, therefore, would be inappropriate.

### III.   CONCLUSION

Plaintiffs have all but conceded that they currently have no viable claim for injunctive relief for the 2014/2015 season and there is no factual or legal basis for injunctive relief as to subsequent seasons. Plaintiffs' Complaint, therefore, should be dismissed in its entirety without prejudice.

/ / /

/ / /

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717

DATED this 22nd day of May, 2014.

CALFO HARRIGAN LEYH & EAKES LLP


By /s/ Charles Jordan
        Timothy G. Leyh, WSBA#14853
        Michelle Buhler, WSBA #16235
        Charles Jordan, WSBA #19206
        Attorneys for Paul Watson

DEFENDANT PAUL WATSON'S MOTION TO
DISMISS PLAINTIFFS' CLAIMS AS MOOT AND
UNRIPE - 8                      (C11-02043JLR)

1

## <u>CERTIFICATE OF SERVICE</u>

2          I hereby certify that on May 22, 2014, I electronically filed the foregoing with the Clerk

3   of the U.S. District Court, Western District of Washington, using the CM/ECF system.

4          I additionally certify that all participants in this case are registered CM/ECF users and

5   that service will be accomplished by the CM/ECF system.

6          Signed at Seattle, Washington this 22nd day of May, 2014.

7

                                        <u>*/s/ Susan Camicia*</u>
8                                        Susan Camicia

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

DEFENDANT PAUL WATSON'S MOTION TO
DISMISS PLAINTIFFS' CLAIMS AS MOOT AND
UNRIPE - 9          (C11-02043JLR)

LAW OFFICES
**CALFO HARRIGAN LEYH & EAKES LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL, (206) 623-1700   FAX, (206) 623-8717