1

2

3

4

5

6                                                      The Honorable James L. Robart

7

8                          UNITED STATES DISTRICT COURT
                           WESTERN DISTRICT OF WASHINGTON
9                                    AT SEATTLE

10   THE INSTITUTE OF CETACEAN
     RESEARCH, a Japanese research
11   foundation; KYODO SENPAKU                No. C11-2043JLR
     KAISHA, LTD., a Japanese corporation;
12   TOMOYUKI OGAWA, an individual; and       PLAINTIFFS' OPPOSITION TO
     TOSHIYUKI MIURA, an individual,          DEFENDANT PAUL WATSON'S MOTION
13                                            TO DISMISS PLAINTIFFS' CLAIMS AS
                           Plaintiffs,        MOOT AND UNRIPE AND TO
14          v.                                DEFENDANT SEA SHEPHERD
                                              CONSERVATION SOCIETY'S MOTION
15   SEA SHEPHERD CONSERVATION                TO DISMISS FOR LACK OF SUBJECT
     SOCIETY, an Oregon nonprofit             MATTER JURISDICTION
16   corporation, and PAUL WATSON, an
     individual,                              **NOTED ON MOTION CALENDAR:**
17                         Defendants.        June 27, 2014

18   ———————————————————————                  **ORAL ARGUMENT REQUESTED**

19   SEA SHEPHERD CONSERVATION
     SOCIETY, an Oregon nonprofit
20   corporation,

21                          Counterplaintiff,
            v.
22
     THE INSTITUTE OF CETACEAN
23   RESEARCH, a Japanese research
     foundation; KYODO SENPAKU
24   KAISHA, LTD., a Japanese corporation;
     and HIROYUKI KOMURA, an individual,
25
                           Counterdefendants.
26   ———————————————————————

PLAINTIFFS' OPPOSITION TO PAUL WATSON'S MOTION TO
DISMISS PLAINTIFFS' CLAIMS AS MOOT AND UNRIPE AND TO
SEA SHEPHERD CONSERVATION SOCIETY'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION - 1
(C11-2043JLR)

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (503) 224-5858 SS F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

# I. <u>INTRODUCTION</u>

1

2          Defendants filed separate motions to dismiss, premised on the assertion that the

3   March 31, 2014 Judgment of the International Court of Justice ("ICJ Judgment") rendered future

4   research whaling by plaintiffs as uncertain to occur, thus making the case moot or unripe.

5   Dkt. 183 ("Watson Motion") and Dkt. 186 ("SSCS Motion") (collectively, the "Motions").  That

6   assertion is not true as a matter of fact.

7          As established below, defendants bear the burden of demonstrating that the

8   changed circumstances present an "insurmountable barrier" to plaintiffs' continued Southern

9   Ocean operations.  Defendants have not met and cannot meet their burden.  The preliminary

10  injunction that plaintiffs have secured to prevent defendants' illegal and dangerous interference

11  with plaintiffs' operations should be made permanent to protect plaintiffs' future operations that

12  defendants oppose.

13         The facts support a denial of the Motions.  First, plaintiffs intend to engage in

14  sighting surveys in the Southern Ocean during the upcoming 2014/2015 season.  *See* Decl. of

15  Yoshihiro Fujise ("Fujise Decl.," submitted herewith), ¶ 2 & Ex. A.  Peter Hammarstedt, captain

16  of the BOB BARKER and leader of the attacks against plaintiffs that are the subject of the

17  Ninth Circuit contempt proceedings, calls plaintiffs' planned sighting survey activities "criminal"

18  and vows to have "ocean-going assets on site in the Southern Ocean Whale Sanctuary in order to

19  monitor the ICR on their so-called sighting survey."  *See* Decl. of John F. Neupert in Supp. of

20  Pls.' Opp'n to Watson Motion and SSCS Motion ("Neupert Decl.," submitted herewith), ¶ 2 &

21  Ex. 1.  While defendants deny it, it is plaintiffs' position (as argued in the pending contempt

22  proceedings) that Hammarstedt and BOB BARKER are still part of defendant Sea Shepherd

23  Conservation Society ("SSCS").  *Id.*  Plaintiffs are concerned about the safety of their upcoming

24  operations.  Fujise Decl., ¶ 3.

25

26

PLAINTIFFS' OPPOSITION TO PAUL WATSON'S MOTION TO
DISMISS PLAINTIFFS' CLAIMS AS MOOT AND UNRIPE AND TO
SEA SHEPHERD CONSERVATION SOCIETY'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION - 2
(C11-2043JLR)

PDXDOCS:2035655.10

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (503) 224-5858 SS F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1        Second, as noted in the Affidavit of Kenji Kagawa, Deputy Director-General of

2  the Fisheries Agency of Japan ("Kagawa Aff.," submitted herewith),[1] Japan is developing a new

3  Southern Ocean research program for the research whaling season beginning December 2015

4  that entails lethal take.  Kagawa Aff.; Ohmagari Decl., Ex. 2, at 1-3 (Aff., ¶¶ 1-2 & Attachment).

5  Watson himself recognizes that plaintiffs will be returning to the Southern Ocean to engage in

6  lethal-take research whaling as he has been reported as saying that "Sea Shepherd will return to

7  the Southern Ocean with four ships in December 2015 to uphold verdicts by the ICJ and the

8  Australian Federal Court."  Neupert Decl., ¶ 4 & Ex. 2.

9        In short, as the Court recognized at the status conference on April 16, 2014, given

10  plaintiffs' expectation that they will be engaged in research whaling in the Southern Ocean in

11  2015 and SSCS's desire to "go down [there] and continue its activities," why would the case "not

12  then still [be] ripe"?  Neupert Decl., Ex. 3, at 25. The Court's instinct is correct:  under the legal

13  authorities set forth below, the case is not moot, or, conversely, it is still "ripe."

## II. FACTUAL BACKGROUND

15        As noted in the SSCS Motion (at 2:10-12), plaintiffs brought this action "to enjoin

16  defendants from attacking and endangering the safety of vessels, Masters, crew, and researchers

17  engaged in a research whaling operation in the Southern Ocean (the ocean encircling

18  Antarctica)."  Complaint, Dkt. 1, ¶ 1.  Plaintiffs alleged that "[d]efendants have a history of

19  violently and dangerously attacking these Southern Ocean operations which occur seasonally

20  during late December through March."  *Id.*  As found by the Ninth Circuit Appellate

21  Commissioner in the contempt proceedings, SSCS, led by Watson, began its interference

22  operations in 2004 and continued those operations until the 2012/2013 season, when, according

23  to the Commissioner, SSCS and Watson effectively "separated" themselves from the 2012/2013

24  campaign known as Operation Zero Tolerance.  *See generally* Comm'r Rpt. & Recommendation

---

[1] *See* Decl. of Kayo Ohmagari ("Ohmagari Decl.," submitted herewith) for English translation of Kagawa Aff.

PLAINTIFFS' OPPOSITION TO PAUL WATSON'S MOTION TO
DISMISS PLAINTIFFS' CLAIMS AS MOOT AND UNRIPE AND TO
SEA SHEPHERD CONSERVATION SOCIETY'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION - 3
(C11-2043JLR)

PDXDOCS:2035655.10

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (503) 224-5858 SS F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1   (Jan. 31, 2014), 9th Cir. Dkt. 314.  Whether defendants "separated" themselves from acts

2   plaintiffs contend violated the Ninth Circuit's Injunction is an issue currently before the

3   Ninth Circuit.

4          What is *not* subject to dispute is that defendants oppose plaintiffs' taking of

5   whales.  SSCS Motion at 2:13.  As SSCS counsel reported to the Court on April 16, 2014, SSCS

6   "[does] want to return [to the Southern Ocean] if they can."  Neupert Decl., ¶ 5 & Ex. 3, at 18.

7   And Watson states that he "know[s] that the Japanese will not stop" research whaling in the

8   Southern Ocean "so we're preparing to go back to the Southern Ocean."  Neupert Decl., ¶ 3.

9   ("Sea Shepherd will return to the Southern Ocean with four ships in December 2015 to uphold

10  verdicts by the ICJ and the Australian Federal Court."  Neupert Decl., ¶ 4 & Ex. 2.)[2]

11         The ICJ Judgment directs Japan to refrain from granting plaintiffs any further

12  special permits under Article VIII of the International Convention for the Regulation of

13  Whaling[3] ("Convention") in furtherance of the Plan for the Second Phase of the Japanese Whale

14  Research Program under Special Permit in the Antarctic ("JARPA II").  *See* Dkt. 175,

15  ICJ Judgment, ¶ 245 (Ex. A, at 73).  But the ICJ Judgment permits Japan to issue future special

16  permits under the Convention:  "It is to be expected that Japan will take account of the reasoning

17  and conclusions contained in this Judgment as it evaluates the possibility of granting any future

18  permits under Article VIII, paragraph 1, of the Convention."  Dkt. 175, ICJ Judgment, ¶ 246

19  (Ex. A, at 73).  The ICJ Judgment also specifically states that "the Court finds no basis to

20  conclude that the use of lethal methods is per se unreasonable . . . ."  Dkt. 175, ICJ Judgment,

21  ¶ 135 (Ex. A, at 46).

22

23  [2] While not presently relevant to this Court, it is to be noted that Watson's statement that
    Sea Shepherd will be in the Southern Ocean in December 2015 is irreconcilable with the notion

24  that SSCS and Watson separated from the acts that plaintiffs contend constitute contempt of the
    Ninth Circuit's Injunction.

25  [3] *Signed at Washington* Dec. 2, 1946, 62 Stat. 1716, 161 U.N.T.S. 74, 4 Bevans 248 (1968)
    (ratified by United States on July 18, 1947, and entered into force Nov. 10, 1948).  A copy of the

26  Convention is attached as Exhibit B to the Declaration of Charles Moure, Dkt. 186.

PLAINTIFFS' OPPOSITION TO PAUL WATSON'S MOTION TO
DISMISS PLAINTIFFS' CLAIMS AS MOOT AND UNRIPE AND TO
SEA SHEPHERD CONSERVATION SOCIETY'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION - 4
(C11-2043JLR)

PDXDOCS:2035655.10

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (503) 224-5858 SS F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1    As noted by SSCS (SSCS Motion at 4:7-12) at the status conference on April 16,

2  2014, counsel for plaintiffs reported that Japan announced after the ICJ Judgment that no permits

3  for research whaling involving lethal take would issue for the upcoming season (2014/2015).

4  Plaintiffs' counsel also stated that it was plaintiffs' "expectation that a new program will be

5  forthcoming, and that the new program will allow [plaintiffs] to continue the activities."  Neupert

6  Decl., ¶ 5 & Ex. 3, at 9.

7    Two days after the status conference, on April 18, 2014, Japan announced its

8  official policy regarding the future of whale research programs in light of the ICJ Judgment.

9  Kagawa Aff.; Ohmagari Decl., Ex. 2, at 1 (Aff., ¶ 1).  The policy is set forth in the Kagawa

10  Affidavit and can be summarized as follows:

11    • Japan confirms "its basic policy of pursuing the resumption of commercial

12      whaling" and will conduct research whaling to accomplish that objective

13      (Kagawa Aff.; Ohmagari Decl., Ex. 2, at 1-2 (Aff., ¶¶ 1-2 & Attachment, ¶ 1);

14    • By the autumn of 2014, Japan will submit to the Scientific Committee of the

15      International Whaling Commission new research programs in the Antarctic

16      and the Northwestern Pacific for 2015 that reflect the criteria of the

17      ICJ Judgment (Kagawa Aff.; Ohmagari Decl., Ex. 2, at 1-2 (Aff., ¶ 1 &

18      Attachment, ¶ 2);

19    • "[W]hale research programs from year 2015 on will be conducted in

20      accordance with [the] new research program plans which will be reflecting

21      standards indicated in the ICJ ruling, and this has been already" reported to the

22      Scientific Committee (Kagawa Aff.; Ohmagari Decl., Ex. 2, at 1 (Aff., ¶ 3);

23    • The new research plans will include lethal take and other research methods

24      based upon international law and scientific evidence (Kagawa Aff.; Ohmagari

25      Decl., Ex. 2, at 1 (Aff., ¶ 2).

26

PLAINTIFFS' OPPOSITION TO PAUL WATSON'S MOTION TO
DISMISS PLAINTIFFS' CLAIMS AS MOOT AND UNRIPE AND TO
SEA SHEPHERD CONSERVATION SOCIETY'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION - 5
(C11-2043JLR)

PDXDOCS:2035655.10

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (503) 224-5858 SS F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1          Pursuant to the Convention, research programs are submitted to the International

2   Whaling Commission Scientific Committee for review.  Neupert Decl., ¶¶ 6-7 & Exs. 4-5.  The

3   May 2014 report of the Scientific Committee announced the Committee's plan to review the new

4   program to be submitted by Japan and to do so in a time frame for the plan to be submitted to the

5   full Scientific Committee at its 2015 annual meeting.  Neupert Decl., ¶ 6 & Ex. 4.[4]  While the

6   Convention provides for the Scientific Committee to review programs, the Convention does not

7   require consent of the Scientific Committee or the International Whaling Commission for a

8   nation, like Japan, to issue a scientific research permit under the Convention for the taking of

9   whales.  *See* Dkt. 175, ICJ Judgment, ¶ 47 (Ex. A, at 27); Dkt. 186, Moure Decl., Ex. B,

10  Convention, Article VIII, § 1.  When issued, that permit is issued to plaintiff The Institute of

11  Cetacean Research ("ICR").  Fujise Decl., ¶ 4.  Plaintiff Kyodo Senpaku Kaisha, Ltd. ("KS") is

12  the owner of the ships chartered by ICR for its research whaling.  *Id.*  ICR intends to seek a

13  research whaling permit under the new program.  *Id.*

14          While plaintiffs will not be engaged in lethal-take research whaling in the

15  Southern Ocean during the upcoming season, plaintiffs will engage in sighting surveys.  Fujise

16  Decl., ¶ 2.  Sighting surveys entail the collection of data about the abundance of whales

17  observed, including Antarctic minke whales and other whale species.  Fujise Decl., Ex. A, at 1-2.

18  ICR will use many of the same ships in the sighting survey that have been subject to attack in the

19  past.  *Id.*  Plaintiffs are concerned about a continuation of dangerous interference with those

20  upcoming sighting surveys.  Fujise Decl., ¶ 3.  As noted above, Hammarstedt, captain of the

21  BOB BARKER and leader of the attacks against plaintiffs that are the subject of the contempt

22  proceedings (and other prior attacks), has called plaintiffs' planned survey activity "criminal" and

23

24  [4] SSCS incorrectly asserts that paragraph 30 of the Convention Schedule requires research
    programs to be discussed at the "annual meeting of the International Whaling Commission."
    SSCS Motion at 6:19.  Paragraph 30 of the Schedule provides that research programs are to be
25  reviewed and commented on at the annual meetings of the Commission's Scientific Committee.
    *See* Dkt. 186, Moure Decl., Ex. D, at 15 of 30.  Annex P describes the review process and
26  timeline in detail.  Neupert Decl., Ex. 5.

PLAINTIFFS' OPPOSITION TO PAUL WATSON'S MOTION TO
DISMISS PLAINTIFFS' CLAIMS AS MOOT AND UNRIPE AND TO
SEA SHEPHERD CONSERVATION SOCIETY'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION - 6
(C11-2043JLR)

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (503) 224-5858 SS F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1    vows to have "ocean-going assets on site in the Southern Ocean Whale Sanctuary in order to

2    monitor the ICR on their so-called sighting survey."  Neupert Decl., ¶ 2 & Ex. 1.

3                   Lastly, defendants assert mootness before the Ninth Circuit.  An issue on

4    contempt is whether SSCS, Watson, and certain other contemnors are required to purge

5    themselves of contempt by taking reasonable steps to secure return of ships and other property

6    used to commit contempt.  Reply Br. in Supp. of Pls.-Appellants' Objections to Appellate

7    Comm'r Rpt. & Recommendation (Apr. 4, 2014), 9th Cir. Dkt. 342 ("Pls.' 9th Cir. Reply Br."),

8    at 29-31.  SSCS and Watson (together with other contemnors) filed a sur-reply after this Court's

9    April status conference in which they opposed this purging request, arguing that the

10   ICJ Judgment rendered this proposed coercive remedy "moot."  Defs.-Appellees SSCS and

11   Watson and Non-Parties Lani Blazier, Marnie Gaede, Susan Hartland, Peter Rieman, Bob

12   Talbot, Robert Wintner, and Ben Zuckerman's Sur-Reply (Apr. 18, 2014), 9th Cir. Dkt. 346

13   ("SSCS, Watson, and Contemnors' Sur-Reply"), at 2-5.  By their Motions, defendants ask this

14   Court to decide an issue before the Ninth Circuit.

15                   **III. LEGAL AUTHORITY AND ARGUMENT**

16   **A.     This case is not moot because defendants have not shown that the ICJ Judgment is
17          "an insurmountable barrier" to future research whaling involving lethal take.**

18                   Defendants take an unrealistic and mechanical approach to mootness (and

19   ripeness) that fails to address applicable authority or principles underlying mootness.  Mootness

20   "is more flexible than other strands of justiciability doctrine," such as standing.  *Jacobus v.*

21   *Alaska*, 338 F.3d 1095, 1103 (9th Cir. 2003).  The Supreme Court has held that "'there are

22   circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct

23   may be too speculative to support standing [at the time the case is brought], but not too

24   speculative to overcome mootness.'"  *Jacobus*, 338 F.3d at 1103 (quoting *Friends of the Earth,*

25   *Inc. v. Laidlaw Envtl. Services, Inc.*, 528 U.S. 167, 190 (2000)) (brackets in original).  This

26   flexible approach to mootness stems, in part, from the Supreme Court's recognition in *Laidlaw*

PLAINTIFFS' OPPOSITION TO PAUL WATSON'S MOTION TO
DISMISS PLAINTIFFS' CLAIMS AS MOOT AND UNRIPE AND TO
SEA SHEPHERD CONSERVATION SOCIETY'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION - 7
(C11-2043JLR)

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (503) 224-5858 SS F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

PDXDOCS:2035655.10

1  that "by the time mootness is an issue, the case has been brought and litigated, often (as here) for

2  years.  To abandon the case at an advanced stage may prove more wasteful than frugal."

3  *Laidlaw*, 528 U.S. at 191-92.

4         In *Jacobus*, the court held that repeal of a challenged statute did not moot the

5  controversy because plaintiffs there "will likely experience prosecution and civil penalties for

6  their past violations of the repealed provisions of the [law]."  338 F.3d at 1104.  The *Jacobus*

7  court further quoted with approval from *Adarand Constructors, Inc. v. Slater,* 528 U.S. 216, 224

8  (2000), that "dismissal of a case 'on grounds of mootness would be justified only if it were

9  absolutely clear that the litigant no longer had any need of the judicial protection that it sought.'"

10  *Jacobus*, 338 F.3d at 1102-03.  This Court has applied the "absolutely clear" standard in

11  evaluating whether a defendant's voluntary cessation of a challenged activity will moot a

12  controversy.  *See North Cascades Conservation Council v. Fed. Highway Adm'r*,

13  No. C11-0666JLR, 2011 WL 2976913, at *2-3 (W.D. Wash. July 21, 2011).

14         The "voluntary cessation" line of mootness cases is not directly applicable here.

15  But where changed circumstances raise a question as to whether the plaintiffs will continue an

16  activity for which they seek protection, courts apply a similarly rigorous standard to determine if

17  those changed circumstances present an "insurmountable barrier" to the continued activity for

18  which the plaintiffs sought (and obtained) injunctive relief.  Defendants bear the "heavy burden"

19  to demonstrate mootness of this character.  *Jacobus*, 338 F.3d at 1103 (citing *Coral Constr. Co.*

20  *v. King Cnty.*, 941 F.2d 910, 927-28 (9th Cir. 1991), and *Laidlaw*, 528 U.S. at 190).  *See also*

21  *Southern Oregon Barter Fair v. Jackson Cnty., Oregon*, 372 F.3d 1128, 1134 (9th Cir. 2004)

22  ("The party asserting mootness bears the burden of establishing that there is no effective relief

23  remaining that the court could provide.").

24         The "insurmountable barrier" standard is illustrated by *Clark v. City of Lakewood*,

25  259 F.3d 996 (9th Cir. 2001), *Southern Oregon Barter*, and *San Lazaro Ass'n, Inc. v. Connell*,

26  286 F.3d 1088 (9th Cir. 2002).

PLAINTIFFS' OPPOSITION TO PAUL WATSON'S MOTION TO
DISMISS PLAINTIFFS' CLAIMS AS MOOT AND UNRIPE AND TO
SEA SHEPHERD CONSERVATION SOCIETY'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION - 8
(C11-2043JLR)

PDXDOCS:2035655.10

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (503) 224-5858 SS F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1    In *Clark,* Clark brought suit claiming that an ordinance regulating licensing and

2  activities of adult cabaret clubs violated the Washington Constitution, the United States

3  Constitution, and the Washington Open Public Meetings Act.  Clark's cabaret closed

4  approximately one month before suit was filed (allegedly due to changes he was forced to make

5  under the ordinance), but Clark still had a license to operate an adult cabaret at the time of filing.

6  That license expired during the proceedings, and, at the time the Ninth Circuit reviewed the case,

7  no renewal or application for a new license had been submitted.  The court stated, "The concern

8  is that because Clark no longer has a license to operate an adult cabaret, his future injuries are

9  now too conjectural or hypothetical to satisfy the injury-in-fact requirement allowing him to

10  pursue injunctive relief." *Clark*, 259 F.3d at 1012.  The court found Clark's claims were not

11  moot, analyzing the issue as follows:

12        Although the expiration of Clark's license may make it more difficult for
      Clark to return to business, we conclude Clark still has a legally cognizable
13      interest in the outcome of this lawsuit sufficient to allow him to seek injunctive
      relief.  Clark's stated intention is to return to business.  Assuming Clark would
14      now have to apply for a new license and pay a fee as would any new adult cabaret
      owner, *this added step is not an insurmountable barrier* and thus not enough to
15      moot Clark's case.

16  259 F.3d at 1012 (emphasis added).

17        *Southern Oregon Barter* came to a similar conclusion.  There, an organization

18  (the "Fair") sought to enjoin an ordinance that imposed heavy fees for mass gatherings.  The Fair

19  was successful in obtaining a preliminary injunction against the ordinance with respect to the

20  Fair's 1996 event.  Later, the State of Oregon argued the action was moot because "the Fair has

21  not applied for a mass gathering permit, or engaged in any other preparations for a mass

22  gathering, since 1996 . . . ." 372 F.3d at 1133.

23        Relying in part on the "insurmountable" language in *Clark*, the Ninth Circuit held

24  that the issue was not moot.  372 F.3d at 1134.  In analyzing the mootness issue, the court first

25  stated the "proceeding would be moot if the Fair had entirely ceased to operate, left the business,

26  and no longer sought *or intended to seek a license*." *Id.* (emphasis added).  The court then held,

PLAINTIFFS' OPPOSITION TO PAUL WATSON'S MOTION TO
DISMISS PLAINTIFFS' CLAIMS AS MOOT AND UNRIPE AND TO
SEA SHEPHERD CONSERVATION SOCIETY'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION - 9
(C11-2043JLR)

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (503) 224-5858 SS F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1   however, that the Fair had "a sufficient ongoing interest in the outcome of the case to preclude

2   mootness," further explaining that:

3       There is no contention that the Fair has ceased to exist as a corporate entity, or
        that it no longer seeks to hold another gathering.  The state rescinded the Fair's
4       corporate status in 1998, apparently because the Fair failed to pay an
        administrative fee, but the Fair successfully requested reinstatement.  The Fair has
5       not actually held a major event since 1996, because it lacks funding and an
        appropriate site.  However, it held a smaller event in 1997 in an attempt to raise
6       funds, and since then has continued to seek a site for a full-sized event through
        discussions with the County and with private landowners.  So far as the record
7       reflects, these discussions have not yet yielded an appropriate site.

8           The state contends that the possibility that the Fair will actually obtain
        funding and a site is speculative.  On this record, however, *we cannot conclude
9       that the barriers to the Fair's staging another event are "insurmountable" and
        therefore enough to moot the case*.  *Clark v. City of Lakewood*, 259 F.3d 996,
10      1012 (9th Cir.2001).  Here, as in *Clark*, the Fair's "stated intention to return to
        business if the[statute] is declared unconstitutional," together with the ongoing
11      efforts the Fair has made to arrange another gathering, sufficiently distinguish it
        from the plaintiff in *City News*.  *Clark*, 259 F.3d at 1011–12 & n. 9. We cannot
12      say that there is no reasonable expectation that the state will enforce the Act
        against the Fair again.  We therefore proceed to review the district court's grant of
13      summary judgment, a decision we review de novo.

14  372 F.3d at 1134 (emphasis added).

15          Finally, in *San Lazaro*, plaintiffs obtained an injunction against the California

16  Department of Health Services, prohibiting it from using an audit to deny plaintiffs payment for

17  medical services provided under the state's Medicaid/Medi-Cal program.  On appeal by the State,

18  the Ninth Circuit stated, "A case loses its quality as a 'present, live controversy' and becomes

19  moot when there can be no effective relief."  *San Lazaro*, 286 F.3d at 1095.  Because the

20  plaintiffs were able to seek only "prospective, injunctive relief," the court stated that the

21  plaintiffs "must be in a position to benefit from prospective, injunctive relief" in order to avoid

22  mootness.  286 F.3d at 1095-96.

23          Analyzing the mootness issue under these principles, the court held that

24  San Lazaro's appeal was moot because San Lazaro had "voluntarily canceled its laboratory

25  license" and "became ineligible to participate in the Medi-Cal program."  286 F.3d at 1096.  The

26  principles dictated a different decision, however, with respect to another plaintiff, Nagapetyan,

PLAINTIFFS' OPPOSITION TO PAUL WATSON'S MOTION TO
DISMISS PLAINTIFFS' CLAIMS AS MOOT AND UNRIPE AND TO
SEA SHEPHERD CONSERVATION SOCIETY'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION - 10
(C11-2043JLR)

PDXDOCS:2035655.10

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (503) 224-5858 SS F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1    and it is Nagapetyan's circumstances that are analogous to those of plaintiffs in this case.

2    Nagapetyan was convicted of Medi-Cal fraud after the district court's injunction judgment and

3    was therefore "disqualified from participating in the Medi-Cal program for at least five years."

4    *San Lazaro*, 286 F.3d at 1096-97.  But the district court found Nagapetyan's claim was not moot

5    "because he still might seek to participate in the Medi-Cal program at the expiration of the

6    five-year period."  286 F.3d at 1096.  Because the Ninth Circuit found that the record revealed

7    "no basis for concluding that Nagapetyan will not seek to participate in the Medi-Cal program at

8    the end of the five-year period or that he would be barred from participation at that time," the

9    court held that his claims were not moot.  286 F.3d at 1096-97.

10           In each of these cases, the courts made a pragmatic judgment about whether

11   changed circumstances created an "insurmountable barrier" to the plaintiff's continuing conduct

12   that was in need of protection by the court.  This is analogous to the flip side of mootness, where

13   courts evaluate whether a defendant's voluntary cessation of illegal conduct make it "absolutely

14   clear" that the misconduct will not reoccur.  Under either version of the standard, defendants

15   have not established mootness.[5]

16           Plaintiffs initiated this action to obtain injunctive and declaratory relief against

17   defendants' illegal interference with plaintiffs' Southern Ocean operations.  After considerable

18   expenditure of time and effort, plaintiffs obtained that relief:  defendants are enjoined from

19   approaching within 500 yards of plaintiffs' ships when they are engaged in operations in the

20   Southern Ocean or from navigating in a manner that is likely to endanger the safe navigation of

21   

22   [5] Both Watson and SSCS rely on *Gator.com Corp. v. L.L. Bean, Inc.,* 398 F.3d 1125 (9th Cir.
     2005).  Watson Motion at 4-5; SSCS Motion at 5:1-2.  *Gator.com* found mootness because "the

23   parties' settlement agreement has wholly eviscerated the dispute that prompted Gator to initiate
     [the] suit, [and thus] Gator's request for declaratory relief no longer gives rise to a live case or

24   controversy."  398 F.3d at 1131.  A settlement agreement is the sort of thing that creates an
     "insurmountable barrier" to continuation of a controversy.  There is no settlement agreement

25   here.  Watson also relies on *Scott v. Pasadena Unified School Dist.,* 306 F.3d 646 (9th Cir.
     2002).  Watson Motion at 5-6.  *Scott* was a dismissal based on the absence of standing, not

26   mootness.  306 F.3d at 649.  It is inapposite.

PLAINTIFFS' OPPOSITION TO PAUL WATSON'S MOTION TO
DISMISS PLAINTIFFS' CLAIMS AS MOOT AND UNRIPE AND TO
SEA SHEPHERD CONSERVATION SOCIETY'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION - 11
(C11-2043JLR)

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (503) 224-5858 SS F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

PDXDOCS:2035655.10

1    plaintiffs' ships.  *See* Dkt. 118, 9th Cir. Injunction Order, at 2.  But for the continuing existence

2    of the Ninth Circuit's Injunction, this Court would be required by the mandate to enter its own

3    injunction.

4              Plaintiffs intend to engage in research activities in the Southern Ocean in the

5    2014/2015 season that others oppose.  While that research activity will entail sighting surveys

6    (not lethal take), no one has avowed an intent not to obstruct plaintiffs' activities.[6]  Plaintiffs are

7    (justifiably) concerned that their operations in the upcoming season may be interfered with

8    illegally as in the past.  Fujise Decl., ¶ 3.

9              Furthermore, Japan is developing a new Southern Ocean research program that

10   will entail lethal take.  Kagawa Aff.; Ohmagari Decl., Ex. 2, at 1 (Aff., ¶ 2).  That new program

11   will be submitted to the Scientific Committee of the International Whaling Commission in the

12   fall of 2014.  Kagawa Aff.; Ohmagari Decl., Ex. 2, at 1-2 (Aff., ¶ 1 & Attachment, ¶ 2).  Once

13   the program is submitted to the Scientific Committee, it may review and comment on the

14   program.  Watson Motion at 3:6-7.  But, nothing more is required to put Japan in a position to

15   issue permits to plaintiffs to implement the program.

16             Defendants argue that mootness (or "unripeness") should be found because

17   plaintiffs do not have a permit to engage in lethal take *now* and it is uncertain whether plaintiffs

18   "will be awarded a special permit in 2015."  *See* SSCS Motion at 6:12-14; Watson Motion

19   at 4:15-17.  Based on this rationale, defendants could have argued mootness in the past because

20   plaintiffs engaged in research whaling each season under a permit applicable to that season only,

21   with no right or entitlement to a permit for the next season.  Fujise Decl., ¶ 5.  Defendants did

22   not make that argument because that would ignore the reality of the situation—plaintiffs

23   annually engage in Southern Ocean research whaling involving lethal take that defendants have

24   _____

        [6] The SSCS Motion states that "plaintiffs will not be killing whales, and SSCS will not be
25   opposing *such* activities."  SSCS Motion at 5-6 (emphasis added).  That is hardly a disavowal of
     Hammarstedt's implied, if not express, threat to interfere with plaintiffs' non-lethal sighting
26   surveys, which Hammarstedt claims are illegal.  Neupert Decl., ¶ 2 & Ex. 1.

PLAINTIFFS' OPPOSITION TO PAUL WATSON'S MOTION TO
DISMISS PLAINTIFFS' CLAIMS AS MOOT AND UNRIPE AND TO
SEA SHEPHERD CONSERVATION SOCIETY'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION - 12
(C11-2043JLR)

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (503) 224-5858 SS F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1   regularly opposed using unlawful and dangerous means.  It was that practical reality that gave

2   rise to the need for injunctive relief.

3          This practical reality exists today.  To be sure, the ICJ Judgment has caused a

4   pause in the timeline, but it has not created an "insurmountable barrier" or made it "absolutely

5   clear" that plaintiffs will be unable to engage in the near future in continued lethal-take research

6   whaling.  Indeed, Watson states he "know[s] that the Japanese will not stop" research whaling in

7   the Southern Ocean "so we're preparing to go back to the Southern Ocean."  Neupert Decl., ¶ 3.

8   ("Sea Shepherd will return to the Southern Ocean with four ships in December 2015 to uphold

9   verdicts by the ICJ and the Australian Federal Court."  Neupert Decl., ¶ 4 & Ex. 2.)  What is this

10  but a threat to engage in the very same conduct the Ninth Circuit has enjoined and that this Court

11  is being called upon to permanently enjoin.

12         In short, defendants have failed to meet their "heavy burden" of proving that the

13  ICJ Judgment is an "insurmountable barrier" to plaintiffs' future research whaling involving

14  lethal take.  Given that plaintiffs fully expect to engage in future lethal-take research activities

15  under authority of the Convention, the need for permanent injunctive relief to prevent illegal and

16  dangerous interference with plaintiffs' operations is not moot.  Mootness has not been

17  established.

18  **B.     Defendants' ripeness argument is premised on a mistaken set of facts and is legally
           incorrect.  The same facts that render the case not moot render it ripe.**

19  **Furthermore, ripeness is determined at the outset of a case, and the "contingency"
       of a new research permit is insufficient to render the case not ripe.**

20

21         Both Watson's and SSCS's ripeness arguments stem from their speculation about

22  whether Japan will move forward with a new lethal-take research whaling program or whether

23  plaintiffs will obtain a permit under that program.  Watson Motion at 5-6; SSCS Motion at 6-8.

24  From this speculation, defendants argue that plaintiffs' future research plans are contingent or

25  indefinite.  Watson Motion at 5:22; SSCS Motion at 6-8.  As noted above, in accordance with the

26  Convention and the ICJ Judgment, Japan will present to the Scientific Committee by the fall of

PLAINTIFFS' OPPOSITION TO PAUL WATSON'S MOTION TO
DISMISS PLAINTIFFS' CLAIMS AS MOOT AND UNRIPE AND TO
SEA SHEPHERD CONSERVATION SOCIETY'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION - 13
(C11-2043JLR)

PDXDOCS:2035655.10

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (503) 224-5858 SS F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1    2014 a research program including lethal take that will allow permits to be issued beginning with

2    the 2015 research season.  There is nothing "contingent" about it, other than the passage of time.

3            Defendants' "contingency" contention should be rejected for the same reason the

4    court rejected the government's "contingency" contention in *Committee for Idaho's High Desert*

5    *v. Collinge*, 148 F. Supp. 2d 1097 (D. Idaho 2001).  In *Collinge*, plaintiffs sought to enjoin a

6    government program that would analyze predation problems regarding the sage grouse and, if

7    tests showed a predation problem, would kill predators of the sage grouse.  The government

8    argued that the claim for injunctive relief was not ripe because predators would be killed *only if*

9    the testing component of the program revealed that predation was a problem for the sage grouse

10    and, thus, it would be premature to stop the program before that time.  *Collinge*, 148 F. Supp. 2d

11    at 1100.  The court held, however, that based on two previous surveys revealing that predation

12    was a problem for the sage grouse, it was "highly likely" that the early results would show a

13    problem and that predator elimination would be instituted.  *Id.*  Ultimately, the court held:

14
15
16
> Under these circumstances, predator control is only a "contingent future event" in a highly technical sense—in common sense terms, it is inevitable.  If ICL must wait until that point to bring its challenge, the Court will be forced to rule on an emergency basis, without the opportunity for a reasoned presentation and analysis.  For these reasons, the Court finds that this matter is ripe.

17    *Id.*

18            Just as in *Collinge*, defendants' claim of a "contingency" is "highly technical."

19    Defendants have provided no facts to suggest that it is unlikely plaintiffs will be engaged in

20    lethal-take research whaling in the near future, and especially by the time this case will likely be

21    reactivated.

22            Aside from the absence of any true "contingency," and putting aside for a moment

23    that ripeness is measured at the *outset* of a case, not *during* the case, even if defendants were

24    correct that a "contingency" exists, this does not equate to a ripeness controversy.  As observed

25    by the Ninth Circuit, "[r]ipeness is a doctrinal notion made up of policy considerations and the

26    case or controversy requirement of Article III of the Constitution of the United States." *Sandell*

PLAINTIFFS' OPPOSITION TO PAUL WATSON'S MOTION TO
DISMISS PLAINTIFFS' CLAIMS AS MOOT AND UNRIPE AND TO
SEA SHEPHERD CONSERVATION SOCIETY'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION - 14
(C11-2043JLR)

PDXDOCS:2035655.10

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (503) 224-5858 SS F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1   *v. F.A.A.*, 923 F.2d 661, 664 (9th Cir. 1990).  In *Sandell*, the court rejected a ripeness argument

2   by the Federal Aviation Administration.  That argument was to the effect that the FAA's decision

3   that plaintiff would have to take certain actions at its airport *if* an adjoining airport were built was

4   not ripe for review, based on the contingency of the other airport's ever being built:

5           That a contingency is involved is not fatal to ripeness.  At times, as here,
        common sense indicates that review should be afforded even though the ultimate
6        injury to the complaining party depends on the occurrence of further events.

7   923 F.2d at 664.  *See also In re Coleman*, 560 F.3d 1000, 1005 (9th Cir. 2009) (Debtor entitled

8   to determination that her student loans should be discharged for hardship, even though discharge

9   would occur *only if* debtor completed multi-year repayment plan; "plan completion is a single

10   factual contingency—not a 'series of contingencies' rendering the decision 'impermissibly

11   speculative.'" Court holds the case constitutionally ripe.).

12           Defendants' ripeness argument suffers a further flaw:  it confuses the concept with

13   mootness.  Ripeness is measured only at *commencement* of the case.  It is mootness that is

14   measured *throughout* the case.  *See Local Search Ass'n v. City and Cnty. of San Francisco*,

15   No. C 11-2776 SBA, 2013 WL 450845 (N.D. Cal. Feb. 4, 2013).  In *Local Search Ass'n*, the

16   plaintiffs alleged that a city ordinance violated their constitutional rights and sought to enjoin the

17   ordinance.  In response to a Ninth Circuit decision invalidating a similar ordinance in another

18   city, the defendant city suspended implementation of the challenged ordinance.  It then filed a

19   motion to dismiss for lack of subject matter jurisdiction based on claims of mootness, lack of

20   standing, and ripeness.  When discussing general justiciability issues, the court stated:

21           Both standing and ripeness are evaluated at the time the action is
        commenced.  *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1170
22        (9th Cir.2002) ("Standing is determined as of the commencement of litigation.");
        *Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d 808, 814 (8th Cir.2006)
23        ("Jurisdictional issues such as standing and ripeness are determined at the time the
        lawsuit was filed").  However, "[a]n actual controversy must be extant at all
24        stages of review, not merely at the time the complaint is filed." *Bernhardt v.
        County of Los Angeles*, 279 F.3d 862, 871 (9th Cir.2002).  Thus, a legal dispute
25        may become moot, and hence, no longer justiciable, based on developments
        during the course of the lawsuit. *Already, LLC v. Nike, Inc.*, —— U.S. ——,
26        133 S.Ct. 721, 726, —— L.Ed.2d —— (2013) ("a case becomes moot—and

PLAINTIFFS' OPPOSITION TO PAUL WATSON'S MOTION TO
DISMISS PLAINTIFFS' CLAIMS AS MOOT AND UNRIPE AND TO
SEA SHEPHERD CONSERVATION SOCIETY'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION - 15
(C11-2043JLR)

PDXDOCS:2035655.10

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (503) 224-5858 SS F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1   therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the
    issues presented are no longer "live" or the parties lack a legally cognizable
2   interest in the outcome.'") (quoting in part *Murphy v. Hunt*, 455 U.S. 478, 481,
    102 S.Ct. 1181, 71 L.Ed.2d 353 (1982)).

3

4   2013 WL 450845, at *3.

5          In evaluating the specific standing and ripeness arguments raised by plaintiffs, the

6   court explained:

7          As an alternative matter, the City contends that because the Ordinance has
    not yet been enforced and is unlikely to be enforced due to its suspension, LSA
8   cannot demonstrate that it has Article III standing or that its claims are ripe.  Mot.
    at 6–8.  These contentions are misplaced.  As noted, standing and ripeness are
9   evaluated at the time the action is commenced and are not obviated by subsequent
    developments in the action.  *See Flintkote Co. v. General Acc. Assur. Co.*,
10  410 F.Supp.2d 875, 882 (N.D.Cal.2006).  At the time LSA filed suit, the
    Ordinance was slated to take effect on May 1, 2012.  It was not until *after* LSA
11  initiated this lawsuit that the City voluntarily suspended the implementation of the
    Ordinance, initially pursuant to a decision by the Director of the City's
12  Department of the Environment, and more recently, by the enactment of
    Environment Code section 2109.  As such, because the City's voluntary
13  suspension of the Ordinance transpired subsequent to the filing of this action, the
    suspension does not obviate LSA's jurisdictional authority to seek judicial relief
14  through this action.

15  2013 WL 450845, at *3 (emphasis in original).  *See also Malama Makua v. Rumsfeld*,

16  136 F. Supp. 2d 1155, 1161 (D. Haw. 2001) ("Ripeness is an element of jurisdiction and is

17  measured at the time an action is instituted; ripeness is not a moving target affected by a

18  defendant's action.").

19         That this is the appropriate analysis is reflected in *Shell Offshore, Inc. v.*

20  *Greenpeace, Inc.*, 709 F.3d 1281 (9th Cir. 2013).  Reviewing a preliminary injunction issued

21  against Greenpeace to prevent it from attacking Shell's Artic drilling rig, the Ninth Circuit

22  addressed standing and ripeness as measured from the commencement of the action and

23  mootness based on the injunction's having expired before the court could decide the case.  The

24  court found the case not moot under the exception for disputes capable of repetition, yet evading

25  review.  709 F.3d at 1286-87.

26

PLAINTIFFS' OPPOSITION TO PAUL WATSON'S MOTION TO
DISMISS PLAINTIFFS' CLAIMS AS MOOT AND UNRIPE AND TO
SEA SHEPHERD CONSERVATION SOCIETY'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION - 16
(C11-2043JLR)

PDXDOCS:2035655.10

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (503) 224-5858 SS F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1        There can be no dispute that when this action was commenced, it was "ripe" from

2  a justiciability standpoint and, for the other reasons discussed above, remains "ripe."

3        Finally, defendants' argument as to "prudential ripeness" is misplaced.  The "basic

4  rationale [of that doctrine] is to prevent the courts, through avoidance of premature adjudication,

5  from entangling themselves in abstract disagreements over *administrative* policies, and also to

6  protect the *agencies* from judicial interference until an administrative decision has been

7  formalized and its effects felt in a concrete way by the challenging parties."  *Abbott Laboratories*

8  *v. Gardner*, 387 U.S. 136, 148-49 (1967), *abrogated on other grounds by Califano v. Sanders*,

9  430 U.S. 99 (1977) (emphasis added).  Both cases cited by Watson for "prudential ripeness" are

10  just such cases.  *See* Watson Motion at 7 (citing *Stormans, Inc. v. Selecky*, 586 F.3d 1109

11  (9th Cir. 2009) (pre-enforcement review of administrative regulations), and *Colwell v. Dep't of*

12  *Health and Human Svcs.*, 558 F.3d 1112 (9th Cir. 2009) (same)).  The same is true as to SSCS.

13  SSCS Motion at 8-9 (citing *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134 (9th Cir.

14  2000) (en banc) (pre-enforcement challenge to Alaska housing laws), and *Oklevueha Native Am.*

15  *Church of Haw., Inc. v. Holder*, 676 F.3d 829 (9th Cir. 2012) (pre-enforcement review of

16  statutes)).  None of the cases cited suggest that the doctrine is applied other than at the outset of a

17  case.

18        Moreover, it is questionable whether the "prudential ripeness" doctrine is a valid

19  basis for a court to decline to exercise its jurisdiction.  *Susan B. Anthony List v. Driehaus*,

20  No. 13-193, 573 U.S. ___, 2014 WL 2675871, at *11 (U.S. June 16, 2014) (questioning the

21  "continuing vitality" of "prudential ripeness" because the doctrine is in "some tension" with the

22  "virtually unflagging" duty of a court to exercise its constitutional jurisdiction).  But were the

23  doctrine applicable, the issues are fit for resolution, given the substantial factual and legal record

24  developed to date and the substantial hardship to plaintiffs were they denied the opportunity to

25  make permanent an injunction that protects plaintiffs from defendants' dangerous and illegal

26  conduct.

PLAINTIFFS' OPPOSITION TO PAUL WATSON'S MOTION TO
DISMISS PLAINTIFFS' CLAIMS AS MOOT AND UNRIPE AND TO
SEA SHEPHERD CONSERVATION SOCIETY'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION - 17
(C11-2043JLR)

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (503) 224-5858 SS F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

PDXDOCS:2035655.10

1  **C.    SSCS's assertion that the "Pending Contempt Proceeding in the Ninth Circuit Is Inconsequential to the Justiciability Inquiry Here" is not entirely correct—**
2  **defendants have raised mootness with the Ninth Circuit.**

3    SSCS (but not Watson) asserts that the pending contempt proceeding is

4  "inconsequential" to the justiciability inquiry here.  SSCS Motion at 10-11.  SSCS asserts, as the

5  Court thought in its Order Staying Case, Dkt. 181 ("Order"), that the proceedings in the

6  Ninth Circuit are "strictly backward-looking," and "[a]s such, those proceedings do not implicate

7  the question of whether the legal doctrines of mootness or ripeness bar Plaintiffs' claims going

8  forward."  Order, Dkt. 181, at 8:6-8.  This is not entirely correct.

9    An issue on contempt is whether SSCS, Watson, and certain other contemnors are

10  required to purge themselves of contempt by taking reasonable steps to secure return of ships and

11  other property used to commit contempt.  *See* Pls.' 9th Cir. Reply Br., 9th Cir. Dkt. 342, at 29-31.

12  SSCS and Watson (together with other contemnors) filed a sur-reply opposing this purging

13  request and arguing that the ICJ Judgment rendered this proposed coercive remedy "moot."  *See*

14  SSCS, Watson, and Contemnors' Sur-Reply, 9th Cir. Dkt. 346, at 2-5.  Defendants informed this

15  Court at the April 16, 2014 status conference that they intended to file a sur-reply, which they

16  filed April 18, 2014.  But in asking this Court to allow them to raise mootness, they did not

17  inform the Court that they intended to raise mootness with the Ninth Circuit.  Neupert Decl.,

18  Ex. 3, at 31.

19    In its Order, the Court declined to permit defendants to raise the *Kiobel* subject

20  matter jurisdiction issue, stating:

21    [T]he court is sensitive to the need to avoid conflicting rulings during the
pendency of dual proceedings before trial and appellate courts.  This concern is
22    magnified when the conflicting rulings would implicate federal subject matter
jurisdiction.  As such the court will defer taking up the [*Kiobel*] issue until the
23    Ninth Circuit has had a full opportunity to pass on it.

24  Dkt. 181, at 7:6-10.

25

26

PLAINTIFFS' OPPOSITION TO PAUL WATSON'S MOTION TO
DISMISS PLAINTIFFS' CLAIMS AS MOOT AND UNRIPE AND TO
SEA SHEPHERD CONSERVATION SOCIETY'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION - 18
(C11-2043JLR)

PDXDOCS:2035655.10

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (503) 224-5858 SS F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1    The same concerns that caused the Court to decline to permit defendants to raise

2  the *Kiobel* issue should cause the Court to decline the invitation to address the mootness/ripeness

3  issue that defendants have put before the Ninth Circuit.[7]

4  **D.    The Court should await further developments before deciding the mootness/ripeness**

5  **Motions.**

6    Two days after the Court's status conference, on April 18, 2014, Japan announced

7  its policy regarding future research whaling that definitively establishes that Japan is moving

8  forward with research whaling of the type defendants oppose.  Defendants ignore that fact.  That

9  is fatal to the Motions for the reasons discussed above.  And the Court was not apprised of those

10  facts at the time of its Order permitting a motion to dismiss based on mootness/ripeness.  If the

11  Court believes there are such significant present contingencies that mootness is an issue, rather

12  than dismiss this case, it should stay consideration of the Motions to see if these contingencies

13  occur.  The admonition of *Laidlaw* is apropos:  "[B]y the time mootness is an issue, the case has

14  been brought and litigated, often (as here) for years.  To abandon the case at an advanced stage

15  may prove more wasteful than frugal."  *Laidlaw*, 528 U.S. at 191-92.

16  **IV. <u>CONCLUSION</u>**

17    Because the issue of mootness is before the Ninth Circuit, this Court should

18  decline to entertain the Motions.  If the Court considers the Motions, it should conclude that

19  defendants have failed to satisfy their "heavy burden" to show that the controversy is moot or not

20  ripe.  Plaintiffs are (or soon will be) in need of a permanent injunction to prevent defendants'

21  illegal and dangerous interference with plaintiffs' Southern Ocean research whaling operations.

22

23

24

25  [7] Plaintiffs did not raise this issue after the Court's Order because defendants had not filed any
    motions raising mootness/ripeness, and, in light of the Court's *Kiobel* reasoning, it was
26  reasonable to expect that they would not do so.

PLAINTIFFS' OPPOSITION TO PAUL WATSON'S MOTION TO
DISMISS PLAINTIFFS' CLAIMS AS MOOT AND UNRIPE AND TO
SEA SHEPHERD CONSERVATION SOCIETY'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION - 19
(C11-2043JLR)

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (503) 224-5858 SS F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1    To say the controversy that gave rise to this case is no longer in need of resolution ignores reality

2    and is contrary to common sense.

3            DATED this 23rd day of June, 2014.

4

5

6                        By:      s/ John Neupert

                        John F. Neupert, P.C. #39883

7                        M. Christie Helmer #41171 (*admitted pro hac vice*)

                        MILLER NASH LLP

8                        111 S.W. Fifth Avenue, Suite 3400

                        Portland, Oregon  97204

9                        Telephone:  (503) 224-5858 or (206) 622-8484

                        Fax:  (503) 224-0155

10                     E-mail:    john.neupert@millernash.com

                                  chris.helmer@millernash.com

11                     *Attorneys for Plaintiffs and for Counterdefendants*

                        *The Institute of Cetacean Research and*

12                     *Kyodo Senpaku Kaisha, Ltd.*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' OPPOSITION TO PAUL WATSON'S MOTION TO
DISMISS PLAINTIFFS' CLAIMS AS MOOT AND UNRIPE AND TO
SEA SHEPHERD CONSERVATION SOCIETY'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION - 20
(C11-2043JLR)

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (503) 224-5858 SS F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1           I hereby certify that on June 23, 2014, I electronically filed the foregoing

2    Plaintiffs' Opposition to Defendant Paul Watson's Motion to Dismiss Plaintiffs' Claims as Moot

3    and Unripe and to Defendant Sea Shepherd Conservation Society's Motion to Dismiss for Lack

4    of Subject Matter Jurisdiction with the Clerk of the Court using the CM/ECF system, which will

5    send notification of such filing to the following:

6    Daniel P. Harris
     dan@harrismoure.com
7    Charles P. Moure
     charles@harrismoure.com
8    Rebecca Millican
     rebecca@harrismoure.com
9    Hilary Bricken
     hilary@harrismoure.com
10   HARRIS & MOURE, PLLC
     600 Stewart Street, Suite 1200
11   Seattle, Washington  98101
     Telephone:  (206) 224-5657
12   Fax:  (206) 224-5659
     *Attorneys for Defendant/Counterplaintiff*
13   *Sea Shepherd Conservation Society*

Timothy G. Leyh
timl@calfoharrigan.com
Charles S. Jordan
chipj@calfoharrigan.com
Michelle Buhler
michelleb@calfoharrigan.com
CALFO HARRIGAN LEYH & EAKES LLP
999 Third Avenue, Suite 4400
Seattle, Washington  98104
Telephone:  (206) 623-1700
Fax:  (206) 623-8717
*Attorneys for Defendant Paul Watson*

14

15          DATED this 23rd day of June, 2014.

16              By:        s/ John Neupert
17              John F. Neupert, P.C. #39883
           *Of Attorneys for Plaintiffs and for*
18              *Counterdefendants The Institute of Cetacean*
           *Research and Kyodo Senpaku Kaisha, Ltd.*

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE - 1
(C11-2043JLR)

**MILLER NASH** LLP
ATTORNEYS AT LAW
T: (503) 224-5858 SS F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204