The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THE INSTITUTE OF CETACEAN RESEARCH, a Japanese research foundation; KYODO SENPAKU KAISHA, LTD., a Japanese corporation; TOMOYUKI OGAWA, an individual; and TOSHIYUKI MIURA, an individual,<br><br>　　　　　　　　Plaintiffs,<br>　v.<br><br>SEA SHEPHERD CONSERVATION SOCIETY, an Oregon nonprofit corporation, and PAUL WATSON, an individual,<br><br>　　　　　　　　Defendants. | No. C11-2043JLR<br><br>PLAINTIFFS THE INSTITUTE OF CETACEAN RESEARCH, KYODO SENPAKU KAISHA, LTD., AND TOMOYUKI OGAWA'S MOTION TO LIFT STAY AND FOR REMEDIAL SANCTIONS FOR CONTEMPT<br><br>**NOTE ON MOTION CALENDAR:**<br>March 27, 2015<br><br>**ORAL ARGUMENT REQUESTED** |
| SEA SHEPHERD CONSERVATION SOCIETY, an Oregon nonprofit corporation,<br><br>　　　　　　　　Counterplaintiff,<br>　v.<br><br>THE INSTITUTE OF CETACEAN RESEARCH, a Japanese research foundation; KYODO SENPAKU KAISHA, LTD., a Japanese corporation; and HIROYUKI KOMURA, an individual,<br><br>　　　　　　　　Counterdefendants. | |

PLAINTIFFS THE INSTITUTE OF CETACEAN RESEARCH,
KYODO SENPAKU KAISHA, LTD., AND TOMOYUKI OGAWA'S
MOTION TO LIFT STAY AND FOR REMEDIAL SANCTIONS
FOR CONTEMPT - 1
(C11-2043JLR)

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

70007278.7

## I. RELIEF REQUESTED

The December 19, 2014, Ninth Circuit Opinion on plaintiffs' Motion for Contempt (9th Cir. Dkt. No. 360), held defendants Sea Shepherd Conservation Society ("SSCS") and Paul Watson ("Watson") and the now former directors of SSCS (Lani Blazier, Marnie Gaede, Bob Talbot, Robert Wintner, Ben Zuckerman, and Peter Rieman, individually and collectively, the "Former Directors") in contempt. The Ninth Circuit further directed plaintiffs to the district court on their contempt motion's request for coercive sanctions and an order to compel compliance, noting the district court "assumed supervision over the Defendants' [the above eight parties] present compliance with the preliminary injunction." 9th Cir. Dkt. No. 360, at 49. Accordingly, plaintiffs The Institute of Cetacean Research, Kyodo Senpaku Kaisha, Ltd., and Tomoyuki Ogawa[1] ("Plaintiffs") move the Court for entry of an order lifting the current stay of this case (Dkt. No. 181) and entering an order of remedial contempt as follows:

(1) Each Former Director[2] is fined the sum of $500,000 payable to the Court. The fine is suspended as to each Former Director so long as that individual complies with the preliminary injunction order issued December 17, 2012, by the Ninth Circuit (9th Cir. Dkt. No. 31; W.D. Wash. Dkt. No. 118) ("Injunction"). Should a Former Director violate the Injunction, then the person violating shall immediately pay $500,000 to the Court.

(2) SSCS is fined the sum of $2,000,000 payable to the Court. SSCS shall post a bond for the benefit of the Court in that amount by a qualified surety within 10 days of entry of the Court's order. The fine is suspended, provided that SSCS complies with the

---

[1] "Plaintiffs" is defined to exclude named plaintiff Toshiyuki Miura as he is retired and will be dropped as a plaintiff when Plaintiffs file a first amended complaint.

[2] The Former Directors have not been made parties to this action, but, given the direction of the Ninth Circuit that this Court determine remedial contempt against the defendants and the Former Directors, Plaintiffs regard the Former Directors as parties to this motion and, for that reason, are serving their counsel with this motion and supporting papers.

PLAINTIFFS THE INSTITUTE OF CETACEAN RESEARCH,
KYODO SENPAKU KAISHA, LTD., AND TOMOYUKI OGAWA'S
MOTION TO LIFT STAY AND FOR REMEDIAL SANCTIONS
FOR CONTEMPT - 2
(C11-2043JLR)

70007278.7

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Injunction, does not encourage, support, induce, or incite others to violate the Injunction, and, in addition, exercises all good-faith effort to:

    (a)    promptly secure SSCS's control over the vessels *Bob Barker*, *Brigitte Bardot*, *Sam Simon*, and *Steve Irwin*, including but not limited to enforcing all legal rights SSCS has as respects possession or control of those vessels and their respective ancillary equipment, including but not limited to such rights that exist under the following documents:

        (i)    January 2013 grant agreement from SSCS to Sea Shepherd Australia Limited ("SSAL") (grant of equipment aboard *Brigitte Bardot*) (*see* Decl. of John F. Neupert in Supp. of Pls. The Institute of Cetacean Research, Kyodo Senpaku Kaisha, Ltd., and Tomoyuki Ogawa's Mot. for Remedial Sanctions for Contempt ("Neupert Sanctions Decl.," submitted herewith) Ex. 1);

        (ii)    January 12, 2013, grant agreement from SSCS to Stichting Sea Shepherd Conservation Society ("SSN") (grant of equipment aboard *Steve Irwin*) (Neupert Sanctions Decl. Ex. 2);

        (iii)    January 12, 2013, grant agreement from SSCS to SSN (grant of *Bob Barker*) (Neupert Sanctions Decl. Ex. 3);

        (iv)    October 4, 2012, agreement for transfer and grant of vessel between SSAL, SSCS, and New Atlantis Ventures, LLC (grant of *Sam Simon*) (Neupert Sanctions Decl. Ex. 4);

        (v)    December 21, 2010, grant agreement from SSCS to SSAL (grant of *Brigitte Bardot*) (Neupert Sanctions Decl. Ex. 5); and

        (vi)    March 9, 2012, deed of transfer for *Steve Irwin* (Neupert Sanctions Decl. Ex. 6).

    (3)    Good-faith effort shall include, if necessary, the commencement and enforcement of lawsuits seeking possession and control of the vessels and equipment against

PLAINTIFFS THE INSTITUTE OF CETACEAN RESEARCH, KYODO SENPAKU KAISHA, LTD., AND TOMOYUKI OGAWA'S MOTION TO LIFT STAY AND FOR REMEDIAL SANCTIONS FOR CONTEMPT - 3
(C11-2043JLR)

70007278.7

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

anyone exercising possession or control over them.  By way of example only, if the *Bob Barker* is not returned to SSCS's possession and control in response to its request, then SSCS shall immediately initiate legal proceedings to secure that possession and control.  If Peter Hammarstedt (or any other person) is in command or control of *Bob Barker* and he (or she) refuses to surrender possession and control of *Bob Barker* to SSCS, then SSCS shall initiate appropriate civil or criminal proceedings against Mr. Hammarstedt (or such other person) in order to remove him (or her) from control or command of *Bob Barker*.

   (4) Watson is fined the sum of $2,000,000 payable to the Court.  The fine is suspended, provided that:

    (a) Watson complies with the Injunction;

    (b) Watson does not encourage, support, induce, or incite others to violate the Injunction; and

    (c) Watson exerts good-faith effort to assist SSCS in complying with its obligations set forth in (2) and (3) above.

   (5) Defendants shall report to the Court within 14 days of issuance of the Court's order of the steps they have undertaken and will undertake to comply with the Court's order and shall similarly report thereafter upon request of Plaintiffs or the Court.

   (6) Defendants shall pay Plaintiffs their reasonable expenses, including attorney fees, in monitoring or securing compliance with the Court's order.  Such expenses shall be paid quarterly by defendants upon Plaintiffs' submission of appropriate documentation seeking reimbursement.  The Court will resolve any disputes regarding payment.

   (7) Should the remedies set forth herein be insufficient to remedy the contempt of the Former Directors and the defendants, and to ensure future compliance with the Injunction, then, for good cause shown, Plaintiffs may seek any additional appropriate remedy.

PLAINTIFFS THE INSTITUTE OF CETACEAN RESEARCH,
KYODO SENPAKU KAISHA, LTD., AND TOMOYUKI OGAWA'S
MOTION TO LIFT STAY AND FOR REMEDIAL SANCTIONS
FOR CONTEMPT - 4
(C11-2043JLR)

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

70007278.7

## II. INTRODUCTION

This action has been stayed pending the Ninth Circuit's consideration of objections to the Report and Recommendation of the Ninth Circuit Appellate Commissioner, to whom plaintiffs' motion for contempt was referred.  Dkt. No. 181.  The Ninth Circuit has now held, in no uncertain terms, that SSCS, Watson, and the Former Directors are in contempt for violations of the Injunction.  Opinion, 9th Cir. Dkt. No. 360.  The Ninth Circuit has directed that plaintiffs' requests "for coercive sanctions and an order to compel compliance" with the Injunction be addressed to this Court.  9th Cir. Dkt. No. 360, at 49.  Plaintiffs seek to lift the stay so this Court may proceed to address remedial contempt.[3]

Plaintiffs request the Court's adoption of Plaintiffs' proposed remedial sanctions, which are designed to ensure future compliance with the Injunction and, as to defendants, to require them to undo what the Ninth Circuit found they did to evade—and hence violate—the Injunction; viz., ceding control over instrumentalities (ships and equipment) to those who then used them to commit contempt.  If defendants are required to exercise good-faith efforts to regain control of the ships and equipment used to harass Plaintiffs' ships and crew in the past, and those efforts are successful, then defendants will have purged themselves of contempt, and, for the first time in many years, Plaintiffs may be able to perform their research activities in the Southern Ocean in the 2015-2016 season free of the dangerous and illegal conduct of the past.  This is the most effective way, and perhaps the only effective way, to see that the Court's Injunction accomplishes what it is designed to accomplish.

## III. LEGAL AUTHORITY AND ARGUMENT

**A.    Standards for imposition of remedial contempt sanctions.**

The Court has broad discretion in fashioning a contempt sanction.  *S.E.C. v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003) ("District courts have broad equitable power to

---

[3] Pursuant to a third amended joint status report due to be filed March 11, 2015, Plaintiffs propose the stay be lifted to address the rest of this action as set forth in the status report.

PLAINTIFFS THE INSTITUTE OF CETACEAN RESEARCH,
KYODO SENPAKU KAISHA, LTD., AND TOMOYUKI OGAWA'S
MOTION TO LIFT STAY AND FOR REMEDIAL SANCTIONS
FOR CONTEMPT - 5
(C11-2043JLR)

70007278.7

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

order appropriate relief in civil contempt proceedings."). "Sanctions for civil contempt may be imposed to coerce obedience to a court order . . . ." *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986). Such sanctions must be commensurate with the "character and magnitude of the harm threatened by continued contumacy" and calculated to ensure compliance with the Injunction in the future. *Id.* (internal quotation marks and citations omitted); *see also Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 516 (9th Cir. 1992) ("A court, in determining the amount and duration of a coercive fine, must 'consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired.'") (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947)). The amount of a defendant's financial resources and the concomitant burden may also be considered. *United Mine Workers of Am.*, 330 U.S. at 304.

A court may also impose a bond requirement to ensure that funds are available if violations occur in the future. *See Whittaker Corp.*, 953 F.2d at 516-17 (affirming a district court's order that a contemnor post a bond in the amount of $1,000,000).

Finally, it is appropriate to order unwinding of conduct deemed contemptuous. *In re Transamerica Corp.*, 184 F.2d 319, 326 (9th Cir.), *cert. denied*, 340 U.S. 883 (1950) (respondents found in contempt for engaging in asset transfers deemed violative of Ninth Circuit injunction ordered to "purge themselves thereof by returning and restoring [the assets] . . . and by taking all steps necessary and appropriate to effect such return and restoration.").

**B.   Ordering the Former Directors to comply with the Injunction subject to a $500,000 sanction if violated is appropriate.**

Plaintiffs' request for a $500,000 suspended fine, provided that each Former Director comply in the future with the Injunction, is simple and straightforward. While the Former Directors may currently no longer be in a position to direct the activities of SSCS, given their resignations from SSCS's Board, each Former Director is physically capable of complying

PLAINTIFFS THE INSTITUTE OF CETACEAN RESEARCH, KYODO SENPAKU KAISHA, LTD., AND TOMOYUKI OGAWA'S MOTION TO LIFT STAY AND FOR REMEDIAL SANCTIONS FOR CONTEMPT - 6
(C11-2043JLR)

70007278.7

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

with the Injunction's proscription against dangerous navigation or approaching within 500 yards of Plaintiffs' ships while on the high seas in the Southern Ocean or "acting in concert" with any person who does so. A suspended fine is an appropriate coercive contempt sanction. *See Portland Feminist Women's Health Ctr. v. Advocates for Life, Inc.*, 877 F.2d 787, 790 (9th Cir. 1989) (affirming suspended fine, conditioned on future compliance).

**C.   It is appropriate to order SSCS to retrieve all of the ships over which it ceded control and to exercise SSCS's legal rights over those ships.**

In its Opinion, the Ninth Circuit found SSCS in contempt on many different grounds, but key to many of them was the fact that SSCS provided others the means to violate the Injunction:

> Sea Shepherd US's most troubling post-injunction support for OZT came in a series of substantial grants of property it made to various Sea Shepherd entities participating in the OZT campaign. In January of 2013, the Sea Shepherd US board authorized a series of grants to Sea Shepherd Australia and Sea Shepherd Netherlands. Specifically, Sea Shepherd US gave equipment aboard the *Brigitte Bardot* to Sea Shepherd Australia for no consideration. This equipment had an original purchase price of more than $175,000. Sea Shepherd US also gave equipment aboard the *Steve Irwin* to Sea Shepherd Netherlands, again for no consideration. This equipment had an original purchase price of several hundreds of thousands of dollars. Most significantly, Sea Shepherd US also transferred ownership of its vessel, the *Bob Barker*, to Sea Shepherd Netherlands for no consideration. As noted earlier, the *Bob Barker* and the transferred equipment had a total original purchase price of nearly two million dollars. The *Brigitte Bardot*, *Steve Irwin*, and *Bob Barker* all participated in OZT. Each vessel was involved in at least one violation of the injunction; the *Bob Barker* was involved in several.
>
> . . . .
>
> In light of this undisputed evidence, we hold that Sea Shepherd US violated the injunction by giving others it knew were highly likely to violate the injunction the means to do so. . . . Our objective in issuing the injunction was to stop Sea Shepherd from attacking the Plaintiffs' vessels. Sea Shepherd US thwarted that objective by furnishing other Sea Shepherd entities with the means to do what it could not after the issuance of the injunction.

9th Cir. Dkt. No. 360, at 24-26.

PLAINTIFFS THE INSTITUTE OF CETACEAN RESEARCH,
KYODO SENPAKU KAISHA, LTD., AND TOMOYUKI OGAWA'S
MOTION TO LIFT STAY AND FOR REMEDIAL SANCTIONS
FOR CONTEMPT - 7
(C11-2043JLR)

70007278.7

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1    Because the ships are subject to the control of SSCS pursuant to the grant agreements, SSCS should be required to exercise good-faith effort to secure control over the means it has provided to others to commit past contempt and potential future contempt.

SSCS, as a 501(c)(3) charitable organization, is required by U.S. tax law to maintain control over transferred assets so as to ensure those assets are used for the charity's charitable purposes.[4]  Accordingly, each of the grant agreements used by SSCS to grant *Bob Barker*, *Brigitte Bardot*, and *Sam Simon,* and the equipment aboard *Steve Irwin* and *Brigitte Bardot,* contains language that restricts the use to which grant property may be put and provides revocation rights if that property is used contrary to the grant.  For example, the grant of *Bob Barker* to SSN provides under the section "Use of Grant" that the ship may not be used "for any purpose other than charitable, scientific, literary or educational purposes."  Neupert Sanctions Decl. Ex. 3, at 1.  This must in all common sense be interpreted to mean that the ship may not be used for an illegal purpose, such as to violate the Injunction or otherwise violate the law.  *Bob Jones Univ. v. United States*, 461 U.S. 574, 591 (1983); Rev. Rul. 75-384, 1975-2 C.B. 204, 1975 WL 34915 (organization formed to promote world peace and disarmament by nonviolent direct action in which demonstrators are urged to commit violations of local ordinances and breaches of public order did not qualify as a 501(c)(3) charitable organization).

Under the section of the grant agreement titled "Return of Grant;" "[i]f the *BOB BARKER* or any proceeds resulting from the use or sale of the vessel is used for any other purposes than those outlined above, the *BOB BARKER* must be promptly returned to SSCS and/or financial compensation equivalent to the value of the *BOB BARKER* ($1,995,134.00) must be immediately paid from SSN to SSCS."  Neupert Sanctions Decl. Ex. 3, at 2.  This is

---

[4] Rev. Rul. 66-79, 1966-1 C.B. 48, 1966 WL 15142.  *See also* I.R.S. Gen. Couns. Mem. 35,319, 1973 WL 34333 (Apr. 27, 1973), stating that a U.S. charity's transfer of funds abroad must be to an agent over whom the charity exercises control regarding use of the funds.  The Ninth Circuit has relied on these General Counsel Memoranda in reaching opinions. *Idaho First Nat'l Bank v. C.I.R.*, 997 F.2d 1285, 1290 (9th Cir. 1993).

PLAINTIFFS THE INSTITUTE OF CETACEAN RESEARCH, KYODO SENPAKU KAISHA, LTD., AND TOMOYUKI OGAWA'S MOTION TO LIFT STAY AND FOR REMEDIAL SANCTIONS FOR CONTEMPT - 8
(C11-2043JLR)

70007278.7

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

reiterated in the "Compliance" section of the grant, which provides that SSCS "has the right at its discretion to terminate the grant if SSN fails to comply with any term or condition of the Grant Agreement" and, "[u]pon termination, if requested by SSCS, SSN agrees to promptly return to SSCS the *BOB BARKER* (as of the date of termination) and/or financial compensation equivalent to the value of *BOB BARKER* ($1,995,334.00)."  Neupert Sanctions Decl. Ex. 3, at 3.

Each of the other grant agreements governing the ships and equipment aboard them is identical to the *Bob Barker's* grant agreement.  *See* Neupert Sanctions Decl. Ex. 5 (*Brigitte Bardot*); Ex. 1 (equipment aboard *Brigitte Bardot*); Ex. 4 (*Sam Simon*); and Ex. 2 (equipment aboard *Steve Irwin*).

The *Steve Irwin*, while not subject to a grant agreement, is, as a practical matter, in the same situation as the other instruments of contempt—it is subject to the control of SSCS. In its Opinion, the Ninth Circuit essentially found *Steve Irwin* to be under the control of SSCS:

> When the injunction issued on December 17, 2012, Sea Shepherd US was leading OZT with Watson serving as the campaign leader and captain of the *Steve Irwin*.  Yet, Sea Shepherd US did not respond to the injunction by attempting to prevent people <u>and equipment under its control</u> from participating in the campaign.  Watson, as Executive Director of Sea Shepherd US, did not use his authority to withdraw the *Steve Irwin* from OZT after the injunction issued. . . . In his testimony before the Appellate Commissioner, Watson conceded that he could have remained <u>in control</u> of the OZT vessels after the injunction and tried to make sure that they complied.

9th Cir. <u>Dkt. No. 360, at 19</u> (emphasis added).

Before OZT (the SSCS "campaign" during which the acts of contempt occurred), Watson, then head of SSCS, made clear that *Steve Irwin* was an SSCS ship:  he testified under oath, "SSCS always had complete control over how the vessel [the *Steve Irwin*] was to be used," "[t]he 'STEVE IRWIN' has always been considered to be an SSCS vessel," and "[i]t [the *Steve Irwin*] is owned 100% by SSCS, and the UK entity is only involved in a nominal capacity." Neupert Sanctions Decl. Ex. 7, at 4 (¶¶ 14, 16, 18).  This is borne out by the documented ownership of *Steve Irwin*.  The March 9, 2012, deed of transfer of *Steve Irwin* provides that "economic ownership of this vessel rests with Sea Shepherd Conservation Society," and "the

PLAINTIFFS THE INSTITUTE OF CETACEAN RESEARCH, KYODO SENPAKU KAISHA, LTD., AND TOMOYUKI OGAWA'S MOTION TO LIFT STAY AND FOR REMEDIAL SANCTIONS FOR CONTEMPT - 9
(C11-2043JLR)

70007278.7

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1 Beneficiary [defined as SSCS] and the Purchaser have agreed that the Seller will transfer the
2 legal ownership of the vessel 'Steve Irwin' to the Purchaser; the economic ownership [with] the
3 Beneficiary."  Neupert Sanctions Decl. Ex. 6, at 8.[5]

4  Given that SSCS had control of the instruments of contempt (the ships and
5 equipment) and then improperly ceded that control at the time of OZT, it should now be required
6 to reassert its rights of control, whatever they may be.  At a minimum, this would entail asserting
7 its rights under the grant agreements and its "economic ownership" rights in *Steve Irwin*.  *In re*
8 *Transamerica Corp.*, 184 F.2d at 326 (respondents found in contempt for engaging in asset
9 transfers deemed violative of Ninth Circuit injunction ordered to "purge themselves thereof by
10 returning and restoring [the assets] . . . and by taking all steps necessary and appropriate to effect
11 such return and restoration.").  This obligation to exercise its rights to retrieve the instruments of
12 contempt should be secured by a $2,000,000 bond in favor of Plaintiffs.  *See Whittaker Corp.*,
13 953 F.2d at 516-17 (affirming a district court's order that a contemnor post a bond in the amount
14 of $1,000,000).  This will serve to ensure that SSCS fully exercises its rights to the extent of the
15 law to retrieve the instruments of contempt so they will not be used against Plaintiffs in the
16 future.

**D. Ordering Watson to comply with the Injunction, to assist SSCS to purge itself of contempt, and to not incite others to violate the Injunction is appropriate.**

19  The Ninth Circuit found that "the record amply supports the inference that
20 Sea Shepherd US, and Watson in particular . . ., 'incited' others to violate the injunction . . . ."

---

[5] Plaintiffs have been unable to identify authority definitively stating what "economic ownership" means in this context, but it appears to be a form of "ultimate control."  *See, e.g.*, *Crown EMAK Partners, LLC v. Kurz,* 992 A.2d 377, 390-91 (Del. 2010).  An "economic owner" is likely akin to a "beneficial owner," which Black's Law Dictionary describes as "[o]ne recognized in equity as the owner of something because use and title belong to that person, even though legal title may belong to someone else."  Black's Law Dictionary 1214 (Bryan A. Garner ed., 9th ed. 2009).  This is consistent with the deed's statement that "[t]he receipts and expenditures as well as the risk of the [ship] shall remain resting with the Beneficiary [SSCS]."  Neupert Sanctions Decl. Ex. 6, at 9 (¶ 3).

PLAINTIFFS THE INSTITUTE OF CETACEAN RESEARCH,
KYODO SENPAKU KAISHA, LTD., AND TOMOYUKI OGAWA'S
MOTION TO LIFT STAY AND FOR REMEDIAL SANCTIONS
FOR CONTEMPT - 10
(C11-2043JLR)

70007278.7

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Opinion, 9th Cir. Dkt. No. 360, at 32. The Appellate Commissioner found "Watson is in a different position from the rest of the SSCS board in another way. He is the larger-than-life founder of SSCS, holding key positions in the global Sea Shepherd movement." Report & Recommendation, 9th Cir. Dkt. No. 314, at 67. Indeed, Alex Cornelissen, Watson's hand-picked successor, stated in April 2013, after Watson's resignation from SSCS: "[W]e are still a global organization led by one man: Captain Paul Watson." Neupert Sanctions Decl. Ex. 8, at 8.

Because of Watson's continued stature in the Sea Shepherd movement and because of his prior involvement in acts of contempt, he, too, should be required to pay a fine if he violates the Injunction and be required to assist SSCS to retrieve the instruments of contempt. Furthermore, he should be prohibited from encouraging, supporting, inducing, or inciting others to violate the Injunction. Watson should be subject to a $2,000,000 fine, suspended based on his compliance with the foregoing. The amount of the suspended fine should be higher for Watson than for the Former Directors, given his past recalcitrance and the need to induce him to comply. In addition, it is likely that SSCS has agreed to indemnify Watson from monetary contempt exposure, so his fine should be at least commensurate with the fine of SSCS.

### E. Other conditions of remedial contempt.

To ensure that SSCS and Watson are complying with the Court's requirement that they engage in good-faith efforts to retrieve the ships and related equipment, SSCS and Watson should be required to initially report to the Court the steps they will undertake to comply with the order and to report to Plaintiffs thereafter at their request (or to the Court at its request). Plaintiffs' costs of monitoring SSCS's and Watson's compliance with the Court's order should also be recoverable from SSCS and Watson. *Cf. Balla v. Idaho*, 677 F.3d 910, 918 (9th Cir. 2012) (attorney fees for monitoring compliance with injunction recoverable: "[I]njunctions do not always work effectively, without lawyers to see that the enjoined parties do what they were told to do[, and] just as night watchmen deter burglary, monitors deter violations of injunctions."). Given the Court's broad discretion to fashion an equitable remedy for contempt,

PLAINTIFFS THE INSTITUTE OF CETACEAN RESEARCH,
KYODO SENPAKU KAISHA, LTD., AND TOMOYUKI OGAWA'S
MOTION TO LIFT STAY AND FOR REMEDIAL SANCTIONS
FOR CONTEMPT - 11
(C11-2043JLR)

70007278.7

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1  expenses, including reasonable attorney fees incurred in monitoring compliance, should be

2  recoverable. *S.E.C. v. Hickey*, 322 F.3d at 1128.

## IV. CONCLUSION

The proposed remedial contempt sanctions are reasonable and appropriate, and an order to that effect should be issued. This will allow SSCS to begin the process to regain control of ships and equipment that have attacked Plaintiffs in the past and should not be allowed to attack Plaintiffs in the future.

DATED this 5th day of March, 2015.

By:  s/ John F. Neupert
John F. Neupert, P.C. #39883
M. Christie Helmer #41171 (*admitted pro hac vice*)
MILLER NASH GRAHAM & DUNN LLP
111 S.W. Fifth Avenue, Suite 3400
Portland, Oregon  97204
Telephone:  (503) 224-5858 or (206) 624-8300
Fax:  (503) 224-0155 or (206) 340-9599
E-mail:   john.neupert@millernash.com
              chris.helmer@millernash.com
*Attorneys for Plaintiffs and for Counterdefendants The Institute of Cetacean Research and Kyodo Senpaku Kaisha, Ltd.*

PLAINTIFFS THE INSTITUTE OF CETACEAN RESEARCH, KYODO SENPAKU KAISHA, LTD., AND TOMOYUKI OGAWA'S MOTION TO LIFT STAY AND FOR REMEDIAL SANCTIONS FOR CONTEMPT - 12
(C11-2043JLR)

70007278.7

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

**CERTIFICATE OF SERVICE**

I hereby certify that on March 5, 2015, I electronically filed the foregoing PLAINTIFFS THE INSTITUTE OF CETACEAN RESEARCH, KYODO SENPAKU KAISHA, LTD., AND TOMOYUKI OGAWA'S MOTION TO LIFT STAY AND FOR REMEDIAL SANCTIONS FOR CONTEMPT with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Douglas W. Greene<br>greened@lanepowell.com<br>Claire Loebs Davis<br>davisc@lanepowell.com<br>Kristin Beneski<br>beneskik@lanepowell.com<br>LANE POWELL PC<br>1420 Fifth Avenue, Suite 4200<br>Post Office Box 91302<br>Seattle, Washington  98111<br>*Attorneys for Defendant/Counterplaintiff Sea Shepherd Conservation Society* | Timothy G. Leyh<br>timl@calfoharrigan.com<br>Charles S. Jordan<br>chipj@calfoharrigan.com<br>Michelle Buhler<br>michelleb@calfoharrigan.com<br>CALFO HARRIGAN LEYH & EAKES LLP<br>999 Third Avenue, Suite 4400<br>Seattle, Washington  98104<br>*Attorneys for Defendant Paul Watson* |

I further certify that on the date indicated above, I served the foregoing document on:

| | |
|---|---|
| Mr. David F. Taylor<br>DFTaylor@perkinscoie.com<br>Ms. Kathleen M. O'Sullivan<br>KOSullivan@perkinscoie.com<br>Mr. Zachary P. Jones<br>ZJones@perkinscoie.com<br>Perkins Coie LLP<br>1201 Third Avenue, Suite 4900<br>Seattle, Washington  98101-3099<br>*Attorneys for Marnie Gaede, Ben Zuckerman, Lani Blazier, Robert Wintner, and Bob Talbot* | Ms. Kristina S. Bennard<br>kbennard@yarmuth.com<br>Ms. Julia D. Woog<br>jwoog@yarmuth.com<br>Yarmuth Wilsdon PLLC<br>818 Stewart Street, Suite 1400<br>Seattle, Washington  98101<br>*Attorneys for Peter Rieman* |

by the following indicated method or methods:

CERTIFICATE OF SERVICE - 1
(C11-2043JLR)

70007278.7

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

| | | |
|---|---|---|
| 1 | ☒ | **First-class mail, postage prepaid.** |
| 2 | | |
| 3 | ☐ | **Hand-delivery.** |
| 4 | ☐ | **Overnight courier, delivery prepaid.** |
| 5 | ☐ | **E-mail, as a courtesy only.** |

DATED this 5th day of March, 2015.

By: _____s/ John F. Neupert_____
John F. Neupert, P.C. #39883
*Of Attorneys for Plaintiffs and for Counterdefendants The Institute of Cetacean Research and Kyodo Senpaku Kaisha, Ltd.*

CERTIFICATE OF SERVICE - 2
(C11-2043JLR)

70007278.7

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204