1

2

3

4

5

6                                                          The Honorable James L. Robart

7

8                          UNITED STATES DISTRICT COURT
                         WESTERN DISTRICT OF WASHINGTON
9                                    AT SEATTLE

10   THE INSTITUTE OF CETACEAN
     RESEARCH, a Japanese research foundation;
11   KYODO SENPAKU KAISHA, LTD., a                   No. C11-2043JLR
     Japanese corporation; and TOMOYUKI
12   OGAWA, an individual,                           PLAINTIFFS' MOTION TO DISMISS
                                                     DEFENDANTS' FIRST AMENDED
13                          Plaintiffs,              COUNTERCLAIMS
              v.
14                                                   NOTE ON MOTION CALENDAR:
     SEA SHEPHERD CONSERVATION                       Friday, June 19, 2015
15   SOCIETY, an Oregon nonprofit corporation,
     and PAUL WATSON, an individual,                 ORAL ARGUMENT REQUESTED
16
                            Defendants.
17

18   SEA SHEPHERD CONSERVATION
     SOCIETY, an Oregon nonprofit corporation;
19   and PAUL WATSON, an individual,

20                          Counterclaim Plaintiffs,
              v.
21
     THE INSTITUTE OF CETACEAN
22   RESEARCH, a Japanese foundation;
     KYODO SENPAKU KAISHA, LTD., a
23   Japanese corporation; TOMOYUKI OGAWA,
     an individual; and HIROYUKI KOMURA,
24   an individual,

25                          Counterclaim Defendants.

26

PLAINTIFFS' MOTION TO DISMISS DEFENDANTS'
FIRST AMENDED COUNTERCLAIMS - 1
(C11-2043JLR)

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

70027333.7

1

# I. <u>RELIEF REQUESTED</u>

2          Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 17, plaintiffs The Institute of

3  Cetacean Research ("ICR"), Kyodo Senpaku Kaisha, Ltd. ("Kyodo Senpaku"), and Tomoyuki

4  Ogawa ("Ogawa") (collectively, "Plaintiffs") move for an order dismissing the first amended

5  counterclaims of defendants Sea Shepherd Conservation Society ("SSCS") and Paul Watson

6  ("Watson") (collectively, "Defendants") filed May 15, 2015 (<u>Dkt. 235</u>).

7

# II. <u>INTRODUCTION</u>

8          Defendants' amended answer contains seven counterclaims.  The Fifth and Sixth

9  counterclaims are for damages, while the remaining counterclaims seek forward-looking

10  declaratory or injunctive relief.  The Fifth counterclaim basically realleges SSCS's previous

11  counterclaim for damages arising from the ADY GIL collision.  It should be dismissed based on

12  the statute of limitations as argued in ICR and Kyodo Senpaku's motion for partial summary

13  judgment. <u>Dkt. 228</u>, <u>229</u>, <u>232</u>, and <u>233</u>.  The Sixth counterclaim should be dismissed because

14  Defendants do not allege that they had any interest in the ships allegedly damaged during the

15  period in question—the period following the Ninth Circuit's Injunction.  Indeed, Defendants

16  disclaim any interest in the ships used in Operation Zero Tolerance (2012-2013 season) or

17  Operation Relentless (2013-2014 season):  "SSCS was not involved in any Southern Ocean

18  whale-protection campaign following the issuance of the Injunction in December 2012"

19  (<u>Dkt. 235, ¶ 44, at 27</u>), and it "no longer had any ownership interest in, or control over," the

20  ships. <u>Dkt. 235, ¶ 98, at 39</u>.  According to Defendants, the alleged attacks by ICR vessels

21  damaged the "Sea Shepherd vessels." <u>Dkt. 235, ¶¶ 45-49, at 28-29</u>.  Defendants allege that

22  "Sea Shepherd" is not SSCS. <u>Dkt. 235, ¶ 3, at 16-17</u> ("As used herein, 'SSCS' refers to

23  Counterclaim Plaintiff Sea Shepherd Conservation Society, while 'Sea Shepherd' refers

24  generally to those entities with some version of the name 'Sea Shepherd,'" who are "independent

25  entities.").  Defendants cannot have it both ways:  In the absence of an allegation of a protectable

26

PLAINTIFFS' MOTION TO DISMISS DEFENDANTS'
FIRST AMENDED COUNTERCLAIMS - 2
(C11-2043JLR)

70027333.7

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1  interest in the allegedly damaged "Sea Shepherd" ships, Defendants have not stated a claim for

2  damages to those ships.

3      The other five forward-looking claims should be dismissed for a variety of

4  different grounds as discussed below, but all should be dismissed because Defendants have not

5  alleged that they will suffer any injury-in-fact, a prerequisite to standing.  Indeed, Defendants

6  have alleged that "SSCS and Watson do not plan to ever participate again in a Southern Ocean

7  whale-protection campaign (regardless of whether or not they are enjoined)." Dkt. 235, ¶ 5,

8  at 17:16-17.  Taking them at their word—this allegation means that Defendants are not entitled

9  to any declaratory or injunctive relief against Plaintiffs' future Southern Ocean operations.

10              **III. LEGAL AUTHORITY AND ARGUMENT**

11  **A.    The two counterclaims for damages should be dismissed.**

12      1.    **The Fifth counterclaim, asserting damages arising from the ADY GIL collision, should be dismissed on statute of limitations grounds.**

13

14      SSCS alleges a claim for damages arising from the January 6, 2010 collision

15  between the ADY GIL and SHONAN MARU NO. 2.  Dkt. 235, ¶¶ 37-38, at 26, and ¶¶ 85-91,

16  at 37-38.  This is the same claim (asserted in Defendants' initial Answer and Counterclaim

17  (Dkt. 94)) on which ICR and Kyodo Senpaku have moved for partial summary judgment based

18  on statute of limitations grounds.  *See* Dkt. 228, 229, 232, and 233.  Those same arguments are

19  incorporated herein by reference.  Because the allegations of the Fifth counterclaim show

20  affirmatively that the claim is time-barred, the counterclaim should be dismissed.  *Jablon v.*

21  *Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) ("If the running of the statute is apparent

22  on the face of the complaint, the defense may be raised by a motion to dismiss.").[1]

23

24  ───────────────

25  [1] While SSCS alleges the Fifth counterclaim against the then master of SHONAN MARU NO. 2, Hiroyuki Komura, he has never been served, even though the summons issued over three years ago.  Dkt. 99.  He should be dismissed as the deadline for adding parties (May 15, 2015) has

26  expired.  Dkt. 225 and 227.

PLAINTIFFS' MOTION TO DISMISS DEFENDANTS'
FIRST AMENDED COUNTERCLAIMS - 3
(C11-2043JLR)

70027333.7

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1          **2.      The Sixth counterclaim, asserting a claim for damages to "Sea Shepherd"**
           **ships, fails to state a claim in favor of Defendants.**

2

3               Defendants allege that Plaintiffs "intentionally and/or negligently inflicted

4    damage on the BOB BARKER, STEVE IRWIN, and SAM SIMON, and also on RIBs deployed

5    from these vessels." Dkt. 235, ¶ 93, at 38.  They assert that "[m]uch, but not all, of the damage

6    . . . was incurred during Operation Zero Tolerance and Operation Relentless . . . ." Dkt. 235,

7    ¶ 98, at 39.  Yet Defendants further allege that they had no "ownership interest in" any of these

8    vessels at the time the damage allegedly occurred.  Dkt. 235, ¶¶ 44-49, at 27-29 (alleging

9    damage to "Sea Shepherd" ships); ¶ 98, at 39 ("By this point, SSCS no longer had any ownership

10   interest in, or control over," the ships.).  Defendants attempt to structure their claim to recover

11   damages for ships they did not own by contending that if Plaintiffs are successful in obtaining

12   coercive sanctions against Defendants, then Defendants should be able to recover damages to

13   those ships caused during Operation Zero Tolerance and Operation Relentless.  Id.

14              There are two problems with Defendants' "contingent" counterclaim.  First, it

15   misconstrues Plaintiffs' claim for coercive sanctions.  That claim is not dependent on proving

16   that Defendants owned or controlled the ships during the two Operations at issue.  Rather, the

17   claim seeks to require Defendants to *now* exercise their rights of control over the ships in order

18   to make sure the ships cannot be used to commit future attacks against Plaintiffs.  See Dkt. 234,

19   ¶ 59.2, at 29.  By making their counterclaim contingent on something that Plaintiffs do not have

20   to prove, Defendants have not stated a claim.

21              The second problem is Defendants may not plead the claim as they have.  While

22   inconsistent allegations may be made in separate claims or defenses under Fed. R. Civ. P. 8(d),

23   Defendants cannot assert inconsistent allegations in the *same* cause of action.  See, e.g., *Qwest*

24   *Commc'ns Corp. v. Herakles, LLC*, No. 2:07-cv-00393-MCE-KJM, 2008 WL 783347, at *12

25   (E.D. Cal. Mar. 20, 2008) (citing *Steiner v. Twentieth Century-Fox Film Corp.*, 140 F. Supp.

26   906, 908 (S.D. Cal. 1953)); *see also Maloney v. Scottsdale Ins. Co.*, 256 F. App'x 29, 31-32

PLAINTIFFS' MOTION TO DISMISS DEFENDANTS'
FIRST AMENDED COUNTERCLAIMS - 4
(C11-2043JLR)

70027333.7

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1   (9th Cir. 2007) (Fed. R. Civ. P. 8 permits inconsistent factual allegations *in the alternative*; it

2   does not permit a plaintiff to incorporate inconsistent allegations into a single cause of action).

3         Because Defendants fail to allege they had an interest in any of the ships at the

4   time they were allegedly damaged (a prerequisite to asserting a claim for damages),[2] and in fact

5   *disclaim* any interest in the allegedly damaged vessels at the relevant time, the Sixth

6   counterclaim for damages should be dismissed.

7   **B.**    **The First, Second, Third, Fourth, and Seventh counterclaims, seeking forward-looking declaratory or injunctive relief, should be dismissed either for lack of subject-matter jurisdiction or for failure to state a claim.**

8

9         **1.**    **Defendants lack standing to seek declaratory or injunctive relief.**

10         Defendants have failed to plead a "case or controversy" within the meaning of

11   Article III of the Constitution, which is necessary to establish standing.  *Lujan v. Defenders of*

12   *Wildlife*, 504 U.S. 555, 561-62, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (party asserting claims

13   has burden of establishing standing).  Defendants have not alleged:  (1) an injury-in-fact;

14   (2) a causal connection between the alleged injury and the alleged conduct; and (3) a likelihood

15   that the injury will be redressed by a favorable decision.  504 U.S. at 560-61.

16         **a.**    <u>Defendants have failed to allege an injury-in-fact.</u>

17         To establish an injury-in-fact, Defendants must show a threatened injury to a

18   legally protected interest.  *Lujan*, 504 U.S. at 560.  The threatened injury must be actual or

19   imminent and not conjectural or hypothetical—i.e., the injury must be "certainly impending,"

20   and it must directly affect Defendants.  *Lujan*, 504 U.S. at 563-64 & n.2 (internal quotation

21   marks, citation, and emphasis omitted).  In the context of seeking injunctive or declaratory relief,

---

[2] In order to sustain a cause of action for damage to a vessel, Defendants must have a proprietary interest in the vessel.  *Nautilus Marine, Inc. v. Niemela*, 170 F.3d 1195, 1196 (9th Cir. 1999) (noting the general rule in admiralty that a plaintiff cannot recover for "loss caused by a maritime tort to the person or property of another"); *see also Hyundai Merchant Marine Co., Ltd. v. Stockton Port Dist.*, No. 2:1-CV-01874-TLN-CKD, 2014 WL 2575488, at *7 (E.D. Cal. June 9, 2014) ("[R]ecovery for economic losses [for a maritime tort] cannot be obtained from a tortfeasor whose negligence damaged property unless the plaintiff had a proprietary interest in the property.").

PLAINTIFFS' MOTION TO DISMISS DEFENDANTS'
FIRST AMENDED COUNTERCLAIMS - 5
(C11-2043JLR)

70027333.7

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1    Defendants must show a "real and immediate threat of repeated injury." *Ervine v. Desert View*

2    *Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 867 (9th Cir. 2014) (internal quotation marks and

3    citation omitted); *Coral Const. Co. v. King Cnty.*, 941 F.2d 910, 929 (9th Cir. 1991) ("Where

4    only injunctive or declaratory relief is sought, a plaintiff must show a very significant possibility

5    of future harm in order to have standing to bring suit.") (internal quotation marks and citation

6    omitted).  Allegations of an injury at some indefinite future time or allegations of only past

7    injury are insufficient. *Lujan*, 504 U.S. at 563-64 & n.2; *Summers v. Earth Island Inst.*, 555 U.S.

8    488, 495-96, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009) (vague plan to visit unnamed National

9    Forests "some day" and alleged "past injury" are insufficient to create standing for injunctive

10   relief); *see also Ervine*, 753 F.3d at 868 (It is "not the presence . . . of a past injury that

11   determines Article III standing to seek injunctive relief; it is the imminent prospect of future

12   injury.") (internal quotation marks and citations omitted).

13            Every counterclaim seeking forward-looking injunctive or declaratory relief seeks

14   either to enjoin Plaintiffs' Southern Ocean activity or seeks a declaration as to that activity.  *See*

15   Dkt. 235, ¶ 66, at 33 (First counterclaim—declaration regarding Southern Ocean whaling and

16   enjoining it); ¶ 72, at 34 (Second counterclaim—enjoining piracy against Sea Shepherd ships in

17   the Southern Ocean); ¶ 79 at 36 (Third counterclaim—declaration regarding Southern Ocean

18   whaling as piracy and enjoining it); ¶ 84, at 36-37 (Fourth counterclaim—declaratory and

19   injunctive relief regarding safe navigation in the Southern Ocean); and ¶ 105, at 40-41 (Seventh

20   counterclaim—declaratory and injunctive relief against raising money for Southern Ocean

21   activities).  Yet, Defendants affirmatively allege that they "do not plan to ever participate again

22   in a Southern Ocean whale-protection campaign (regardless of whether or not they are

23   enjoined)."  Dkt. 235, ¶ 5, at 17.  This allegation establishes that Defendants will not suffer any

24   real or immediate threat of injury that would justify declaratory or injunctive relief.  *See*

25   *Summers v. Earth Island Inst.*, 555 U.S. at 495-96 ("vague desire to return" to forest affected by

26

PLAINTIFFS' MOTION TO DISMISS DEFENDANTS'
FIRST AMENDED COUNTERCLAIMS - 6
(C11-2043JLR)

70027333.7

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1    challenged regulation is "insufficient to satisfy the requirement of imminent injury" to support

2    standing).

3            Defendants' assertion in the First counterclaim that they "routinely traveled to the

4    Southern Ocean" *in the past* and were allegedly "injured by ICR's" conduct does not create a

5    *threatened* injury-in-fact sufficient to establish standing for forward-looking relief in their favor.

6    Dkt. 235, ¶ 61, at 31; *see, e.g.*, *Lujan*, 504 U.S. at 564 (holding that plaintiffs' allegation that

7    they "had visited" a place in the past was insufficient to show injury-in-fact because "[p]ast

8    exposure to illegal conduct does not in itself show a present case or controversy regarding

9    injunctive relief . . . if unaccompanied by any continuing, present adverse effects.") (internal

10   quotation marks and citations omitted).  The alleged "aesthetic interest in continuing to observe

11   and protect these [Southern Ocean] whales" in the First counterclaim is undercut by Defendants'

12   admission that they have no intention of ever venturing to the Southern Ocean again to do so.

13   Dkt. 235, ¶ 5, at 17, and ¶ 61, at 31.  Regardless, Defendants' vague claim that they will

14   "continu[e] to observe and protect" whales "without any description of concrete plans . . . do[es]

15   not support a finding of the actual or imminent injury." *Lujan*, 504 U.S. at 564 (internal

16   quotation marks and citation omitted).

17           In the Second, Fourth, and Seventh counterclaims, Defendants allege injuries to

18   alleged independent third parties—in this case "Sea Shepherd," which, as noted above,

19   Defendants allege is not SSCS.  Dkt. 235, ¶ 72, at 34 (Second counterclaim—enjoining

20   "violence against Sea Shepherd vessels"); ¶ 84, at 36-37 (Fourth counterclaim—"must not

21   engage in any conduct that is likely to endanger Sea Shepherd's vessels or crew"); ¶¶ 102-103,

22   at 40 (Seventh counterclaim—Plaintiffs are "likely to continue to [raise money]" to "perform

23   acts of violence against persons aboard Sea Shepherd vessels").  Alleging injury to third parties

24   does not confer standing on Defendants.  *See Lujan*, 504 U.S. at 562-63 (party asserting claims

25   must be "himself among the injured" and "directly affected" by the alleged conduct) (internal

26   quotation marks and citations omitted).

PLAINTIFFS' MOTION TO DISMISS DEFENDANTS'
FIRST AMENDED COUNTERCLAIMS - 7
(C11-2043JLR)

70027333.7

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1    As to the Third counterclaim, Defendants fail to allege *any* injury.  Rather,

2    Defendants allege that Plaintiffs commit "robbery at sea" by "pillaging and poaching valuable

3    natural property . . . to which they enjoy no legal right of ownership." <u>Dkt. 235, ¶¶ 75, 77,</u>

4    <u>at 34-35</u>.  Defendants claim no interest, right, or property injured by the alleged conduct.

5    Without a real or immediate threat of injury, Defendants have no standing.[3]

6    Finally, Defendants assert[4] that they have "an aesthetic interest in seeing the

7    whales living happily," "have suffered severe emotional distress" in seeing whales killed, and

8    "have emotional attachments to the whales." <u>Dkt. 235, ¶ 61, at 31</u>.  Aside from the insufficient

9    allegation of past injury to create standing, the allegation of a generalized aesthetic interest in the

10   lives of whales does not create injury-in-fact.  *Lujan*, 504 U.S. at 567 n.3 (rejecting "genuine"

11   interest in animals approach to standing); *Humane Soc'y of U.S. v. Babbitt*, 46 F.3d 93, 98

12   (D.C. Cir. 1995) ("But general emotional 'harm,' no matter how deeply felt [regarding Asian

13   elephants], cannot suffice for injury-in-fact for standing purposes.").

14       b.   <u>Because Defendants have failed to show an injury-in-fact, there is no</u>
         <u>causation</u>.
15

16   Defendants must show that any alleged injury is "fairly . . . traceable to the

17   challenged action."  *Lujan*, 504 U.S. at 560 (internal quotation marks, brackets, and citation

18   omitted).  As discussed above, Defendants have failed to allege an injury-in-fact sufficient to

19   establish standing.  Therefore, there is no "injury" to be traced to Plaintiffs' conduct.  *See, e.g.*,

20   *Lujan*, 504 U.S. at 567-68 (the Court did not address the causation element of standing where

21   plaintiffs failed to establish injury-in-fact).

22   _____

     [3] *See also infra* Part III.B.5 (Defendants erroneously extend piracy to include whales, when in
23   fact it is limited to other ships, or property or persons on such ships).

     [4] In addition, SSCS, as an organization, does not suffer emotional distress.  *See, e.g.*, *Irish*
24   *Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 650 (2d Cir. 1998) ("[A]n association . . .
     cannot suffer humiliation or other emotional distress."); *Mason v. Wolf*, 356 F. Supp. 2d 1147,
25   1164 (D. Colo. 2005) (same); *Oti Kaga, Inc. v. South Dakota Hous. Dev. Auth.*, 188 F. Supp. 2d
     1148, 1160-61 (D.S.D. 2002) ("It defies all common sense that a corporation could even claim to
26   have hurt feelings, to suffer from nervous tension or to feel embarrassed.").

PLAINTIFFS' MOTION TO DISMISS DEFENDANTS'
FIRST AMENDED COUNTERCLAIMS - 8
(C11-2043JLR)

70027333.7

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1       c.      Defendants' requested relief will not prevent or redress an injury because
                there is no injury-in-fact.

2

3              Defendants must also show that "a favorable judicial decision will prevent or

4    redress the [alleged] injury." *Summers*, 555 U.S. at 493.  Defendants have failed to sufficiently

5    allege an injury for the court to redress.  Defendants assert that they have no "plan to ever

6    participate again in a Southern Ocean whale-protection campaign" and otherwise allege only

7    *past* injuries and injuries to third parties.  Dkt. 235, ¶ 5, at 17.  Defendants have failed to show

8    that injunctive or declaratory relief will redress their past injuries or prevent any future injuries to

9    them.

10          **2.     Defendants cannot predicate standing as "next friend on behalf of the
                    whales."**

11

12             In their First counterclaim, Defendants seek relief as a "next friend on behalf of

13   the whales."  Dkt. 235, ¶ 62, at 31.[5]  Defendants' attempt to proceed on behalf of whales fails for

14   two reasons.

15             First, under Fed. R. Civ. P. 17, a plaintiff pursing a claim in a representative

16   capacity must do so on behalf of the "real party in interest."  Fed. R. Civ. P. 17(a).  A "real party

17   in interest" is the party "to whom the relevant substantive law grants a cause of action."

18   *Safouane v. Fleck*, 226 F. App'x 753, 757 (9th Cir. 2007) (quoting *U-Haul Int'l, Inc. v. Jartran,*

19   *Inc.*, 793 F.2d 1034, 1038 (9th Cir. 1986)); *see also* Black's Law Dictionary 1298 (10th ed.

20   2014) (defining "real party in interest" as the "person entitled under the substantive law to

21   enforce the right sued on . . . .").  As discussed below, there is no established international norm

22   against the lethal taking of whales.  *See infra* Part III.B.3.  Therefore, the whales have no legally

23

24   _____
     [5] It is unclear whether the Third counterclaim, alleging the taking of whales to be piracy, is also
     brought by Defendants as "next friend" on behalf of whales.  If asserted as "next friend," the
25   Third counterclaim is precluded for the same reasons.  The taking of whales is not piracy (*see
     infra* Part III.B.5), and there is therefore no entitlement under the substantive law.  Whales are
26   not within the scope of Rule 17 because they are not "persons."

PLAINTIFFS' MOTION TO DISMISS DEFENDANTS'
FIRST AMENDED COUNTERCLAIMS - 9
(C11-2043JLR)

70027333.7

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1    protected interest against a lethal taking to "sue[] upon."  *Tilikum ex rel. People for the Ethical*

2    *Treatment of Animals, Inc. v. Sea World Parks & Entm't, Inc.*, 842 F. Supp. 2d 1259, 1262 n.2

3    (S.D. Cal. 2012) (Denying "next friend" status for orcas being held by Sea World because orcas,

4    as nonhumans, are not protected by the Thirteenth Amendment to the Constitution.  Under

5    Rule 17, whether a plaintiff can bring an action as a next friend turns on whether it is "entitled

6    under the substantive law to enforce the right sued upon"—i.e., does the substantive law afford

7    the plaintiff any relief.) (internal quotation marks and citation omitted).  Consequently, whether

8    phrased as lack of standing or lack of capacity, Defendants cannot assert a counterclaim on the

9    whales' behalf that the whales have no right to bring.

10           Second, whales are not included within the scope of Fed. R. Civ. P. 17, which

11   permits "next friend" actions on behalf of *persons*.  Fed. R. Civ. P. 17(c)(1) (permitting certain

12   representatives to "sue or defend on behalf of a minor or an incompetent *person*") (emphasis

13   added).  "[A]n animal cannot function as a plaintiff in the same manner as a juridically

14   competent human being," and there is no basis for expanding the scope of Rule 17 to include

15   whales.  *See Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1176 (9th Cir. 2004) (declining to extend

16   the term "person" to whales for claims brought under various environmental statutes).

17           **3.     There is no established international norm against lethal taking of whales, so
             the First counterclaim should be dismissed.**

18

19           Aside from Defendants' lacking standing to bring the First counterclaim, the

20   claim should be dismissed because there is no established international norm against the lethal

21   taking of whales.

22           Indeed, quite the opposite is true.  Article VIII of the International Convention for

23   the Regulation of Whaling[6] ("Convention") specifically authorizes Japan to issue special permits

24

25   _____
     [6] *Signed at Washington* Dec. 2, 1946, 62 Stat. 1716, 161 U.N.T.S. 74, 4 Bevans 248 (1968)
     (ratified by United States on July 18, 1947, and entered into force Nov. 10, 1948).  A copy of the
26   Convention is attached as Exhibit B to the Declaration of Charles Moure, <u>Dkt. 186</u>.

PLAINTIFFS' MOTION TO DISMISS DEFENDANTS'
FIRST AMENDED COUNTERCLAIMS - 10
(C11-2043JLR)

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

70027333.7

1    to ICR to engage in the conduct of which Defendants complain.  This was underscored by the

2    Ninth Circuit in its reversal of the denial of a preliminary injunction.  *Inst. of Cetacean Research*

3    *v. Sea Shepherd Conservation Soc'y*, 725 F.3d 940, 943, 946 (9th Cir. 2013) (Convention

4    "authorizes whale hunting when conducted in compliance with a research permit issued by a

5    signatory.  Cetacean has such a permit from Japan.").[7]  And it was further acknowledged by this

6    Court in its Order denying Defendants' motion to dismiss.  Dkt. 201, at 2 (discussing Convention

7    and special permits).  Finally, the International Court of Justice ("ICJ") ruled that Japan may

8    issue special permits that allow lethal take of whales in the Southern Ocean.  ICJ Judgment,

9    Dkt. 175, ¶ 135, Ex. A at 46 ("the Court finds no basis to conclude that the use of lethal methods

10   is per se unreasonable . . . .").  This, too, was acknowledged by this Court.  Dkt. 201, at 12-15

11   (noting that ICJ Judgment recognizes the right of lethal take of whales).[8]  And, the ICJ itself

12   recognized it is hardly a settled norm of international law as to whether lethal take of whales

13   should be prohibited:  "The Court is aware that members of the international community hold

14   divergent views about the appropriate policy towards whales and whaling, but it is not for the

15   Court to settle these differences."  ICJ Judgment, Dkt. 175, ¶ 69, Ex. A at 32.

16            None of the other alleged sources of law establish a specific, universal, or

17   obligatory norm of international law that makes the taking of whales in the Southern Ocean

18   under a special permit from Japan illegal.  Defendants cite UNCLOS[9] and its Articles 65,[10]

19   _____

20   [7] In rejecting an argument that a preliminary injunction was contrary to the public interest, the
     Ninth Circuit also stated, "Our laws defining the public interest in regards to whaling are the
21   Whaling Convention Act and the Marine Mammal Protection Act, both of which permit whaling
     pursuant to scientific permits issued under the Whaling Convention."  *Inst. of Cetacean Research*
     *v. Sea Shepherd*, 725 F.3d at 946.

22   [8] The sovereign act of issuance of such a permit in Japan is deemed valid.  *W.S. Kirkpatrick &*
23   *Co., Inc. v. Envtl. Tectonics Corp., Int'l*, 493 U.S. 400, 409, 110 S. Ct. 701, 107 L. Ed. 2d 816
     (1990).

24   [9] Convention on the Law of the Sea, *adopted by the Third United Nations Conference on the Law*
     *of the Sea and opened for signature at Montego Bay, Jamaica*, Dec. 10, 1982, 1833 U.N.T.S.
25   397 (entered into force Nov. 16, 1994) (hereinafter "UNCLOS").

26   [10] "Nothing in this Part restricts the right of a coastal State or the competence of an international
     organization, as appropriate, to prohibit, limit or regulate the exploitation of marine mammals

PLAINTIFFS' MOTION TO DISMISS DEFENDANTS'
FIRST AMENDED COUNTERCLAIMS - 11
(C11-2043JLR)

70027333.7

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1    117,[11] and 120.[12]  <u>Dkt. 235, ¶¶ 53-54, at 29-30</u>.  Each of the articles is addressed to state actors,

2    not to private actors, and, at most, they direct states to cooperate with one another in the

3    conservation of marine mammals.  Article 120, applicable to the portion of UNCLOS dealing

4    with the high seas, incorporates the provisions of Article 65 that deal with the exclusive

5    economic zones of states.[13]  Insofar as applicable here, Article 65 states only that "[s]tates shall

6    co-operate with a view to the conservation of marine mammals and in the case of cetaceans shall

7    in particular work through the appropriate international organizations for their conservation,

8    management and study."  This hardly establishes "a norm that is specific, universal, and

9    obligatory" as to private actors, which is what is required to make a violation of international law

10   actionable.  *In re Estate of Ferdinand Marcos, Human Rights Litig.*, 25 F.3d 1467, 1475 (9th Cir.

11   1994).  To the extent Article 65 provides any standard of conduct, that standard is being met by

12   the participation of the various states through the International Whaling Commission.

13            Nor is the Convention on International Trade in Endangered Species of Wild

14   Fauna and Flora ("CITES") a source of law that prohibits the taking of whales under special

15   permit from Japan.  "The aim of CITES is to regulate international trade in wildlife and plants

16   . . . ."  50 C.F.R. § 23.1(b).  *See also Man Hing Ivory and Imports, Inc. v. Deukmejian*, 702 F.2d

17   760, 762 (9th Cir. 1983) (purpose of convention "is to protect 'certain species of wild fauna and

18   _____

19   more strictly than provided for in this Part.  States shall co-operate with a view to the
     conservation of marine mammals and in the case of cetaceans shall in particular work through
20   the appropriate international organizations for their conservation, management and study."
     UNCLOS art. 65.

21   [11] "All States have the duty to take, or to co-operate with other States in taking, such measures
     for their respective nationals as may be necessary for the conservation of the living resources of
22   the high seas."  UNCLOS art. 117.

23   [12] "Article 65 also applies to the conservation and management of marine mammals in the high
     seas."  UNCLOS art. 120.

24   [13] Standing alone, Article 65 is irrelevant because it is applicable to exclusive economic zones.
     The Ninth Circuit has ruled that the Court is not to give any recognition to Australia's claim to
25   prohibit the taking of whales in the Australian Whale Sanctuary off Antarctica because the
     United States (Japan also) does not recognize the validity of that claim of sovereignty.  *Inst. of*
26   *Cetacean Research v. Sea Shepherd*, 725 F.3d at 947.

PLAINTIFFS' MOTION TO DISMISS DEFENDANTS'
FIRST AMENDED COUNTERCLAIMS - 12
(C11-2043JLR)

70027333.7

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1    flora against over-exploitation through international trade . . .' [citing convention preamble].").

2    As Defendants allege, "CITES regulates the import" of certain species.  Dkt. 235, ¶ 58, at 30.

3    Defendants do not allege that anything ICR and Kyodo Senpaku do violates CITES.  The fact

4    that whale meat resulting from lethal take by ICR and Kyodo Senpaku may be sold in Japan does

5    comply with the Convention (Article VIII, § 2)[14] and does not violate CITES.  ICJ Judgment,

6    Dkt. 175, ¶ 94, Ex. A at 37 ("the fact that a programme involves the sale of whale meat and the

7    use of proceeds to fund research is not sufficient, taken alone, to cause a special permit to fall

8    outside Article VIII.").

9            The last source of international law cited by Defendants is The World Charter for

10    Nature.  Dkt 235, ¶ 59, at 30-31.  It, too, does not establish "a norm that is specific, universal,

11    and obligatory," which is what is required to make a violation of international law actionable.

12    *In re Estate of Ferdinand Marcos, Human Rights Litig.*, *supra*.  As the court noted in *Flores v.*

13    *Southern Peru Copper Corp.*, 414 F.3d 233, 259 (2d Cir. 2003), the World Charter is not a

14    proper source for "customary international law because [it is] merely aspirational and [was]

15    never intended to be binding on member States of the United Nations."[15]

16    ─────────────────────

      [14] *See* Dkt. 186, Ex. B.  "Any whales taken under [special permit] shall so far as practicable be
17    processed and the proceeds shall be dealt with" as directed by Japan.

      [15] This is what Judge Jones said about the World Charter:  "The court rejects Sea Shepherd's
18    claim that the World Charter for Nature ('Nature Charter') authorizes its tactics in the Southern
      Ocean or provides any defense in this case.  Among other things, the Nature Charter declares that
19    nations, 'public authorities, international organizations, individuals, groups and corporations
      shall . . . [s]afeguard and conserve nature in areas beyond national jurisdiction.'  Nature Charter,
20    G.A. Res. 37/7, U.N. Doc. A/RES/37/7 ¶ 21 (Oct. 28, 1982).  Sea Shepherd claims that this
      provision authorizes it to act as a 'private coast guard' in the Southern Ocean.  Sea Shepherd is
21    mistaken.  To begin, the Nature Charter authorizes nothing.  It is not a treaty or a binding
      commitment by any nation, it is a resolution of the United Nations General Assembly.  General
22    Assembly resolutions can serve as evidence of customary international law, but they bind no one.
      *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 720 (9th Cir.1992); *see also Flores*,
23    414 F.3d at 259–60 (explaining that General Assembly resolutions 'do not have the power to
      bind member States').  Putting that aside, the claim that a generic authorization to safeguard
24    nature is an implicit authorization to use Sea Shepherd's approach finds no support in any source
      of law.  Whatever solace Sea Shepherd takes from it, the Nature Charter provides no legal
25    authorization for its Southern Ocean tactics and provides it no defense in this case."  *Inst. of
      Cetacean Research v. Sea Shepherd Conservation Soc'y*, 860 F. Supp. 2d 1216, 1235-36
26    (W.D. Wash. 2012), *rev'd*, 708 F.3d 1099, *amended by* 725 F.3d 940 (9th Cir. 2013).

PLAINTIFFS' MOTION TO DISMISS DEFENDANTS'
FIRST AMENDED COUNTERCLAIMS - 13
(C11-2043JLR)

70027333.7

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1    The First counterclaim should be dismissed for failure to state a claim.

2    **4.      The Second counterclaim, asserting that Plaintiffs engage in piracy, should
     be dismissed for failure to state a claim.**

3

4    If not dismissed for lack of standing, the Second counterclaim should be

5    dismissed because it does not state a claim for piracy.

6    Plaintiffs agree that the Ninth Circuit's decision established that piracy is defined

7    as "'illegal acts of violence or detention, or any act of depredation, committed for private ends,'"

8    quoting the UNCLOS definition.  *Inst. of Cetacean Research v. Sea Shepherd*, 725 F.3d at 943

9    (emphasis omitted).  And the Ninth Circuit noted that the term "private ends" extends further

10   than "financial enrichment" and encompassed ends "pursued on personal, moral or philosophical

11   grounds."  725 F.3d at 943-44.  Finally, the Ninth Circuit read the requirement of "violence" to

12   encompass "malicious acts" against inanimate objects—in this case, ships.  725 F.3d at 944.

13   Taking the position that "what is good for the goose is good for the gander,"

14   Defendants seek to cobble together a "piracy" claim against Plaintiffs.  But, as alleged by

15   Defendants, the "gander" is, in fact, materially different from the "goose."  Defendants

16   acknowledge that Plaintiffs' activities occur under a special permit from Japan that permits

17   research whaling.  Dkt. 235, ¶ 20, at 21 ("Japan has continued to issue research whaling permits

18   to ICR").  Defendants further admit that they engage in their acts of piracy to impede ICR's

19   killing of whales.  Dkt. 235, ¶ 31, at 24 ("Sea Shepherd vessels have used various tactics over the

20   years to impede ICR's illegal killing of whales . . . .").  Finally, Defendants allege that "[i]n

21   response to efforts by SSCS and other Sea Shepherd entities to expose and impede their illegal

22   whaling, ICR vessels and crew have repeatedly launched attacks upon, and endangered the safety

23   of, Sea Shepherd vessels and crew."  Dkt. 235, ¶ 33, at 25.

24   Thus, Defendants have alleged nothing more than Plaintiffs engage in research

25   whaling under special permit from Japan, Defendants attack Plaintiffs, and, "in response,"

26   Plaintiffs engage in acts of alleged violence (which Plaintiffs would state are necessary defense

PLAINTIFFS' MOTION TO DISMISS DEFENDANTS'
FIRST AMENDED COUNTERCLAIMS - 14
(C11-2043JLR)

70027333.7

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1    tactics).  There is no valid allegation of pursuit of "private ends."  The sovereign act of issuance

2    of such a permit in Japan is deemed valid.  *W.S. Kirkpatrick & Co.*, 493 U.S. at 409.  As the

3    Ninth Circuit noted in its discussion of "private ends," context is important, and, with respect to

4    "piracy," "private ends" connotes conduct not sanctioned by a state.  *Inst. of Cetacean Research*

5    *v. Sea Shepherd*, 725 F.3d at 944 ("'The law looks to [piracy] as an act of hostility . . . being

6    committed by a vessel not commissioned and engaged in lawful warfare.'").  Unlike

7    "Sea Shepherd" ships, ICR and Kyodo Senpaku's ships are "commissioned" in the sense that

8    Japan specifically authorizes the research whaling under international law.

9            Nor is there any allegation of "violence" in the sense discussed by the

10   Ninth Circuit— "malicious acts against inanimate objects."  "Sea Shepherd" ships that actively

11   seek to "impede" ICR and Kyodo Senpaku ships do so with malice.  In contrast, all that is

12   alleged as to Plaintiffs is that their acts are "in response," and thus defensive countermeasures.  It

13   would turn the concept of "piracy" on its head to say when the pirate ship attacks the fleet, the

14   fleet must not defend itself.

15       **5.    The Third counterclaim, asserting that Plaintiffs engage in piracy by taking**
            **whales, should be dismissed for failure to state a claim.**
16

17           Defendants' Third counterclaim to the effect that Plaintiffs engage in piracy by

18   taking whales is defective for at least two additional reasons other than Defendants' lack of

19   standing.

20           First, the definition of "piracy" that Defendants invoke is that of UNCLOS, which

21   is what the Ninth Circuit discussed in its opinion.  Dkt. 235, ¶ 78, at 35 (partially quoting the

22   definition).  The definition of "piracy" from UNCLOS is confined to prohibited acts "'directed

23   . . . on the high seas, against another ship . . . or against persons or property on board such ship.'

24   UNCLOS art. 101 . . .; *see also* Convention on the High Seas art. 15.'"  *Inst. of Cetacean*

25   *Research v. Sea Shepherd*, 725 F.3d at 943.  Nowhere do Defendants cite any provision of

26

PLAINTIFFS' MOTION TO DISMISS DEFENDANTS'
FIRST AMENDED COUNTERCLAIMS - 15
(C11-2043JLR)

70027333.7

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1    customary international law that defines "piracy" as the taking of whales on the high seas.  Since

2    "piracy" is limited to "ship on ship" conduct, it does not encompass the taking of whales.

3    　　　　　　　　The other reason Defendants' claim is defective is because it is predicated on an

4    incorrect premise:  "As a party to the IWC, Japan, and the entities that it licenses, have an

5    obligation to the other members of that treaty not to unilaterally misappropriate natural

6    resources, where the parties have agreed that the rules for any use of such resources shall be

7    determined under the terms of the treaty."  Dkt. 235, ¶ 77, at 35.  The "rules" specifically permit

8    Japan to issue a special permit to ICR.  Dkt. 201, at 12-15 (Court notes procedures for securing a

9    special permit, commenting that "because the Commission does not possess veto power over

10   signatories' issuance of scientific permits, it appears that whether Japan's new program passes

11   muster under the ICJ's standards could be established only by a second round of litigation."

12   Dkt. 201, at 15:4-6).  Thus, while Defendants dislike the fact that Japan may issue a special

13   permit, their policy disagreement with the terms of the Convention does not render the taking of

14   whales under a special permit "illegal" in any sense of the word.[16]

15   　　　　**6.**　　　　**The Seventh counterclaim, asserting that Plaintiffs violate the Financing**
     　　　　　　　　　　**Convention, should be dismissed for failure to state a claim.**
16

17   　　　　　　　　Defendants' claim that Kyodo Senpaku and ICR violate the Financing

18   Convention[17] misses the mark.

19   　　　　　　　　The Financing Convention provides that it is an offense if a person "by any

20   means, directly or indirectly, unlawfully and wilfully, provides or collects funds with the

21   intention that they should be used or in the knowledge that they are to be used, in full or in part,

22   _____

23   [16] Defendants also allege the taking of whales under special permit is a violation of the rulings of
     the Federal Court of Australia.  Dkt. 235, ¶ 77, at 35.  That is irrelevant for the reasons set forth

24   in footnote 13, *supra*.

     [17] The International Convention for the Suppression of the Financing of Terrorism, *done at*
25   *New York* Dec. 9, 1999, T.I.A.S. No. 13075, 2178 U.N.T.S. 229 (entered into force Apr. 10,
     2002; ratified by United States on Dec. 5, 2001, and entered into force by United States on

26   July 26, 2002).

PLAINTIFFS' MOTION TO DISMISS DEFENDANTS'
FIRST AMENDED COUNTERCLAIMS - 16
(C11-2043JLR)

70027333.7

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1    in order to carry out:  (a) [a]n act which constitutes an offence within the scope of" the

2    SUA Convention.[18]  Art. 2, § 1(a).  A person also commits an offense if that person

3    "[p]articipates as an accomplice" in an offense or "[o]rganizes or directs others to commit an

4    offence."  Art. 2, § 5(a)-(b).  "Funds" means "assets of every kind, whether tangible or

5    intangible, movable or immovable, . . . and legal documents or instruments in any form . . .

6    evidencing title to, or interest in, such assets . . . ."  Art. 1, § 1.

7            Defendants recite these elements in their paragraph 103, alleging in a conclusory

8    fashion that ICR and Kyodo Senpaku have provided or collected millions of dollars, intending

9    that they be used to carry out acts prohibited by the SUA Convention.  Dkt. 235, ¶ 103, at 40.

10   Yet the only fact allegation made by Defendants, as opposed to conclusions of law, is that Japan

11   has raised money.[19]  In paragraph 104, Defendants allege that "the Japanese government"

12   diverted tsunami relief funds to "provide extra 'security' for the ICR whaling fleet," and "[u]pon

13   information and belief, this 'security' funding was used to facilitate violations of the

14   SUA Convention by ICR and Kyodo Senpaku, which are financed by the Japanese government."

15   Dkt. 235, ¶ 104, at 40.  There is no factual allegation of any kind that a "person" in the form of

16   ICR or Kyodo Senpaku "provided or collected" any money used to violate the

17   SUA Convention.[20]

18   _____

19   [18] The Convention for the Suppression of Unlawful Acts Against the Safety of Maritime
     Navigation, *concluded at Rome* Mar. 10, 1988, S. Treaty Doc. No. 101-1, 1678 U.N.T.S. 222,
20   27 I.L.M. 668 (1988) (entered into force Mar. 1, 1992; ratified by the United States on Dec. 6,
     1994, and entered into force by United States on Mar. 6, 1995).

21   [19] "In ruling on a motion to dismiss, we have instructed, courts 'must take all of the factual
     allegations in the complaint as true,' but 'are not bound to accept as true a legal conclusion
22   couched as a factual allegation.'"  *Wood v. Moss*, __ U.S.__, 134 S. Ct. 2056, 2065 n.5,
     188 L. Ed. 2d 1039, 1049 n.5 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
23   (internal quotation marks omitted)); *see also Holy Ghost Revival Ministries v. City of Marysville*,
     No. C14-1154JLR, 2015 WL 1538458, at *4 (W.D. Wash. Apr. 7, 2015) ("The court, however,
24   is not bound to accept as true labels, conclusions, formulaic recitations of the elements, or legal
     conclusions couched as factual allegations.").

25   [20] The Financing Convention makes it unlawful for a "person" to engage in the prohibited
     conduct.  Financing Convention art. 2, § 1(a).  The Financing Convention distinguishes between
26   "persons" and "State Parties."  *Compare* Art. 2 *and* Art. 4.  Japan is a "State Party."

PLAINTIFFS' MOTION TO DISMISS DEFENDANTS'
FIRST AMENDED COUNTERCLAIMS - 17
(C11-2043JLR)

70027333.7

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1          The Seventh counterclaim fails to state a claim against ICR or Kyodo Senpaku for

2  a violation of the Financing Convention.

3  **IV. <u>CONCLUSION</u>**

4          For the reasons set forth above, Plaintiffs request entry of an order dismissing

5  Defendants' first amended counterclaims.

6  DATED:   May 28, 2015

7                      By:        s/ John F. Neupert
                    John F. Neupert, P.C. #39883

8                      M. Christie Helmer #41171 (*admitted pro hac vice*)
                    MILLER NASH GRAHAM & DUNN LLP

9                      111 S.W. Fifth Avenue, Suite 3400
                    Portland, Oregon  97204

10                      Telephone:  (503) 224-5858 or (206) 624-8300
                    Fax:  (503) 224-0155 or (206) 340-9599

11                      E-mail:   john.neupert@millernash.com
                              chris.helmer@millernash.com

12                      *Attorneys for Plaintiffs and for Counterclaim*
                    *Defendants The Institute of Cetacean Research,*

13                      *Kyodo Senpaku Kaisha, Ltd., and Tomoyuki Ogawa*

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' MOTION TO DISMISS DEFENDANTS'
FIRST AMENDED COUNTERCLAIMS - 18
(C11-2043JLR)

70027333.7

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1                         **CERTIFICATE OF SERVICE**

2                 I hereby certify that on May 28, 2015, I electronically filed the foregoing

3   PLAINTIFFS' MOTION TO DISMISS DEFENDANTS' FIRST AMENDED

4   COUNTERCLAIMS with the Clerk of the Court using the CM/ECF system, which will send

5   notification of such filing to the following:

6            Claire Loebs Davis
            davisc@lanepowell.com
7            Kristin Beneski
            beneskik@lanepowell.com
8            Douglas W. Greene
            greened@lanepowell.com
9            LANE POWELL PC
            1420 Fifth Avenue, Suite 4200
10          Post Office Box 91302
            Seattle, Washington  98111-9402
11          *Attorneys for Defendants/Counterclaim Plaintiffs*
            *Sea Shepherd Conservation Society and Paul Watson*

12

13                DATED this 28th day of May, 2015.

14

15                          By:        s/ John F. Neupert
                         John F. Neupert, P.C. #39883
16                          *Of Attorneys for Plaintiffs and for Counterclaim*
                         *Defendants The Institute of Cetacean Research,*
17                          *Kyodo Senpaku Kaisha, Ltd., and Tomoyuki Ogawa*

18

19

20

21

22

23

24

25

26

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
T: (503) 224-5858 | F: (503) 224-0155
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204