1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   THE INSTITUTE OF CETACEAN              CASE NO. C11-2043JLR
     RESEARCH, et al.,

11                                          ORDER ON MOTION FOR
                    Plaintiffs,            SANCTIONS

12

13          v.

14   SEA SHEPHERD CONSERVATION
     SOCIETY, et al.,

15                  Defendants.

16   SEA SHEPHERD CONSERVATION
     SOCIETY,

17
                    Counterplaintiff,

18

19          v.

20   THE INSTITUTE OF CETACEAN
     RESEARCH, et al.,

21                  Counterdefendants.

22

ORDER- 1

# I.   INTRODUCTION

This matter comes before the court on Plaintiffs The Institute of Cetacean Research and Kyodo Senpaku Kaisha, Ltd.'s (collectively, "the Institute") motion for remedial sanctions.  (Mot. (Dkt. # 214).)  The Institute brings this motion against Defendants Sea Shepherd Conservation Society ("Sea Shepherd US") and Paul Watson, as well as against non-parties Lani Blazier, Marnie Gaede, Bob Talbot, Robert Winter, Ben Zuckerman, and Peter Reiman ("the Former Directors").  Having considered the submissions of the parties, the balance of the record, and the relevant law, and deeming oral argument unnecessary, the court GRANTS in part and DENIES in part the motion.

# II.   BACKGROUND

The underlying facts are set forth in detail in this court's and the Ninth Circuit's prior orders.  *See Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y (Cetacean I)*, 725 F.3d 940 (9th Cir. 2013) (preliminary injunction order); *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y (Cetacean II)*, 774 F.3d 935 (9th Cir. 2014) (contempt order); *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, No. 12-35266 (9th Cir.) Dkt. # 314 [hereinafter R&R].  Accordingly, the court summarizes them only briefly here.

The Institute comprises (1) a Japanese research foundation that receives permits from the Japanese government authorizing it to take whales for research purposes, and (2) the Japanese corporation that owns and crews the whaling ships utilized in the research endeavors.  (R&R at 4.)  Sea Shepherd US, a nonprofit organization based in the state of Washington, is part of a loosely organized conservation movement whose stated goal is

1  to "defend, conserve, and protect the world's marine wildlife species." (*Id.* at 3.)  This

2  movement includes entities, also bearing the "Sea Shepherd" name, organized and

3  governed under the laws of other jurisdictions, such as Australia, Belgium, and France.

4  (*Id.*)  Each of these entities has its own board of directors and separate bank accounts.

5  (*Id.* at 3-4.)  For years, the Sea Shepherd movement, led by Sea Shepherd US, has

6  mounted a yearly campaign seeking to prevent the Institute from killing whales in the

7  Southern Ocean.  (*Id.* at 4.)  During this campaign, vessels owned and crewed by the Sea

8  Shepherd movement have engaged in various forms of direct interference with the

9  Institute's ships.  (*Id.* at 5.)

10      Seeking to put an end to the interference, the Institute filed suit against Sea

11  Shepherd US and its founder and Executive Director, Paul Watson, in this district court in

12  late 2011.  (Compl. (Dkt. # 1).)  The Institute moved for a preliminary injunction, which

13  the district court denied.  *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc.*,

14  860 F. Supp. 2d 1216 (W.D. Wash. 2012).  Pending a ruling on appeal, the Ninth Circuit

15  issued the following preliminary injunction in December, 2012:

16      Defendants Sea Shepherd Conservation Society and Paul Watson, and any
       party acting in concert with them (collectively "defendants"), are enjoined
17      from physically attacking any vessel engaged by Plaintiffs the Institute of
       Cetacean Research, Kyodo Senpaku Kaisha, Ltd., Tomoyuki Ogawa or
18      Toshiyuki Miura in the Southern Ocean or any person on any such vessel
       (collectively "plaintiffs"), or from navigating in a manner that is likely to
19      endanger the safe navigation of any such vessel. In no event shall
       defendants approach plaintiffs any closer than 500 yards when defendants
20      are navigating on the open sea.

21  (Injunction (Dkt. # 118).)

22

1    When the Institute claimed that Sea Shepherd US, Mr. Watson, and Sea

2    Shepherd's then-board of volunteer directors (the Former Directors) were violating the

3    Ninth Circuit's preliminary injunction, the Ninth Circuit referred the resulting contempt

4    proceedings to the Appellate Commissioner ("Commissioner").  (Dkt. # 133.)  The Ninth

5    Circuit then reversed the district court's denial of a preliminary injunction and remanded

6    the case.  *Cetacean I*, 725 F.3d at 947; (Dkt. # 150 (mandate).)  In doing so, the Ninth

7    Circuit provided that its preliminary injunction would "remain in effect until further order

8    of [the Ninth Circuit]."  *Cetacean I*, 725 F.3d at 947.

9    After an eight-day trial on the Institute's motion for contempt, the Commissioner

10   issued a Report and Recommendation detailing the actions Sea Shepherd US, Mr.

11   Watson, and the Former Directors undertook during the 2012-13 whaling season after the

12   Ninth Circuit issued its injunction.  (*See* R&R.)  In short, Sea Shepherd US's board

13   enacted a "separation strategy."  (*See generally id.*)  Pursuant to this strategy, Sea

14   Shepherd US ceded control of the 2012-13 interference campaign, which it had

15   previously taken the lead logistical role in coordinating, to Sea Shepherd Australia

16   Limited ("Sea Shepherd Australia"), and otherwise severed ties to the campaign.  (*See*

17   *generally id.*)  In doing so, Sea Shepherd US granted its partial interest in one ship (the

18   *Bob Barker*) slated to be used in the 2012-13 campaign, as well as certain equipment on

19   other ships, to foreign Sea Shepherd entities.  (*See generally id.*)  Sea Shepherd Australia,

20   which viewed itself beyond the reach of the Ninth Circuit's injunction, conducted the

21   2012-13 campaign with little, if any, regard for the injunction.  (*See generally id.*)  As a

22

1  result, Sea Shepherd Australia's ships breached the 500-yard perimeter on multiple

2  occasions.  (*See generally id.*)

3      The Commissioner found that Sea Shepherd US and the Former Directors had not

4  violated the express terms of the Ninth Circuit's injunction:  they had not physically

5  attacked any whaling vessel, engaged in navigation that endangered the safety of a

6  whaling vessel, or approached within 500 yards of a whaling vessel on the open sea.  (*See*

7  *generally id.*; Injunction.)  The Commissioner further concluded that the "separation

8  strategy" was a good faith effort to comply with the Ninth Circuit's injunction, and that

9  Sea Shepherd US could not be held liable for Sea Shepherd Australia's actions on the

10  open sea during the campaign.  (*See generally* R&R.)  Accordingly, the Commissioner

11  recommended denying the Institute's motion for a finding of contempt.  (*See generally*

12  *id.*)

13      On review, the Ninth Circuit disagreed with the Commissioner's legal

14  conclusions.  *See Cetacean II*, 774 F.3d at 944 ("We need not resolve which standard of

15  review applies to the Commissioner's findings of fact because our decision rests on

16  grounds the Commissioner incorrectly rejected because of errors of law.").  The Ninth

17  Circuit did not disturb the Commissioner's finding that Sea Shepherd US and the Former

18  Directors had not violated the strict letter of the injunction.  *Id.* at 949.  Rather, the Ninth

19  Circuit found that Sea Shepherd US had "thwarted" the Ninth Circuit's "objective" in

20  issuing the injunction.  *Id.*  Specifically, the Ninth Circuit found that the separation

21  strategy "effectively nullified [the Ninth Circuit's] injunction" because Sea Shepherd US

22  allowed Sea Shepherd Australia to assume control of the 2012-13 campaign and

1   continued to provide "financial and other support for the campaign . . . by, among other

2   things, transferring for no consideration a vessel and equipment worth millions of

3   dollars." *Id.* at 945.

4           The Ninth Circuit ruled as a matter of law that "a party may be held in contempt

5   for giving a non-party the means to violate an injunction, if the party knows it is highly

6   likely the non-party will use those means to violate the injunction." *Id.* at 948.  Applying

7   that rule, the Ninth Circuit held Sea Shepherd US in contempt because "Sea Shepherd

8   US's separation strategy aided and abetted Sea Shepherd Australia and other Sea

9   Shepherd entities to perform acts that would have violated the injunction if done by

10  parties bound by it." *Id.* at 945.

11          The Ninth Circuit further held the Former Directors in contempt in their capacities

12  as Sea Shepherd US board members because they voted to ratify the "separation strategy"

13  and the grant of the *Bob Barker* and other equipment.  *Id.* at 955.  Finally, the Ninth

14  Circuit held Mr. Watson personally in contempt because he was present on one of the Sea

15  Shepherd Australia ships that came within the 500-yard perimeter of the Institute's

16  whaling vessels during the 2012-13 campaign.  *Id.* at 957-58.

17          The Ninth Circuit referred the Institute's request for compensatory damages and

18  attorneys' fees to the Commissioner.  *Id.* at 959.  The Ninth Circuit, however, directed the

19  Institute's request for coercive sanctions to the district court.  *Id.* ("While we retain

20  jurisdiction to order remedial relief for acts of contempt that took place prior to the

21  issuance of our mandate, because these coercive sanctions are forward-looking, we

22  believe that policing the Defendants' continuing compliance with the preliminary

1  injunction is better left to the district court.")  Consistent with that direction, the Institute

2  has moved for entry of coercive sanction against Defendants Sea Shepherd US and Mr.

3  Watson, as well as against the Former Directors.  (*See* Mot.)

4       Specifically, the Institute asks the court to impose on each Former Director a

5  suspended fine of $500,000.00, payable to the court immediately if the Former Director

6  violates the Ninth Circuit's injunction.  (Mot. at 3-4.)  The Institute also asks the court to

7  impose on each Sea Shepherd US and Mr. Watson a suspended fine of $2,000,000.00,

8  payable to the court immediately if the respective party (a) violates the Ninth Circuit's

9  injunction; (b) encourages, supports, induces, or incites others to violate the Ninth

10  Circuit's injunction; or (c) does not exercise good faith efforts (including initiating

11  litigation) to secure control and possession of the four ships (namely, the *Bob Barker*,

12  *Brigitte Bardot*, *Sam Simon*, and *Steve Irwin*) and respective ancillary equipment used by

13  Sea Shepherd Australia during the 2012-13 campaign.  The Institute's motion for

14  coercive sanctions is now before the court.

## III.   ANALYSIS

### A.   Legal Standard

17       Unlike punitive criminal sanctions, sanctions for civil contempt are purely

18  remedial.  *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 514 (9th Cir. 1992).

19  Therefore, civil sanctions may be imposed for only two purposes:  (1) to coerce

20  compliance with a court order, or (2) to compensate the party pursuing the contempt

21  action for injuries sustained due to the contempt.  *United States v. United Mine Workers*

22  *of Am.*, 330 U.S. 258, 303-04 (1947); *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376,

1  1380 (9th Cir. 1986); *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778

2  (9th Cir. 1983).  Because the Ninth Circuit has retained jurisdiction over questions of

3  compensatory relief, only coercive sanctions are at issue here.  *Cetacean II*, 774 F.3d at

4  959.

5        Coercive sanctions "are, by their very nature, conditional sanctions; they only

6  operate if and when the person found in contempt violates the order in the future."

7  *Whittaker Corp.*, 953 F.2d at 517.  Accordingly, "sanctions imposed in civil contempt

8  proceedings must always give to the alleged contemnor the opportunity to bring himself

9  into compliance, the sanction cannot be one that does not come to an end when he repents

10  his past conduct and purges himself."  *Id.* at 518; *see also Int'l Union, United Mine*

11  *Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994) ("Where a fine is not

12  compensatory, it is civil only if the contemnor is afforded an opportunity to purge.").

13  The Supreme Court has identified two acceptable types of fines for civil contempt:  (1)

14  per diem fines imposed each day a contemnor fails to comply with an affirmative court

15  order, and (2) fixed fines suspended pending future compliance with a court order.

16  *Bagwell*, 512 U.S. at 829-30 (citing *United Mine Workers of Am.*, 330 U.S. at 303-04 as

17  an example of a permissible civil suspended fine); *see United Mine Workers of Am.*, 330

18  U.S. at 303-04 (suspending a civil contempt fine for 30 days to provide the contemnor an

19  opportunity to fully comply with the temporary restraining order).

20        In determining whether to levy a coercive sanction, a court "should weigh all the

21  evidence properly before it determines whether or not there is actually a present ability to

22  obey and whether failure to do so constitutes deliberate defiance or willful disobedience

1    which a coercive sanction will break." *Falstaff Brewing*, 702 F.2d at 781.  The court

2    must "consider the character and magnitude of the harm threatened by continued

3    contumacy, and the probable effectiveness of any suggested sanction in bringing about

4    the result desired." *Gen. Signal Corp.*, 787 F.2d at 1380 (quoting *United Mine Workers*

5    *of Am.*, 330 U.S. at 303-04).  "Generally, the minimum sanction necessary to obtain

6    compliance is to be imposed." *Whittaker Corp.*, 953 F.2d at 514.

7    **B.    Non-parties**

8         The Institute's motion for coercive sanctions against the Former Directors is not

9    well taken.  First, the Former Directors are not parties to this suit.  (*See* Compl.; Am.

10   Compl. (Dkt. # 234).)  Second, the Former Directors are no longer in a position to direct

11   the activities of Sea Shepherd US.  The Ninth Circuit held the Former Directors in

12   contempt only for their role in managing Sea Shepherd US.  *Cetacean II*, 744 F.3d at

13   955-56.  As the Institute concedes, however, the Former Directors have all resigned from

14   their positions on the board of Sea Shepherd US.  (Mot. at 6.)  The Institute puts forth no

15   evidence showing that they have any current involvement with Sea Shepherd US

16   activities.  (*See* Mot.; Reply (Dkt. # 224).)  As such, the court does not find there is any

17   threat of "continued contumacy," *Gen. Signal Corp.*, 787 F.2d at 1380, or "deliberate

18   disobedience," *Falstaff Brewing*, 702 F.2d at 781, by the Former Directors.  Moreover, to

19   the extent there is such a threat by Sea Shepherd US, *see infra* Section III.C.4, the

20   probable effectiveness of a sanction against the Former Directors is minimal, as there is

21   no evidence or suggestion that the Former Directors currently have any influence on Sea

22   Shepherd US's activities.  *See Gen. Signal Corp.*, 787 F.2d at 1380.

1    The Institute's sole argument in support of its requested sanctions is that the

2    Former Directors are "physically capable" of complying with the Ninth Circuit's

3    injunction.  (Mot. at 6.)  "Physical capability" is not the standard for imposing coercive

4    sanctions.  *See, e.g.*, *Gen. Signal Corp.*, 787 F.2d at 1380; *Whittaker Corp.*, 953 F.2d at

5    517.  There is simply no indication that the Former Directors will not in fact comply with

6    the Ninth Circuit's injunction going forward.  Accordingly, the court declines to impose

7    coercive sanctions on the Former Directors.

8    **C.    Defendants**

9        With respect to Sea Shepherd US and Mr. Watson, the court finds that the

10   Institute's requested sanctions are inappropriate because they either (1) seek to coerce

11   behavior beyond the scope of the Ninth Circuit's injunction or (2) impose excessive fines.

12   As discussed below, however, court concludes that lesser sanctions are appropriate.

13       **1.    Encouragement**

14       The Institute requests suspended fines of $2 million to prevent Sea Shepherd US

15   and Mr. Watson from "encouraging, supporting, inducing, or inciting others to violate the

16   [i]njunction."  (Mot. at 3, 11.)  The Institute, however, fails to establish that the range of

17   actions encompassed by this condition violates the Ninth Circuit's injunction.  The Ninth

18   Circuit held Defendants in contempt for providing "material" support to the 2012-13

19   campaign.  *Cetacean II*, 774 F.3d at 947, 952, 955.  In so holding, the Ninth Circuit

20   emphasized that the material support from Sea Shepherd US both actually and

21   proximately caused acts by other Sea Shepherd entities that would have violated the

22   Ninth Circuit's injunction had those parties been so bound.  *Id.* at 26-33.  However, not

1    all acts of "encouragement" or "support" would meet that standard.  Moreover,

2    prohibiting any and all expressions of "encouragement" and "support" may implicate

3    First Amendment free speech issues.  *See Brandenburg v. Ohio,* 395 U.S. 444, 447

4    (1969); *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*,

5    290 F.3d 1058, 1062 (9th Cir. 2002), *as amended* (July 10, 2002).

6          Coercive sanctions "are, by their very nature, conditional sanctions; they only

7    operate if and when the person found in contempt violates the order in the future."

8    *Whittaker Corp.*, 953 F.2d at 517.  The court will not impose suspended sanctions that

9    can be triggered by actions that do not violate the Ninth Circuit's preliminary injunction.

10   Because the Institute's condition is overbroad, the court declines to impose suspended

11   fines prohibiting Defendants from "encouraging, supporting, inducing, or inciting others

12   to violate the [i]njunction."  (*See* Mot. at 3, 11.)

13          **2.  Previously granted ships**

14          For the same reason, the court declines to impose suspended fines requiring

15   Defendants to attempt to secure control and possession over the three ships that Sea

16   Shepherd US granted to foreign Sea Shepherd entities before the Ninth Circuit issued its

17   injunction.  (*See* Mot. at 3; Reply at 5.)  Sea Shepherd US granted the *Brigitte Bardot* to

18   Sea Shepherd Australia in December 2010, granted the *Sam Simon* to Sea Shepherd

19   Australia in October 2012, and executed a deed of transfer of the *Steve Irwin* to Sea

20   Shepherd Netherlands in March 2012.  (Neupert Decl. (Dkt. # 215) Exs. 4-6 (grant and

21   transfer agreements).)  It goes without saying that because these grants predate the Ninth

22

1  Circuit's December 2012 injunction, they cannot form the basis for a finding of

2  contempt.

3        Neither is it a basis for contempt that Sea Shepherd US has not tried to wrest

4  control and possession of those ships from their legal owners.  The Ninth Circuit

5  predicated its contempt finding on Sea Shepherd US's post-injunction grants of a vessel

6  interest and equipment.  *See Cetacean II*, 774 F.3d at 947 ("Our decision is primarily

7  compelled instead by the undisputed evidence . . .  that Sea Shepherd US continued to

8  provide material support . . . after the injunction issued . . . .").  The Ninth Circuit did not

9  suggest that Sea Shepherd was also required to affirmatively revoke or undo all of the

10  support it had furnished prior to the injunction.  *See generally id.*  In fact, the Ninth

11  Circuit made no mention of the grants of these vessels in its opinion.  *See generally id.*

12  The court is disinclined to impose sanctions for conduct that the Ninth Circuit, when

13  presented with the opportunity, did not identify as a violation of its own injunction.  *See*

14  *Whittaker Corp.*, 953 F.2d at 517.

15        The court also declines to issue its own finding that Sea Shepherd US's failure to

16  attempt to revoke previous grants constitutes contempt.  "Civil contempt . . . consists of a

17  party's disobedience to a specific and definite court order by failure to take all reasonable

18  steps within the party's power to comply." *Cetacean II*, 774 F.3d at 945 (quoting *In re*

19  *Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)).

20  As discussed below, there is no indication that Sea Shepherd has any legal basis to assert

21  control or possession over the three ships it previously granted to foreign entities.  *See*

22  *infra* Section III.C.3.  As such, any attempt to do so is not a "reasonable step" required by

ORDER- 12

the Ninth Circuit's injunction.  *See In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d at 695.

The Institute's reliance on *In re Transamerica Corporation* is misplaced.  (*See* Reply at 5 (citing 184 F.2d 319, 322 (9th Cir. 1950)).  In *Transamerica*, the Ninth Circuit held that its injunction required a corporation to countermand pre-injunction orders before its agents acted on them.  *See In re Transamerica Corp.*, 184 F.2d at 322.  In doing so, however, the Ninth Circuit explicitly distinguished that requirement from a requirement to take affirmative action to undo actions consummated prior to the injunction.  *See In re Transamerica Corp.*, 184 F.2d at 322 ("[O]bedience to such an injunction necessarily requires that the prior orders be countermanded—that the agents be instructed not to do that which they had previously been told to do.  Such a countermand, or reversal of instructions, is in no true sense the taking of affirmative action to undo action previously taken.  It is no more than an essential step in the process of obedience.").  As such, *Transamerica* does not support the Institute's attempt to require Sea Shepherd US to take affirmative action to undo actions previously taken.

Coercive sanctions, by their very nature, operate only if and when the person found in contempt violates the order in the future.  *Whittaker Corp.*, 953 F.2d at 517.  The Institute, however, seeks to predicate coercive sanctions on behavior that does not violate the Ninth Circuit's injunction.  Therefore, the court declines to impose suspended fines requiring Defendants to attempt to secure control and possession over the three ships that

//

1   Sea Shepherd US granted to foreign Sea Shepherd entities before the Ninth Circuit

2   issued its injunction.

3       **3.  Subsequently granted ship and equipment**

4       The Institute's request for suspended fines requiring Defendants to attempt to

5   secure control and possession over the vessel and equipment subject to Sea Shepherd

6   US's post-injunction grants presents a slightly different question.  (*See* Mot. at 3); *see*

7   *also In re Transamerica Corp*., 184 F.2d at 326 (requiring a contemnor to unwind post-

8   injunctions acquisitions).  Nonetheless, the court concludes that coercive sanctions are

9   inappropriate for the following reasons.

10      The grants vest legal ownership of the respective ships and equipment in foreign

11  Sea Shepherd entities.  (*See* Neupert Decl. Exs. 1-6 (grant agreements).)  As such, it is far

12  from clear that Sea Shepherd US has any legal basis for revoking the grants.  (*See* R&R

13  at 25-26, 51, 70-71, 78-79.)  The Institute makes much of the fact that five of the six

14  grants contain a "Return of Grant" provision.  (*See* Mot. at 7-8.)[1]  The Institute, however,

15  overlooks the fact that Sea Shepherd US's ability to invoke that provision is limited to

16  situations not present here.

17  _____

18      [1] This analysis is equally applicable to the the pre-injunction grants of the *Brigitte Bardot* and
    *Sam Simon*, which contain substantially similar revocation provisions.  "The 2012 grant agreement for the
19  *Steve Irwin* is materially different, as it implemented a three-way exchange by which legal ownership was
    transferred from Sea Shepherd United Kingdom to [Sea Shepherd Netherland] with [Sea Shepherd US]
20  retaining beneficial ownership for tax purposes. There is no revocation clause, and the agreement vested
    in [Sea Shepherd Netherland] a right of ownership that is 'unconditional.'"  R&R at 26 n.108; (*see also*
    Neupert Decl. Ex. 6.)  The Institute concedes it is "unable to identify" what Sea Shepherd US's residual
21  interest "means in this context" (Mot. at 10 n.5), and fails to otherwise put forth evidence showing that
    Sea Shepherd US or Mr. Watson currently retain any control over the vessel (*see generally id.*).
    Therefore, the court concludes that the legal basis for Sea Shepherd's revocation rights is just as tenuous
22  in the context of the *Steve Irwin* as it is in the context of the other vessels and equipment.

1    Specifically, the "Return of Grant" provisions state:  "If the Equipment . . . is used

2  or any other purposes than those outlines above, the Equipment must be promptly

3  returned to [Sea Shepherd US] and/or financial compensation equivalent to the value of

4  the Equipment . . . must be immediately paid . . . to [Sea Shepherd US]."  (Neupert Decl.

5  Ex. 1 at 2-3 (grant of equipment aboard the *Brigitte Bardot*), Ex. 2 at 2-3 (grant of

6  equipment aboard the *Steve Irwin*), Ex. 3 at 2-3 (grant of the *Bob Barker* interest), Ex. 4

7  ¶ C, Ex. A (grant of the *Sam Simon*), Ex. 5 at 2-4 (grant of the *Brigitte Bardot*).)  The

8  grants state their purposes as following:  "The purpose of this grant is to support [Sea

9  Shepherd US's] ongoing mission of global marine wildlife conservation.  More

10  specifically, the Equipment *must* be used by [Sea Shepherd Australia] to uphold [Sea

11  Shepherd US's] global mission to end the destruction of habitat and slaughter of wildlife

12  in the world's oceans in order to conserve and protect ecosystems and species."  (*Id.* Ex.

13  1 at 2-3, Ex. 2 at 2-3, Ex. 3 at 2-3, Ex. 4 ¶ C, Ex. A, Ex. 5 at 2-4.

14    There is, however, no indication that the vessels and equipment are not being used

15  by their respective owners "to support [an] ongoing mission of global marine wildlife

16  conservation."  (*See* R&R at 51.)  Similarly, there is no indication that the Ninth Circuit's

17  injunction—or conduct contravening it—can form the basis for a revocation action

18  against entities outside the jurisdiction of the injunction.  (*See id.*)  As such, it appears

19  that any revocation action attempted by Sea Shepherd US would be futile.

20    The Institute's arguments invoking United States tax law do not establish

21  otherwise.  (*See* Mot. at 8.)  Whether Sea Shepherd US's grants satisfy the tax

22  requirements applicable to 501(c)(3) charitable organizations is irrelevant to the question

ORDER- 15

of legal ownership and control currently before the court.  Moreover, the Institute fails to explain how the court could realistically monitor or enforce Sea Shepherd US's "good faith efforts" in any revocation litigation.

It is fundamental that a "court's power to impose coercive civil contempt depends upon the ability of the contemnor to comply with the court's coercive order." *Falstaff Brewing*, 702 F.2d at 778.  Accordingly, the court concludes that instituting legal or other proceedings to enforce the revocation rights in the post-injunction grants is not a "reasonable step" required by the Ninth Circuit's injunction.  *See In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d at 695.  Neither is it a practicable option for "purging" Sea Shepherd's past contempt.  *See Whittaker Corp.*, 953 F.2d at 517. Therefore, the court declines to impose sanctions predicated on good faith attempts to regain control or possession over the vessel and equipment transferred by post-injunction grants.

### 4.  Compliance in general

Finally, the court turns to the Institute's request for suspended fines of $2 million, payable to the court if Sea Shepherd US or Mr. Watson violates the stated terms of the Ninth Circuit's injunction.

### a.  Mr. Watson

The court agrees that the threat of continued contumacy by Mr. Watson merits coercive sanctions.  Mr. Watson's recalcitrance during the course of this litigation is well established:

1    Unlike the other individual respondents, Watson was present in the
2    Southern Ocean aboard the *Steve Irwin* during the entire [2012-13]
     campaign. Watson claimed to believe that he could stay on the *Steve Irwin,*
3    acting as an observer, and remain in compliance with the injunction.
     Chakravarty, the captain of the *Steve Irwin,* assured Watson that the ship
4    would not approach within 500 yards of the whaling vessels. . . . This plan
     proved unworkable in practice. Chakravarty abandoned the plan to transfer
5    Watson in mid-February when he and the other captains attempted a
     blockade to prevent one of the Plaintiffs' vessels from refueling. As a result,
6    Watson personally came within 500 yards of the Plaintiffs' whaling vessel
     while on board the *Steve Irwin.*

7    *See Cetacean II*, 774 F.3d at 957-58; *see also id.* at 941-43 ("There is evidence that

8    Watson was not a mere passive participant in [the 2012-13 campaign] after he resigned

9    his leadership positions. During the . . . campaign, Watson appeared by phone on a radio

10   show in March of 2013. His answers to questions posed during the show indicate that he

11   believed himself to be a participant in [the campaign], not just an observer. He said, for

12   instance, '*we're* chasing the Japanese factory ship *Nisshin Maru* and keeping it from

13   killing whales.' When asked about the atmosphere aboard the ship, Watson said, 'Oh,

14   everybody's very upbeat on our ship because *we've* managed to make sure they don't kill

15   many whales this year.'").  Mr. Watson personally and intentionally violated the Ninth

16   Circuit's injunction by breaching the 500-yard perimeter around the whaling ships.  *See*

17   *id.* at 958.  Mr. Watson has provided the court no assurances that he will cease such

18   "deliberate defiance" during the upcoming whaling season.  *See Falstaff Brewing*, 702

19   F.2d at 781.  Consequently, the court can only conclude that coercive sanctions are

20   necessary to ensure that Mr. Watson's commitment to the Sea Shepherd movement does

21   not trump his commitment to obeying the Ninth Circuit's injunction.

22

ORDER- 17

1    However, the Institute's requested fine of $2 million is excessive.  In fixing the

2    amount of a fine to be imposed as a means of securing future compliance, a court must

3    "consider the amount of defendant's financial resources and the consequent seriousness

4    of the burden to that particular defendant."  *United Mine Workers of Am.*, 330 U.S. at

5    304.  "Generally, the minimum sanction necessary to obtain compliance is to be

6    imposed."  *Whittaker Corp.*, 953 F.2d at 514.  The Institute makes no effort to show that

7    a sanction of $2 million dollars is proportional to Mr. Watson's net worth; a sanction of

8    such magnitude would be a drastic blow to the financial resources of the vast majority of

9    individuals.  Moreover, the court finds that such a sanction is not proportional to the

10   character and magnitude of the harm threatened by Mr. Watson's continued contumacy.

11   *See Gen. Signal Corp.*, 787 F.2d at 1380.  Although the Institute posits grave harm from

12   continued interference campaigns in general (*see generally* Reply), that harm would not

13   stem from Mr. Watson's personal participation:  after all, Sea Shepherd Australia's *Steve*

14   *Irwin* would have approached within 500 yard of the whaling vessel regardless of

15   whether Mr. Watson was on board.

16   In considering the amount of sanction to impose, the court is also mindful of the

17   Supreme Court's admonition that the fact that sanctions for future acts of contempt are

18   announced in advance is not necessarily enough to render the later imposition of such

19   sanctions coercive and civil.  *See Bagwell*, 512 U.S. at 836-37.  In *Bagwell*, the Supreme

20   Court held that court-imposed fines of $100,000.00 per future violation were not a civil

21   sanction because they were "more closely analogous to fixed, determinate, retrospective

22   criminal fines which petitioners had no opportunity to purge once imposed," they

ORDER- 18

1   implicated "widespread, ongoing, out-of-court violations of a complex injunction,

2   effectively policing the union's compliance with an entire code of conduct the court itself

3   imposed," and "the fines assessed were serious." *Id.* at 837. Consistent with that

4   opinion, courts have modified indefinite contempt sanctions to expire if the contemnor

5   repents its past conduct and commits to abiding by the injunction going forward. *See*

6   *Whittaker Corp.*, 953 F.2d at 518 (modifying a civil contempt sanction to state that it only

7   "remains in effect until [the contemnors] demonstrate to the satisfaction of the court that

8   they are able to and will comply with the provisions of the [court's prior order]"); *New*

9   *York State Nat'l Org. for Women v. Terry*, 159 F.3d 86, 94 (2d Cir. 1998) (upholding

10  civil contempt sanctions because they included "a purge provision that excuses

11  defendants from paying contempt fines if, within 60 days from the date of the court's

12  order, they file and publish an affirmation of their intent to abide by the Permanent

13  Injunction").

14          Accordingly, the court imposes against Mr. Watson a lesser fine of $5,000.00 for

15  each future act of contempt. The fine is payable to the court in the event Mr. Watson (1)

16  violates the express terms of the Ninth Circuit's injunction (*see* Injunction), or (2) aids

17  and abets any entity in violating the Ninth Circuit's injunction, *see Cetacean II*, 774 F.3d

18  at 952. Mr. Watson may purge himself of this suspended civil sanction by filing an

19  affidavit or declaration with the court within one month of the date of this order affirming

20  his intent to abide by the Ninth Circuit's injunction as interpreted by the Ninth Circuit in

21  *Cetacean II*, 774 F.3d 935. *See Bagwell*, 512 U.S. at 836-37; *Whittaker Corp.*, 953 F.2d

22  at 518; *New York State Nat'l Org. for Women*, 159 F.3d at 94.

1        **b.  Sea Shepherd US**

2        The court is less inclined to conclude that the threat of continued contumacy by

3   Sea Shepherd US merits coercive sanctions.  Sea Shepherd US correctly points out that

4   its last contemptuous acts occurred over two years ago.  (Resp. (Dkt. # 219) at 7.)  As the

5   Institute has conceded, Sea Shepherd US had no involvement in Sea Shepherd's

6   subsequent interference campaigns.  (R&R at 78.)  Moreover, the Commissioner found

7   that Sea Shepherd US made a good faith effort to comply with the Ninth Circuit's

8   injunction during the 2012-13 campaign.  (R&R at 55-62.)

9        The Ninth Circuit, however, called that finding into doubt:  "Under the

10  circumstances, it is simply not credible that the volunteer directors believed they were

11  complying with the injunction . . . ."  *Cetacean II*, 774 F.3d at 955.  Additionally, counsel

12  for Sea Shepherd US have indicated to this court their client's desire to return to

13  mounting interference campaigns in the Southern Ocean.  (*See* 4/16/14 Trans. (Dkt.

14  # 188-3) at 18:6-7, 25:19-25); *see also Cetacean II*, 744 F.3d at 949 (finding that Sea

15  Shepherd US facilitated donations for the 2012-13 campaign after the injunction issued).

16  Accordingly, the court concludes that coercive sanctions are necessary to ensure

17  compliance with the terms of the Ninth Circuit's injunction.

18       Once again, however, the Institute's requested amount of $2 million is excessive.

19  There is no evidence concerning Sea Shepherd US's financial resources before the court.

20  *See Whittaker Corp.*, 953 F.2d at 514.  Nonetheless, the court takes into account Sea

21  Shepherd's status as a non-profit, charitable organization.  (*See* Mot. at 8.)  The court also

22  concludes that, due to Sea Shepherd US's demonstrated commitment to avoiding

1    interacting with whaling vessels on the open sea, the character and magnitude of harm

2    posed by Sea Shepherd US's threatened contumacy is not substantial.  *See Gen. Signal*

3    *Corp.*, 787 F.2d at 1380; *Cetacean II*, 774 F.3d at 949 (noting that Sea Shepherd US did

4    not violate the express terms of the Ninth Circuit's injunction).

5         Weighing these factors, the court concludes that the minimum sanction necessary

6    to coerce compliance is a suspended fine of $10,000.00 per violation.  *See Whittaker*

7    *Corp.*, 953 F.2d at 514.  The fine is immediately payable to the court in the event Sea

8    Shepherd US (1) violates the express terms of the Ninth Circuit's injunction (*see*

9    Injunction), or (2) aids and abets any entity in violating the Ninth Circuit's injunction, *see*

10   *Cetacean II*, 774 F.3d at 952.  Mindful of the teachings of *Bagwell* and *Whittaker*, the

11   court provides that Sea Shepherd US may purge itself of this suspended civil sanction by

12   filing an affidavit or declaration with the court within one month of the date of this order

13   affirming its intent to abide by the Ninth Circuit's injunction as interpreted by the Ninth

14   Circuit in *Cetacean II*, 774 F.3d 935.  *See Bagwell*, 512 U.S. at 836-37; *Whittaker Corp.*,

15   953 F.2d at 518; *New York State Nat'l Org. for Women*, 159 F.3d at 94.

16   //

17   //

18   //

19   //

20   //

21   //

22   //

ORDER- 21

# IV.    CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part the Institute's motion for coercive sanctions (Dkt. # 214).  The court imposes suspended fines against Mr. Watson and Sea Shepherd US in the amounts and pursuant to the terms set forth above.

Dated this 4th day of June, 2015.


JAMES L. ROBART
United States District Judge

ORDER- 22