1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

15

16

17

18

19

20

21

22

| INSTITUTE OF CETACEAN RESEARCH, et al., | CASE NO. C11-2043JLR |
|---|---|
| Plaintiffs, | ORDER |
| v. | |
| SEA SHEPHERD CONSERVATION SOCIETY, et al., | |
| Defendants. | |

## I.    INTRODUCTION

This matter comes before the court on Plaintiffs The Institute of Cetacean

Research ("the Institute"), Kyodo Senpaku Kaisha, Ltd., and Tomoyuki Ogawa's

(collectively, "Plaintiffs") motion to dismiss with prejudice three of Defendants Sea

Shepherd Conservation Society ("SSCS") and Paul Watson's (collectively,

//

//

ORDER- 1

1  "Defendants") four counterclaims.[1]  (Mot. (Dkt. # 304); *see also* 3d Amended

2  Counter-Complaint ("3ACC") (Dkt. # 297).)  Defendants oppose that motion (Resp.

3  (Dkt. # 311)), and Plaintiffs have filed a reply memorandum (Reply (Dkt. # 312)).

4  Having considered the submissions of the parties, the appropriate portions of the record,

5  and the relevant law,[2] the court DENIES Plaintiffs' motion to dismiss and ORDERS

6  Defendants to show cause as discussed more fully herein.

7  ## II.    BACKGROUND

8      This is a case between Antarctic whalers and environmentalists who oppose

9  whaling.  The parties seek damages and injunctive relief related to past, present, and

10  future actions of allegedly perpetrating and funding piracy and unsafe navigation in the

11  Southern Ocean.

12  **A.    Procedural Posture**

13      In 2013, the Ninth Circuit granted Plaintiffs preliminary injunctive relief against

14  Defendants' acts of piracy and unsafe navigation.  *See Inst. of Cetacean Research v. Sea*

15  *Shepherd Conservation Soc'y*, 708 F.3d 1099, 1106 (9th Cir. 2013); *Inst. of Cetacean*

16  *Research v. Sea Shepherd Conservation Soc'y* (*Cetacean I*), 725 F.3d 940 (9th Cir. 2013)

17  (amending and superseding 708 F.3d 1099).  The preliminary injunction bars Defendants

18  from "physically attacking any vessel engaged by Plaintiffs . . . in the Southern Ocean . . .

19  ────────────────

20     [1] Plaintiffs are also counterclaim defendants and Defendants are also counterclaim
plaintiffs.  For simplicity, the court refers to the parties based on the initial claim filed.  (*See*
Compl. (Dkt. # 1)); *see also infra* § III.B.3. (explaining the status of Counterclaim Defendant

21  Hiroyuki Komura, who is neither a plaintiff in this action nor a movant to the instant motion).

22     [2] The court concludes oral argument is not necessary to rule on Plaintiffs' motion.  *See*
Local Rules W.D. Wash. LCR 7(b)(4).

1   or from navigating in a manner that is likely to endanger the safe operation of any such

2   vessel." *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y* (*Cetacean*

3   *Injunction*), 702 F.3d 573, 573 (9th Cir. 2012); *Cetacean I*, 725 F.3d at 947 (ordering that

4   the Ninth Circuit's injunction pending appeal in *Cetacean Injunction* "remain in effect

5   until further order of" the Ninth Circuit).  Furthermore, Defendants are "[i]n no event" to

6   "approach [P]laintiffs any closer than 500 yards when [D]efendants are navigating on the

7   open sea." *Id.*

8       On June 30, 2015, Defendants filed a second amended counter-complaint against

9   Plaintiffs and Hiroyuki Komura.  (*See* 2d Am. Counter-Complaint ("2ACC") (Dkt.

10  # 250).)[3]  Two of the six counterclaims alleged therein sought injunctive relief for

11  Plaintiffs' alleged whaling and three sought injunctive relief for Plaintiffs' alleged

12  perpetration and financing of piracy and unsafe navigation.  (*Id.*)  On December 21, 2015,

13  the court dismissed Defendants' whaling counterclaims for lack of subject matter

14  jurisdiction and failure to state a claim and dismissed Defendants' piracy and unsafe

15  navigation counterclaims for lack of standing.  (*See* 12/21/15 Order (Dkt. # 294) at

16  38-49.)  The court granted Defendants leave to file a third amended counter-complaint,

17  and Defendants timely did so on January 20, 2016.  (3ACC.)

18  //

19  //

20  _____

21      [3] Defendants' second amended answer and second amended counter-complaint were filed
    conjunctively and paragraph numeration restarts in the section stating counterclaims.
    Accordingly, the court refers to the second section of that filing as the second amended
22  counter-complaint and cites it accordingly.  (*See* 2ACC ¶¶ 1-100, at 16-45.)

**B.    Defendants' Factual Allegations**

Defendants omit their whaling counterclaims from their third amended counter-complaint.  (*See generally* 3ACC.)  However, Defendants contend they have remedied the pleading deficiencies in their piracy and unsafe navigation counterclaims.  (*See generally* Resp.)  Plaintiffs disagree and move to dismiss Defendants' injunctive counterclaims with prejudice.  (Mot. at 2, 11.)  The basic timeline of Defendants' allegations has not changed from those set forth in their second amended counter-complaint.[4]  (*Compare* 2ACC *with* 3ACC.)  However, Defendants have amended their counter-complaint to provide greater specificity as to the past and future actions taken by the parties—and several non-parties—in the Southern Ocean.

Defendants first clarify the difference between Sea Shepherd, "a loosely organized global conservation movement" consisting of "independent entities in other countries," and SSCS, "a non-profit organization" based in Oregon whose mission is "to end the destruction of habitat and slaughter of wildlife in the world's oceans."  (3ACC ¶¶ 3-4.)  Although SSCS inspired Sea Shepherd and is among Sea Shepherd's member entities, Sea Shepherd also includes foreign entities with "independent boards, officers, staff, and finances."[5]  (*Id.* ¶ 4.)  SSCS is the only Sea Shepherd entity that is a party to this suit.

---

[4] The court provided an extensive summary of those factual allegations and a procedural history of this case in its order dismissing Defendants' second amended counterclaims. (12/21/15 Order at 4-8.)

[5] The court adopts Defendants' delineation between SSCS and Sea Shepherd for purposes of this order.

ORDER- 4

Mr. Watson founded SSCS, previously served as its executive director, and is now a "strategic advisor to the SSCS board." (*Id.* ¶ 5.)

After the Ninth Circuit issued its preliminary injunction, "SSCS withdrew from participation in the Southern Ocean whale-protection campaigns, and has not participated in their planning, management, funding, or execution since its withdrawal." (*Id.* ¶ 50.) However, Defendants "plan to return to the Southern Ocean, beginning in the 2016-2017 season, to conduct campaigns to monitor, research, and protect the vital krill population, and to seek out, monitor, document, and expose poaching activities, including unlawful whaling by" Plaintiffs and Mr. Komura. (*Id.* ¶¶ 7, 52.) Defendants intend to do so while abiding by the injunction. (*Id.* ¶ 52.)

Defendants allege that the Institute has "repeatedly launched attacks upon . . . Sea Shepherd vessels and crew" and that at least some of these attacks have occurred "when the Sea Shepherd vessels have not been engaged in efforts to impede [the Institute]'s whaling or otherwise posed any threat to the whaling fleet." (*Id.* ¶ 53.) Defendants assert that the Institute's vessels have "tracked down and chased Sea Shepherd vessels across long distances" to launch these attacks. (*Id.*) Examples of the Institute's behavior, as proffered by Defendants, include: launching "unprovoked attacks against SSCS's helicopter," which has "never engaged in any act of aggression against any whaling vessel, participated in any operations that endangered [the Institute's fleet's] safe navigation or the safety of the crew, or made any direct attempt to impede their illegal whaling" (*id.* ¶ 58); "pursuing the STEVE IRWIN for approximately two weeks" and using long-range acoustic devices and dangerous navigation tactics to force the ship to

1  return to port (*id.* ¶ 61; *see also id.* ¶¶ 72 (alleging a similar event in 2012, several years

2  later), 82 (alleging a similar event in 2014); 86 (alleging a similar pursuit over the course

3  of six weeks in 2008)); deliberately ramming the ADY GIL (*id.* ¶ 62) and the BOB

4  BARKER (*id.* ¶ 65); "pursuing and approaching smaller Sea Shepherd vessels in an

5  aggressive manner" (*id.* ¶¶ 68, 71); and attempting to foul the rudders and propellers of

6  the BOB BARKER (*id.* ¶ 75).  Although SSCS ceased its direct involvement in the

7  Southern Ocean in 2012, Defendants allege that the events above took place as late as

8  2014 against foreign Sea Shepherd entities.  (*Id.* ¶ 82.)

9       Based on the Institute's history of indiscriminate aggression towards SSCS and

10  similar entities and Defendants' intention to continue to monitor krill and poaching in the

11  Southern Ocean, Defendants allege that similar violent encounters are likely to occur in

12  the future, notwithstanding SSCS's professed intention to abide by the injunction.  (*Id.*

13  ¶¶ 52, 84-88.)  Defendants therefore seek injunctive relief against Plaintiffs and Mr.

14  Komura for acts of piracy (*id.* at 89-96), acts of unsafe navigation on the high seas (*id.* at

15  97-100), and funding piracy and unsafe navigation (*id.* at 97-109).[6]  Plaintiffs' motion to

16  dismiss these three counterclaims is now before the court.  (*See generally* MTD.)

17  //

18  //

19  //

20  //

21  ───────────────

22     [6] Defendants also counterclaim for intentional and/or negligent destruction of property
(3ACC ¶¶ 110-16), which Plaintiffs have not moved to dismiss (*see* MTD at 2).

# III.   ANALYSIS

## A.   Legal Standards

### 1.   Under Rule 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction is either facial or factual.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Id.*  The court accepts the factual allegations in the complaint as true, and the nonmoving party is entitled to have those facts construed in the light most favorable to it.  *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996).  However, if the moving party "convert[s] the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (citing *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)).  In either instance, the party asserting its claims in federal court bears the burden of establishing subject matter jurisdiction.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

### 2.   Under Rule 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party.  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir.

2005).  The court must accept all well-pleaded allegations of material fact as true and draw all reasonable inferences in favor of the plaintiff.  *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 663.

The court, however, need not accept as true a legal conclusion presented as a factual allegation.  *Id.* at 678.  Although the pleading standard announced by Federal Rule of Civil Procedure 8 does not require "detailed factual allegations," it demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (citing *Twombly*, 550 U.S. at 555).  A pleading that offers only "labels and conclusions or a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Id.*

**B.   Plaintiffs' Motion to Dismiss**

Plaintiffs argue that Defendants' injunctive counterclaims are subject to dismissal on several bases.  First, Plaintiffs contend that Defendants' operative allegations fail to give rise to a plausible inference of "imminent injury" and that Defendants therefore lack standing.  (Mot. at 5-8.)  Second, Plaintiffs contend that Defendants fail to state claims for piracy, unsafe navigation, and financing piracy and unsafe navigation because

1    Defendants fail to allege that they have any ships.  (*Id.* at 8-9.)  Third, Plaintiffs contend

2    that the act of state doctrine precludes Defendants' piracy counterclaim.  (*Id.* at 9-11.)

3        1.  <u>Standing</u>

4        In its December 21, 2015, order, the court concluded that Defendants had

5    inadequately alleged standing.  (12/21/15 Order at 42-45.)  The court principally based

6    this determination on Defendants' characterizations of their nautical interactions with

7    Plaintiffs.  (*See id.*)  Even when construed in the light most favorable to Defendants, the

8    second amended counter-complaint allowed only for the inference that Defendants

9    initiated proximity with Plaintiffs and not vice-versa.  (*Id.*)  Proximity is a prerequisite to

10   the past injuries Defendants alleged and the future injuries Defendants sought to enjoin,

11   which included ramming, fouling rudders and propellers, and throwing projectiles.  (*See*

12   *id.* at 42-43.)  Accordingly, the court concluded that Defendants' allegations did not

13   support a plausible inference of imminent injury to Defendants and that Defendants

14   therefore lacked standing to seek injunctive relief.[7]  (*Id.* at 44-45.)

15       In granting leave to amend, the court cautioned Defendants that any amended

16   counterclaims "should be clear what past and future events involve SSCS entities as

17   opposed to Sea Shepherd entities, because Defendants have not demonstrated a basis for

18   standing as it relates to Sea Shepherd."  (12/21/15 Order at 51.)  Plaintiffs argue that

19   _____

20       [7] The court also noted that Defendants sought injunctive relief as to "Sea Shepherd
     vessels, and not SSCS vessels," but "provided no reason SSCS would have standing to sue for
21   actions taken against Sea Shepherd vessels."  (12/21/15 Order at 42 (citing 2ACC ¶¶ 74, 86).)
     Defendants addressed this deficiency by amending their counter-complaint to eliminate
     references to Sea Shepherd in their plea for relief.  (*Compare* 2ACC ¶¶ 74, 86 *with* 3ACC ¶¶ 96,
22   100.)

ORDER- 9

1    rather than heed the court's warning, Defendants' third amended counterclaims merely

2    convolute which Sea Shepherd entities—SSCS or one of Sea Shepherd's foreign

3    affiliates—were involved in past confrontations and will be involved in future campaigns.

4    (Mot. at 5-7.)  The court disagrees and concludes that Defendants' operative

5    counter-complaint adequately pleads standing.

6         As the parties invoking jurisdiction over their counterclaims, Defendants bear the

7    burden of establishing standing.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

8    However, at the motion to dismiss stage, "general factual allegations of injury resulting

9    from [Plaintiffs'] conduct" may suffice, *id.*, because the court "presumes that general

10   allegations embrace those specific facts that are necessary to support the claim," *Lujan v.*

11   *Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990); *see also Defs. of Wildlife*, 504 U.S. at

12   561 ("[E]ach element [of standing] must be supported in the same way as any other

13   matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree

14   of evidence required at the successive stages of the litigation."); *Lucas v. S.C. Coastal*

15   *Council*, 505 U.S. 1003, 1014 n.3 (1992) ("*Lujan*, since it involved the establishment of

16   injury in fact at the *summary judgment* stage, required specific facts to be adduced by

17   sworn testimony; had the same challenge to a generalized allegation of injury in fact been

18   made at the pleading stage, it would have been unsuccessful."); *Levine v. Vilsack*, 587

19   F.3d 986, 996-97 (9th Cir. 2009) ("[A] court's obligation to take a plaintiff at its word at

20   [the motion to dismiss] stage in connection with Article III standing issues is primarily

21   directed at the injury in fact and causation issues.").

22

1    Defendants allege plans to return to the Southern Ocean in the upcoming whaling

2    season and beyond.  (3ACC ¶¶ 7, 52.)  During those campaigns, Defendants will "seek

3    out, monitor, document, and expose" what Defendants view as poaching activities,

4    including the whaling performed by Plaintiffs.  (*Id.*)  Although Defendants pledge to

5    abide by the injunction (*id.* ¶ 52), their observational mission will no doubt lead them to

6    the edge of the injunctive barrier.  The operative allegations assert that the Institute has,

7    at times, sought out and pursued vessels operated by Sea Shepherd and other

8    environmentalist organizations.  (*Id.* ¶¶ 58, 61-62, 65, 68, 71-72, 82, 86; *cf.* 12/21/15

9    Order at 42 ("[T]he court cannot reasonably infer from Defendants' allegations that

10   Plaintiffs have ever sought out Defendants on the high seas to commit acts of piracy or

11   unsafe navigation.  Indeed, Defendants repeatedly make clear that Defendants initiated

12   proximity, not Plaintiffs.").)  These allegations support the conclusion that Defendants

13   face "imminent injury" at the hands of Plaintiffs.

14   Plaintiffs principally argue that Defendants insufficiently plead imminent injury

15   because Defendants "do not allege how they will get" to the Southern Ocean.  (Mot. at 6.)

16   However, Defendants' allegation that they intend to return to the Southern Ocean is

17   exactly the type of "general allegation[]" that "embrace[s] those specific facts that are

18   necessary to support the claim."  *Nat'l Wildlife Fed'n*, 497 U.S. at 889.  In light of

19   Defendants' history of activity on the Southern Ocean, it requires only a small inference

20   to reason that Defendants own or plan to otherwise—in the words of the Ninth Circuit—

21   "engage[]" one or more vessels.  *Cetacean Injunction*, 702 F.3d at 573.  If factual

22   development undermines that conclusion, the court can determine as much when

ORDER- 11

1  engaging in more exacting scrutiny at the summary judgment stage. *See Defs. of*

2  *Wildlife*, 504 U.S. at 561 (citing Fed. R. Civ. P. 56(e)) (differentiating evaluating standing

3  on the pleadings from analyzing standing on a motion for summary judgment, at which

4  point the claimant can no longer rest on "mere allegations," but must "set forth" specific

5  facts supporting standing by affidavit or other evidence).

6      Plaintiffs' other standing arguments are also unavailing.  Plaintiffs argue that

7  Defendants dropped and now contradict their previous allegation that Plaintiffs' actions

8  at sea were "in response to" Defendants' efforts to expose and impede Plaintiffs'

9  whaling.  (Mot. at 7-8.)  According to Plaintiffs, the court would not have granted

10  Defendants leave to amend in the first place if it had known Defendants intended to do so

11  by way of inconsistent pleading.  (*Id.* (citing *United States v. Corinthian Colls.*, 655 F.3d

12  984, 995 (9th Cir. 2011)).)  However, the court finds Defendants' operative allegations to

13  clarify, rather than contradict, their prior counter-complaint.  (*See* Resp. at 8 n.6.)

14  Accordingly, the court rejects this argument.

15      Finally, Plaintiffs contend that Defendants' allegations do not give rise to a

16  "plausible inference that Plaintiffs would risk the benefit of the Injunction to engage in

17  unprovoked attacks on an SSCS ship peaceably obeying the Injunction that Plaintiffs

18  fought so hard to secure from this Court for their protection."  (Mot. at 7.)  However,

19  Defendants allege that the Institute does not discriminate as to whose intermeddling ships

20  it targets with aggression.  (3ACC ¶¶ 55, 84, 86-87.)  These allegations support the

21  inference that past acts against foreign Sea Shepherd entities are predictive of similar acts

22

1  in the future against SSCS, even when SSCS is obeying the injunction.  Defendants need

2  not allege more to adequately plead imminent injury.

3       In light of the parties' past interactions, Defendants' professed intent to return to

4  the edge of the injunctive border in the Southern Ocean, and the low threshold for

5  alleging imminent injury, the court denies Plaintiffs' motion to dismiss Defendants'

6  injunctive counterclaims for lack of standing.[8]

7       2.  <u>Failure to State a Claim</u>

8         *a.  Failure to Allege Ships*

9       Plaintiffs next argue that Defendants fail to state a claim as to all three injunctive

10  counterclaims because they fail to allege that they have ships.  (Mot. at 8-9.)  For the

11  reasons articulated above, *see supra* § III.B.1., the court rejects Defendants' argument

12  that the failure to allege possession of or access to ships renders deficient Defendants'

13  injunctive counterclaims.  Defendants need not allege every discrete fact relevant to their

14  claims to support a plausible inference that those claims have merit.  *See Iqbal*, 556 U.S.

15  at 678.  The parties' past actions and Defendants' future plans in the Southern Ocean

16  sufficiently support the inference that Defendants will take the specific steps necessary to

17  again engage and utilize ships in the Southern Ocean during coming whaling seasons.

18  //

19  //

20

21      [8] Plaintiffs challenge only whether Defendants have sufficiently alleged the "imminent injury" element of standing, and the court finds no reason to question the presence of any other element or sub-element of Defendants' standing to sue Plaintiffs.  *Cf. infra* § III.B.3. (raising *sua sponte* Defendants' standing to assert injunctive counterclaims against Mr. Komura).

22

###### b.  Act of State Doctrine

Plaintiffs also argue that Defendants' piracy counterclaim is subject to dismissal because it is barred by the act of state doctrine.  (*Id.* at 9-11.)  Piracy, as defined in the United Nations Convention on the Law of the Sea ("UNCLOS"), consists of "illegal acts of violence or detention, or any act of depredation, committed for private ends by the crew or the passengers of a private ship . . . and directed . . . on the high seas, against another ship . . . or against persons or property on board such ship."  United Nations Convention on the Law of the Sea [*hereinafter* UNCLOS] art. 101, Dec. 10, 1982, 1833 U.N.T.S. 397; *Cetacean I*, 725 F.3d at 943 (citing UNCLOS art. 101) (excerpting the quoted language); *see also United States v. Ali*, 982 F. Supp. 2d 85, 88 (D.D.C. 2013) (citing UNCLOS art. 101 and 18 U.S.C. § 1651) (articulating the elements for the crime of piracy, pursuant to the law of nations, as "(1) the crew or passengers of a private ship (2) commit an illegal act of violence, detention, or depredation (3) on the high seas (4) against another ship or persons or property on board that ship (5) for private ends").

Defendants allege that Plaintiffs commit acts of piracy in furtherance of the "private end[]" of "illegal, private commercial whaling activities."  (3ACC ¶ 94.) However, pursuant to Article VIII of the International Convention for the Regulation of Whaling, Japan has issued the Institute a "special permit," which authorizes a limited amount of lethal whaling for purposes of scientific research.  (*Id.* ¶¶ 15-18.)  Plaintiffs construe Defendants' piracy counterclaim as implicitly challenging the validity of Japan's special permit by positing that Plaintiffs' whaling is "illegal" and "commercial."  (*See* Mot. at 11; Reply at 8-9.)  Plaintiffs contend that the act of state doctrine bars such a

1   claim because that doctrine requires the court to "respect . . . Japan's issuance of special

2   permits to Plaintiffs in Japan allowing lethal take of whales under Japan's new research

3   program." (Mot. at 11.)  The court finds this argument to be premised on an overly

4   narrow understanding of the term "private ends."

5          In the context of a piracy claim, an act taken for a "private end" is one "not taken

6   on behalf of a state."  *Cetacean I*, 725 F.3d at 944; *see also* Michael Bahar, *Attaining*

7   *Optimal Deterrence at Sea: A Legal and Strategic Theory for Naval Anti-Piracy*

8   *Operations*, 40 Vand. J. Transnat'l L. 1, 30 (2007) ("'For private ends' must be

9   understood to distinguish between state-sponsored piracy or privateering, which could be

10  redressed under the laws of war, and piracy, which could not.  Again, essential to piracy's

11  definition is not the actor's intent, but whether any state can be held liable for the actor's

12  actions.").  This definition of "private ends" is broader than the one Defendants embrace

13  in their counterclaims and Plaintiffs advocate in their motion to dismiss.  (*See* 3ACC ¶ 94

14  ("These acts of violence are committed for 'private ends' in that they are in furtherance

15  of the illegal, private commercial whaling activities of [the Institute] and Kyodo

16  Senpaku."); Mot. at 9-10 (citing 3ACC ¶ 94); *but see* Resp. at 14 n.12 (quoting

17  *Cetacean I*, 725 F.3d at 944).)

18         The "private ends" element of piracy was intended to carve out acts of warfare—

19  the archetypal "public end"—and analogous behavior, not to limit piracy's applicability

20  to ends "pursued for 'financial enrichment.'"  *Id.* at 943.  For example,

21         [t]he fact that a raider may intend to give away his booty like Robin Hood
           does not render his actions "for a public end" any more than would a
22         fundamentalist's hijacking a vessel in the name of his organization, no

matter how political that organization.  An eco-warrior who hobbles an oil
tanker may say that he is working for the world public, but has that public
authorized him to do so?  No.  All three are acting as individuals, not as
states empowered with the ability to declare war.

Bahar, *supra*, at 32.  Here, Japan has merely issued the Institute a special permit to

perform lethal whaling.  (3ACC ¶ 20.)  That action alone does not render Plaintiffs'

whaling an act taken "on behalf of" Japan in the sense that a warship acts "on behalf of"

its country.  *Cetacean I*, 725 F.3d at 944.

Although an action taken for a scientific purpose, as Japan characterizes Plaintiffs'

lethal whaling, benefits the public, concluding that it therefore does not constitute a

private end would embrace a narrower definition of "private ends" than applies here.  *See*

*Cetacean* I, 725 F.3d at 944 ("That the perpetrators believe themselves to be serving the

public good does not render their ends public.").  Plaintiffs therefore err in arguing that

"[i]f Plaintiffs' activity is research whaling, then it is not the 'private end' of commercial

whaling."[9]  (Reply at 9.)  Even assuming the act of state doctrine forecloses Defendants

from assailing the merits of Japan's special permit, Defendants' counterclaims

---

[9] Defendants raise this argument in their briefing.  (Resp. at 14 & n.12.)  Plaintiffs decline
to address the argument because "that is decidedly *not* the theory of [Defendants'] case,"
Defendants would "never accept the premise that Plaintiffs engage in research whaling," and
"Defendants would not advance that theory because that would eliminate their claimed basis for
discovery 'behind the permit.'"  (Reply at 8 n.3.)  Especially at the pleading stage, Defendants
are not required to articulate a precise theory of their case, nor must Defendants philosophically
embrace the basis upon which their claims may proceed.
    As to the scope of discovery "behind the permit," the court finds no basis to question its
prior rulings.  (*See* 4/22/15 Hearing Tr. (Dkt. # 323) at 30:12-31:1.)  The court concludes herein
that of the several grounds on which Defendants satisfactorily allege "private ends," profiteering
is only one, and it is unnecessarily narrow and legally uncertain.  This conclusion supports
foreclosing discovery "behind the permit" because that information is of, at most, minimal
relevance and not proportional to the needs of this case.  *See* Fed. R. Civ. P. 26(b)(1).

1  sufficiently allege "private ends" as that term pertains to piracy.  Defendants therefore

2  state a piracy counterclaim irrespective of the merits of Plaintiffs' act of state doctrine

3  argument.[10]

4      Accordingly, the court denies Plaintiffs' motion to dismiss Defendants' injunctive

5  counterclaims for failure to state a claim.

6      3.  <u>Counterclaim Defendant Hiroyuki Komura</u>

7      Mr. Komura is not a plaintiff in this action and has not joined in Plaintiffs' present

8  motion to dismiss.  (*See* 1st Am. Compl. ("FAC") (Dkt. # 234); 3ACC ¶¶ 1, 10 (alleging

9  Mr. Komura was the master of the SHONAN MARU NO. 2 when it collided with the

10  ADY GIL in 2010); Mot at 1.)  As of December 21, 2015, Defendants had not served Mr.

11  Komura.  (12/21/15 Order at 51.)  At that time, the court denied Mr. Komura's motion to

12  dismiss Defendants' counterclaims against him for lack of service.  (12/21/15 Order at 50

13  (reasoning that Federal Rule of Civil Procedure 4(m) "does not set a deadline for service

14  in a foreign country").)  However, the court ordered Defendants to "effect service on Mr.

15  Komura by April 30, 2016," or to "file a status report detailing their efforts to serve Mr.

16  Komura, at which point the court may revisit whether dismissal is appropriate for failure

17  to serve." (*Id.* at 51.)  Defendants have filed neither proof of service nor a status report

18  on the issue of service.  (*See* Dkt.)

19

20

_____

21  [10] In this order, the court assumes that the act of state doctrine renders unassailable
Japan's conclusion that Plaintiffs' whaling is for scientific purposes, but the court expresses no
22  opinion on the merits of that argument.

1    Furthermore, it is not clear on what basis Defendants have constitutional standing

2    to pursue prospective relief against Mr. Komura.[11]  Mr. Komura allegedly captained the

3    SHONAN MARU NO. 2 "during the 2009-2010 Southern Ocean whaling season"

4    (3ACC ¶ 11), when the SHONAN MARU NO. 2 "rammed the ADY GIL" (*id.* ¶ 64).

5    However, the allegations do not indicate or imply any involvement by Mr. Komura since

6    that time.  (*See generally id.*)  Nonetheless, Defendants seek injunctive relief against Mr.

7    Komura, at least as to their claims for piracy and unsafe navigation.  (*Id.* ¶ 1; *see also id.*

8    at 29 (asserting the freedom from piracy counterclaim against all counterclaim

9    defendants), 31 (asserting the freedom of safe navigation counterclaim against all

10   counterclaim defendants).)  In light of Mr. Komura's limited and bygone involvement

11   with the actions alleged in Defendants' counter-complaint, it appears unlikely that

12   Defendants' alleged imminent injury would be fairly traceable to Mr. Komura or that

13   enjoining Mr. Komura would redress that injury.

14    Based on the foregoing, the court ORDERS Defendants to show cause within 10

15   days on the following issues:  (1) why the court should not dismiss all counterclaims

16   against Mr. Komura for failure to serve; and (2) why the court should not dismiss all

17   injunctive counterclaims against Mr. Komura for lack of standing.

18   //

19   //

20

21   [11] Because Article III standing implicates the court's subject matter jurisdiction, the court
     is obliged to raise the issue *sua sponte*.  *Bernhardt v. Cty of L.A.*, 279 F.3d 862, 868 (9th Cir.

22   2002).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

## IV.   CONCLUSION

For the foregoing reasons, the court DENIES Plaintiffs' motion to dismiss (Dkt. # 304) and ORDERS Defendants to show cause within 10 days why the court should not dismiss some or all counterclaims against Mr. Komura.

Dated this 13th day of June, 2016.

_____
JAMES L. ROBART
United States District Judge

ORDER- 19