UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| INSTITUTE OF CETACEAN RESEARCH, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SEA SHEPHERD CONSERVATION SOCIETY, et al., <br><br> Defendants. | CASE NO. C11-2043JLR <br><br> ORDER |

## I. INTRODUCTION

Before the court is Defendants Sea Shepherd Conservation Society ("SSCS") and Paul Watson's (collectively, "Defendants") motion to clarify the scope of the permanent injunction. (Mot. (Dkt. # 352); see also Perm. Inj. (Dkt. # 346).) Plaintiffs The Institute of Cetacean Research ("the Institute"), Kyodo Senpaku Kaisha, Ltd., and Tomoyuki Ogawa (collectively, "Plaintiffs") oppose the motion as unripe and, even if ripe, lacking merit. (Resp. (Dkt. # 354).) The court has considered the parties' briefing, the relevant

portions of the record, and the applicable law. Considering itself fully advised,[1] the court GRANTS in part and DENIES in part the motion and clarifies the injunction as follows.

## II. BACKGROUND

Unlike *Moby Dick*, this whaling epic will apparently never end. On August 22, 2016, following nearly five years of litigation, the parties jointly moved for the entry of a negotiated permanent injunction that resolved all live claims. (Stip. Inj. (Dkt. # 343); Prop. Order (Dkt. # 344).) The next day, the court entered the parties' negotiated permanent injunction and terminated this case. (Perm. Inj. at 1-3.) Pursuant to the parties' stipulated motion, the court ordered:

> Defendants and any party acting in concert with them are permanently enjoined from physically attacking any vessel engaged by Plaintiffs in the Southern Ocean or from navigating in a manner that is likely to endanger the safe navigation of any such vessel. In no event shall Defendants or any party acting in concert with them approach Plaintiffs any closer than 500 yards when Defendants are navigating on the open sea.
>
> Defendants and any party acting in concert with them are also permanently enjoined from providing any money or property for the purposes of funding any physical attacks on any vessel engaged by Plaintiffs in the Southern Ocean or any person on any such vessel, any navigation in a manner that is likely to endanger the safe navigation of any such vessel, or any approach of any such vessel closer than 500 yards in the open sea, including through any entity that is a part of the worldwide "Sea Shepherd" movement and/or uses or has used some version of the "Sea Shepherd" name.
>
> On the stipulation of the parties, Defendants are also permanently enjoined from expending, directly or indirectly, any part of the settlement consideration to be paid to Sea Shepherd Conservation Society in the settlement of this action to fund acts enjoined herein as against not only Plaintiffs but those same acts as against third parties anywhere in the world.

---

[1] Although the parties request oral argument, the court finds oral argument unnecessary to its disposition of the motion and denies the requests. *See* Local Rules W.D. Wash. LCR 7(b)(4).

ORDER - 2

(*Id.* at 2.) The court also dismissed all live claims and counterclaims, ordered each party to bear its own costs and attorneys' fees, ordered the parties to provide notice of the injunction to the Ninth Circuit Court of Appeals, and retained jurisdiction to enforce compliance with the permanent injunction. (*Id.* at 3.)

Defendants interpret Plaintiffs' recent actions to suggest an actual or imminent "attempt to enforce an interpretation of the Permanent Injunction that goes far beyond its terms." (Mot. at 1.) On October 12, 2016, Plaintiffs sent a letter to third-party PayPal, Inc., that suggests PayPal may be held in contempt for "acting in concert with" Defendants. (Davis Decl. (Dkt. # 353) ¶ 2, Ex. 1 at 2.) In response, PayPal indicated that it had frozen three accounts that it determined were related to Defendants. (*Id.* ¶ 3, Ex. 2 at 1.) Plaintiffs have submitted similar letters to other financial institutions. (*Id.* ¶ 1.) In addition, Defendants sought confirmation from Plaintiffs that certain activities do not violate the injunction. (*Id.* ¶ 5, Ex. 4 at 1-2.) Plaintiffs did not directly respond to Defendants' requests for clarification, but instead indicated that they intend to "wait and see what unfolds." (*Id.* ¶ 6, Ex. 5 at 2.) Plaintiffs clarified that they "intend to take all steps necessary to ensure full and faithful compliance with the letter and spirit of the" injunction. (*Id.*)

In prior proceedings, the Ninth Circuit sanctioned Defendants for violating the preliminary injunction in part because they self-servingly interpreted the injunction without "seek[ing] clarification of their obligations," despite having "every opportunity" to do so. *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y* (*Cetacean II*), 774 F.3d 935, 954 (9th Cir. 2014). In light of the Ninth Circuit's admonishment and

Plaintiffs' unwillingness to clarify their position on Defendants' planned actions, Defendants now ask the court to clarify the scope of the injunction. (*See* Mot.) Specifically, Defendants ask the court to confirm that the following actions "would not constitute, or be evidence of, a violation" of the injunction:

1. Discussing the actions of foreign Sea Shepherd entities[2] on social media and other public platforms;

2. Communicating with foreign Sea Shepherd entities, as long as Defendants do not thus direct, incite, or control enjoined conduct;

3. Partnering with foreign Sea Shepherd entities on campaigns, income-generating activities and other projects unrelated to, and kept separate from, Southern Ocean whale-protection campaigns;

4. The processing of routine financial transactions by SSCS's financial partners; and

5. Acts that occurred prior to the entry of the Permanent Injunction, including SSCS's 2013 grant of equipment on the Steve Irwin to a foreign Sea Shepherd entity.

(Mot. at 2.)

### III. ANALYSIS

#### A. Legal Standard

Federal Rule of Civil Procedure 65(d) requires every injunctive order to "state its terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P.

//

---

[2] The court refers to the defendant in this action as "SSCS," whereas it refers to SSCS's foreign counterparts—which are non-parties—as "foreign Sea Shepherd entities." (*See* Dkt.) The injunction refers to foreign Sea Shepherd entities both implicitly and explicitly. (*See* Perm. Inj. at 2.)

65(d)(1)(B)-(C). "The Supreme Court teaches that when questions arise as to the interpretation or application of an injunction order, a party should seek clarification or modification from the issuing court, rather than risk disobedience and contempt." *Regents of the Univ. of Cal. v. Aisen*, No. 15-cv-1766-BEN (BLM), 2016 WL 4681177, at *1 (S.D. Cal. Sept. 7, 2016) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949); *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15 (1945)); *see also Regal*, 324 U.S. at 15 ("[C]ourts no less than parties desire to avoid unwitting contempts . . . ."); *Cetacean II*, 774 F.3d at 954 (rejecting Defendants' "self-serving interpretation of their obligations" because they had failed to seek clarification of their obligations despite having "every opportunity" to do so). The scope of the parties' stipulated injunction "must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971).

### B. What Conduct Constitutes "Evidence of" a Violation of the Injunction

The court first addresses Defendants' request to determine whether the five listed acts might constitute "evidence of" a violation of the injunction. (Mot. at 2.) The panoply of ways in which a fact may be relevant "evidence of" a violation of the injunction evades prediction at this time.[3] *See* Fed. R. Evid. 401. As a result, any

//

---

[3] For instance, Defendants first raise "[d]iscussing the actions of [f]oreign Sea Shepherd [e]ntities on social media and other public platforms." (Mot. at 2.) Depending on the nature of the discussion's content and other context, that conversation could be irrelevant or it could provide some "evidence of" improper funding or other actions that violate the injunction. (*Id.*; *see* Perm. Inj. at 2.)

ORDER - 5

attempt to clarify the injunction in that regard risks inadvertently reshaping the injunction or muddying, rather than clarifying, its terms. Accordingly, this aspect of Defendants' motion is too context-dependent for the court's clarification to aid the parties in "avoid[ing] unwitting contempts," *Regal*, 324 U.S. at 15, and the court denies that aspect of the motion.

### C. What Conduct "Violat[es]" the Injunction

Defendants also ask the court to confirm that the five specified actions do not "violate" the injunction. (Mot. at 2.) Although most of the actions lack a sufficiently concrete context for the court to provide meaningful clarification, the court addresses each action that Defendants identify in turn.

#### 1. "Discussing the actions of [f]oreign Sea Shepherd [e]ntities on social media and other public platforms"

Defendants fail to show a sufficiently concrete dispute regarding this action. Defendants ask the court to clarify that although speech may violate the injunction if it incites or directs violations thereof, speech that merely reports on or discusses foreign Sea Shepherd entities does not violate the injunction. (Mot. at 7-9.) Plaintiffs respond that "whether any particular conduct or words cross the line will depend on context." (Resp. at 4.) For example, Plaintiffs argue that reporting the coordinates of Plaintiffs' fleet could violate the injunction, whereas reporting past interactions between the parties

//

//

//

cannot. (*Id.*) Defendants reply by asking the court to "clarify that speech is not broadly enjoined."[4] (Reply at 3.)

Speech is not broadly enjoined. (*See generally* Perm. Inj.) However, this determination constitutes a clarification in name only. Whether reporting on or discussing foreign Sea Shepherd entities—or any other subject—violates the injunction depends on the content and context of the reporting or discussion. The court cannot more instructively clarify the scope of the injunction without a concrete dispute before it.

 2. "Communicating with [f]oreign Sea Shepherd [e]ntities, as long as Defendants do not thus direct, incite, or control enjoined conduct"

This action also begs the question of content and context. *See supra* § III.C.1. Defendants correctly argue that the injunction does not categorically bar them from communicating or associating with foreign Sea Shepherd entities. (Mot. at 9.) Defendants also acknowledge, however, that the permanent injunction "bars them from participating in, directing, inciting, funding, controlling *or* providing material support for enjoined activities." (Reply at 4.) Communication or association with foreign Sea Shepherd entities could violate the injunction if, for instance, it materially assists foreign Sea Shepherd entities in efforts to violate the injunction. *See Cetacean II*, 774 F.3d at 948, 952. Accordingly, without a concrete controversy before it, the court is unable to

//

//

---

[4] (*See also* Reply at 4 ("What Defendants are asking the [c]ourt to clarify is that regardless of 'context,' the Permanent Injunction does not prohibit speech that discusses, encourages, or supports actions by [f]oreign Sea Shepherd [e]ntities, but which does not involve Defendants' participation in, or direction, incitement or control of, enjoined activities.").)

further clarify the application of the injunction to communication and association with foreign Sea Shepherd entities.

    3. <u>"Partnering with [f]oreign Sea Shepherd [e]ntities on campaigns, income-generating activities and other projects unrelated to, and kept separate from, Southern Ocean whale-protection campaigns"</u>

Defendants next ask the court to "clarify that they may collaborate with [f]oreign Sea Shepherd [e]ntities on campaigns and activities unrelated to the Southern Ocean whale-protection effort . . . provided that any money or property provided by Defendants in connection with such campaigns are not used for enjoined activity." (Mot. at 10.) For example, Defendants suggest that they might collaborate with foreign Sea Shepherd entities on drafting environmental protection legislation and protecting baby sea turtles and vaquita porpoises. (*Id.*) The court agrees that the injunction does not categorically preclude collaboration with foreign Sea Shepherd entities on projects unrelated to Southern Ocean whaling. (*See generally* Perm. Inj.)

Plaintiffs do not resist this conclusion. (*See* Resp. at 4-5.) Instead, Plaintiffs point out that their letter, which gave rise to Defendants' motion, "never mentions non-Southern Ocean campaigns." (*Id.* at 5.) Again, the parties' ships appear to have passed in the night, and the absence of a concrete controversy renders the court unable to further clarify the scope of the injunction.

    4. <u>"The processing of routine financial transactions by SSCS's financial partners"</u>

Defendants acknowledge that third parties may be held in contempt for knowingly aiding and abetting an enjoined party's violation of the injunction. (Mot. at 10-11 (citing *Peterson*, 140 F.3d 1313, 1323 (9th Cir. 1998); *Goya Foods, Inc. v. Wallack Mgmt. Co.*,

ORDER - 8

290 F.3d 63, 75 (1st Cir. 2002)).) However, they contend that the letters Plaintiffs recently sent to Defendants' financial service providers, such as PayPal, "suggest that [Plaintiffs'] goal is to effectively shut down SSCS's operations by threatening its third-party service providers with contempt liability." (*Id.* at 11; *see also* Davis Decl. Ex. 1.) Defendants therefore ask the court to clarify that unless a financial institution has knowledge that transactions are intended to fund enjoined actions, facilitating routine business transactions does not subject financial institutions to contempt liability. (Mot. at 11.)

Again, the court can do little to clarify the injunction besides recite the case law that Defendants provide in their motion. "Federal Rules of Civil Procedure 70 and 71 provide for the enforcement of judgments against non-parties in limited circumstances." *Peterson*, 140 F.3d at 1323. One such circumstance is when the non-party has knowledge of an order and abets the defendant in violating the order. *Id.* (quoting *NLRB v. Sequoia Dist. Council of Carpenters*, 568 F.2d 628, 633 (9th Cir. 1977)); *see also Cetacean II*, 774 F.3d at 949. Plaintiffs have placed PayPal on notice of the injunction (Davis Decl. Ex. 1), and they appear to have placed other financial institutions on notice as well (*id.* ¶ 1). However, unless a third party abets Defendants in violating the court's order or its actions fall under the other "limited circumstances" that courts have identified, *Peterson*, 140 F.3d at 1323, the third party will not be held in contempt for violating the injunction. The case law speaks for itself regarding when a financial institution crosses the line from completing routine transactions to aiding and abetting.
//

*See, e.g., In re Consol. Meridian Funds*, 485 B.R. 604, 624 (Bankr. W.D. Wash. 2013) (collecting cases).

### 5. "Acts that occurred prior to the entry of the Permanent Injunction, including SSCS's 2013 grant of equipment on the Steve Irwin to a [f]oreign Sea Shepherd [e]ntity"

Finally, Defendants ask the court to clarify that Defendants may not be held in contempt for granting equipment aboard the STEVE IRWIN to a foreign Sea Shepherd entity. (Mot. at 11-12; *see* Neupert Decl. (Dkt. # 355) ¶ 8, Ex. 6 ("Equip. Grant") at 1 (granting the Netherlands-based foreign Sea Shepherd entity the "equipment presently associated with the vessel STEVE IRWIN[,] including its boats, tackle, apparel, furniture, tools, equipment[,] and all other appurtenances thereto").) Defendants argue that because they granted the equipment on January 12, 2013—before the court entered the permanent injunction—they cannot be held in contempt for this action. (Mot. at 11-12; Equip. Grant at 1.)

Plaintiffs do not dispute that Defendants granted the equipment to the Netherlands-based Sea Shepherd entity before the court issued the permanent injunction. (*See* Resp. at 6-9.) However, Plaintiffs respond that if foreign Sea Shepherd entities use the equipment to commit conduct that violates the injunction, Defendants may be held in civil contempt for "providing . . . property" for the purpose of physically attacking or dangerously navigating in the presence of Plaintiffs' vessels. (Perm. Inj. at 2; *see* Resp. at 6-7.) Plaintiffs base their argument on the premise that "providing" means "to make available," which "is not limited to a one-time discrete transaction." (Resp. at 7 (citing Random House Dictionary 1556 (unabridged 2d ed. 1987)) ("One can provide or make

ORDER - 10

available something on a continuous basis.").) Because SSCS retains the right to terminate the grant of equipment (Equip. Grant at 3), Plaintiffs contend that Defendants' ongoing failure to do so constitutes "providing" that equipment (Resp. at 7-9).

The court finds ripe for determination this discrete issue: whether declining to terminate the 2013 equipment grant may constitute "providing . . . property" under the injunction. (Perm. Inj. at 2:7.) Defendants are presently and continually declining to terminate the grant. Plaintiffs posit that as soon as a foreign Sea Shepherd entity uses the STEVE IRWIN to violate the injunction, "contempt may lie" for Defendants' failure to terminate the grant. (Resp. at 9.) Defendants therefore properly request clarification at this time. *See Cetacean II*, 774 F.3d at 954; *cf. Regal Knitwear*, 324 U.S. at 15 ("No concrete case is before us. We have here an abstract controversy over the use of these words, and it is as sterile as abstract controversies usually are.").

The court clarifies that declining to terminate the 2013 equipment grant does not constitute "providing . . . property." (Perm. Inj. at 2:7.) Plaintiffs' position is contrary to the plain meaning of "provide."[5] Indeed, Plaintiffs' prior usage of "provide" belies the interpretation that they now urge. In their first amended and supplemental complaint, Plaintiffs alleged that "Defendants have unlawfully and willfully provided or collected 'funds' in the form of grants or transfers of ships," including the STEVE IRWIN. (Am. Compl. (Dkt. # 234) ¶ 50.3.) If "providing" is ongoing, as Plaintiffs urge the court to

//

---

[5] Plaintiffs point out that the Random House Dictionary defines "provide" as "to make available." (Resp. at 7.) Even accepting that definition, it merely begs the question whether "make available" is a one-time act or a continuing act.

ORDER - 11

conclude, Plaintiffs' allegation that Defendants "have . . . provided" funds should be phrased in the present progressive—"are providing"—rather than the present perfect—a form of past tense. Plaintiffs also asked the court to enjoin Defendants from "providing or continuing to provide 'funds' in the form of grants of ships and other assets to foreign Sea Shepherd entities." (*Id.* ¶ 52.) If "providing" is ongoing, "continuing to provide" is redundant and superfluous.

When the parties negotiated the permanent injunction and the court entered it, both the parties and the court were aware that Plaintiffs sought to compel Defendants to revoke the 2013 equipment grant. (*See, e.g., id.* ¶¶ 50.3, 52.) Plaintiffs contend that the court should therefore infer that the injunction contemplates the 2013 equipment grant. (Resp. at 8.) Like all products of negotiation, the permanent injunction involved compromise, so there is no reason to infer that the injunction affords every form of relief that Plaintiffs sought. Moreover, the court discerns the scope of the permanent injunction based on the injunction's language, not based on the parties' unwritten intentions. *See Armour*, 402 U.S. at 682; *B2B CFO Partners, LLC v. Kaufman*, No. CV-09-2158-PHX-JAT, 2012 WL 1067904, at *3 (D. Ariz. Mar. 29, 2012) (citing *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 893 (9th Cir. 1982)). To impose on Defendants an affirmative obligation to rescind a past action, the injunction would need to direct such action in clearer terms than the strained interpretation for which Plaintiffs advocate. *See* Fed. R. Civ. P. 65(d)(1) (requiring that each injunction "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required"). Accordingly, based on the plain language of the injunction, the

court clarifies that Defendants' failure to terminate the 2013 equipment grant does not constitute "providing . . . property."

## IV. CONCLUSION

Based on the foregoing analysis, the court GRANTS in part and DENIES in part Defendants' motion to clarify (Dkt. # 352) and clarifies the injunction as explained herein.

Dated this 17th day of March, 2017.

JAMES L. ROBART
United States District Judge